## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

YANPING CHEN,
*Plaintiff-Appellee,*

*v.*

FEDERAL BUREAU OF INVESTIGATION, et al.,
*Defendants-Appellees,*

CATHERINE HERRIDGE,
*Appellant.*

On Appeal from the United States District Court for the District of Columbia,
No. 1:18-cv-03074-CRC

## PLAINTIFF-APPELLEE YANPING CHEN'S MOTION TO EXPEDITE CONSIDERATION OF THE APPEAL AND FOR AN EXPEDITED BRIEFING SCHEDULE

Andrew C. Phillips (Bar No. 64792)
MEIER WATKINS PHILLIPS PUSCH LLP
919 18th St NW, Suite 650
Washington, DC 20006
Email: andy.phillips@mwpp.com

*Counsel for Plaintiff-Appellee Yanping Chen*

# CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), counsel for Plaintiff-Appellee certifies as follows:

## A. Parties, Intervenors, and Amici Curiae

Appellant in this case is Catherine V. Herridge, who was a non-party deponent in the district court. Appellee in this case and Plaintiff in the District Court is Yanping Chen. Defendants in the District Court are the Federal Bureau of Investigation, the U.S. Department of Justice, the U.S. Department of Defense, and the U.S. Department of Homeland Security. The Reporters Committee for Freedom of the Press filed an amicus brief in the District Court in support of Appellant Catherine Herridge's opposition to Appellee Yanping Chen's motion for an order to show cause why Ms. Herridge should not be held in contempt by the District Court.

## B. Rulings Under Review

The rulings under review are the August 1, 2023 order of the District Court for the District of Columbia (J. Cooper) in Civil Action No. 1:18-cv-03074-CRC denying in part Appellant Catherine Herridge's motion to quash [Dkt. 140], and the February 29, 2024 order of the District Court for the District of Columbia (J. Cooper) in the same action holding Appellant Herridge in civil contempt [Dkt. 193].

**C. Related Cases**

Undersigned counsel is not aware of any related cases pending in this Court or any other Court.

/s/ Andrew C. Phillips
Andrew C. Phillips (Bar No. 64792)

# TABLE OF CONTENTS

**CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES** .........i

**TABLE OF AUTHORITIES** ...................................................................**iv**

**INTRODUCTION** .............................................................................**1**

**BACKGROUND** ................................................................................**3**

**ARGUMENT** ....................................................................................**9**

**CONCLUSION** ...............................................................................**16**

**CERTIFICATE OF COMPLIANCE** ............................................**17**

**CERTIFICATE OF SERVICE** ......................................................**18**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Hatfill v. Mukasey*,
    No. 08-5049, Doc. #1105997 (D.C. Cir. Mar. 14, 2008).......................10, 14

*Lee v. Dep't of Justice*,
    413 F.3d 53 (D.C. Cir. 2005) ..........................................................................5

*Lee v. Dep't of Justice*,
    No. 04-5301, Doc. #860963 (D.C. Cir. Nov. 19, 2004)................................10

*Zerilli v. Smith*,
    656 F.2d 705 (D.C. Cir. 1981) .......................................................................5

**Statutes**

28 U.S.C. § 1657 ......................................................................................................9, 15

Privacy Act of 1974, 5 U.S.C. 552a ...........................................................................15

**Other Authorities**

D.C. Cir. Handbook of Prac. & Internal Proc. § VIII.B......................................9, 14

H.R. Rep. No. 1416, 93rd Cong., 2d Sess. (1974) .....................................................12

# INTRODUCTION

Plaintiff-Appellee Dr. Yanping Chen, a highly accomplished scientist, university founder, and American citizen, saw her world upended when, in 2017, an unknown government official unlawfully leaked Privacy Act-protected records concerning Chen to Appellant Catherine Herridge, which then formed the basis for a series of stories Herridge produced for Fox News. While the leaker's identity remains hidden by Herridge, circumstantial evidence adduced in discovery suggests that an agent with one of the Defendant government agencies, upset by the government's decision not to charge Chen with any crime, decided to leak protected records—including personal photographs, immigration records, and FBI interview memoranda—to Herridge and Fox News in order to present a one-sided story and summarily convict Chen as a supposed Chinese spy in the court of public opinion.

Chen instituted this suit pursuant to the Privacy Act to identify the wrongdoer and vindicate her rights. Only after years of discovery failed to uncover the leaker did Chen seek to discover his or her identity from Herridge, the one person other than the leaker who surely knows that information. After voluminous briefing on the scope of the qualified First Amendment reporter's privilege in a Privacy Act case, the District Court issued a well-reasoned decision in August 2023 holding that, consistent with settled precedent in this Circuit, Chen had overcome Herridge's assertions of privilege and that Herridge was required to sit for a deposition and

identify the leaker. After Herridge flatly defied the Court's order and refused to so testify, the District Court then issued a second decision in February 2024 reiterating the soundness of its prior ruling and holding Herridge in contempt for violating it. In this appeal, Herridge asks this Court to reverse both of those orders.

Although Herridge's recalcitrance continues to frustrate Chen's ability to prosecute a case that has now been pending for over five years, Chen's personal interest in her Privacy Act claims is not the basis on which she requests that this Court expedite this appeal. Instead, Chen submits that there is good cause for expedition because the public has an unusual interest in the prompt resolution of this appeal. As set forth below, this case has generated strong public and media interest, and Chen, Herridge, and the District Court have all recognized that this is an important case that implicates questions about the proper scope of the qualified reporter's privilege in civil cases, as well as the importance of enforcing Congress's will that the Privacy Act serve as a deterrent against government officials who might be tempted to abuse their power and access to records to leak sensitive documents to harm private citizens.

While much of the public attention on this case has focused on the issue of reporters protecting their confidential sources, the public interest in deterrence against government abuse warrants significant emphasis and strongly favors expediting this appeal. Because the District Court agreed to stay imposition of a

hefty monetary sanction pending resolution of this appeal, Herridge has no incentive to come into compliance with the District Court's order to divulge her source while this appeal remains pending. Herridge's ongoing refusal to comply does not only impact Chen's case. It frustrates the very purpose of the Privacy Act, it allows a government official who violated a private citizen's rights to remain anonymous and protected, and it sends a message to other government officials who might consider doing the same that they can abuse their power with impunity. This Court should expedite briefing and consideration of this appeal so that these weighty issues can be resolved promptly.

Counsel for Chen has conferred with counsel for the other parties to this appeal regarding this Motion. Appellant Herridge opposes the request to expedite, and Appellees the Department of Homeland Security, the Department of Defense, the Department of Justice, and the Federal Bureau of Investigation take no position on this Motion.

## BACKGROUND

This Privacy Act suit involves the suspected leak, by a government official, of legally protected information concerning Plaintiff Yanping Chen to Catherine Herridge, who was at the time a reporter for Fox News. (Mem. Op. & Order at 2, No. 1:18-cv-03074-CRC (D.D.C. Aug. 1, 2023) [Dkt. 140] ("Order Denying the Motion to Quash" or "MTQ Order").) After defeating Defendants'

motion to dismiss, Chen engaged in extensive discovery—including serving scores of document requests, interrogatories, and requests for admission, issuing over a dozen third-party subpoenas, taking eighteen depositions, and obtaining 22 declarations—aimed at uncovering the identity of the suspected government official that leaked her Privacy Act-protected records to Herridge. (*Id.* at 3.) When those efforts failed to definitively identify the leaker(s), Chen served Fox and Herridge with document and deposition subpoenas in May and June of 2022. (*Id.*)

Both Herridge and Fox then moved to quash. (Mem. in Supp. of Non-Party Catherine V. Herridge's Mot. to Quash (Aug. 8, 2022) [Dkt. 96-1]; Mem. in Supp. of Non-Party Fox News Corp.'s Mot. to Quash (Aug. 8, 2022) [Dkt. 97-1].) They argued that Chen had not overcome the journalists' qualified First Amendment privilege to withhold the identity of the leaker because (1) the subpoenas were overbroad and sought information not central to Chen's Privacy Act claims; (2) Chen had not sufficiently exhausted reasonable alternative means to discover the identity of the leaker; (3) the Court should engage in a wide-ranging balancing of Herridge's First Amendment interest in maintaining her source(s)' confidentiality against Chen's personal interest in prosecuting her Privacy Act claims; and (4) alternatively, the Court should find a federal common law reporter's privilege allowing it to engage in the same expansive balancing. (MTQ Order at 4 [Dkt. 140].) In response, Chen argued (1) that the First Amendment privilege is overcome because she sought

only information central to her claims and had exhausted reasonable alternative means to identify the leaker; (2) that under binding D.C. Circuit precedent, the Court's analysis must focus on the issues of centrality and exhaustion, and not an amorphous, subjective balancing of the litigants' interests; and (3) that there is no federal common law reporter's privilege that would allow an end-run around established precedent regarding the proper scope of the qualified privilege. (*See generally* Pl.'s Mem. in Opp'n to Non-Party Catherine V. Herridge's Mot. to Quash (Sept. 6, 2022) [Dkt. 123].)

On August 8, 2023, the Court issued its Order Denying the Motion to Quash. After careful review, the Court held that binding Circuit precedent addressing this precise issue in the Privacy Act context—including *Zerilli v. Smith*, 656 F.2d 705 (D.C. Cir. 1981), and *Lee v. Department of Justice*, 413 F.3d 53 (D.C. Cir. 2005)—instructed district courts to focus their analysis on whether the information sought from the reporter is central to the plaintiff's claims, whether plaintiff has exhausted reasonable alternative avenues of discovery, and whether the journalist is a party to the underlying litigation. (MTQ Order at 5-14 [Dkt. 140].) Consistent with that precedent, the Court rejected Herridge and Fox's arguments that the Court should engage in a "free-form balancing of interests." (*Id*. at 10-11.) Reviewing the discovery record against Fox and Herridge's arguments, the Court then concluded that, with respect to the deposition subpoena to Herridge, Chen had demonstrated

that the identity of the leaker was central to her claims, and that Chen had exhausted reasonable alternative efforts to identify the leaker. (*Id*. at 14-21.) Ultimately, the Court determined that Chen was entitled to depose Herridge about the identity of her confidential source(s) for any Privacy Act-protected information, as well as any non-privileged matters relevant to Chen's claim. (*Id*. at 28.) The Court also granted Fox's motion to quash, without prejudice to Chen renewing her subpoenas to Fox if she does not obtain the information she seeks from Herridge. (*Id*.)

On August 31, 2023, Herridge filed a notice of appeal of the Order Denying the Motion to Quash. (Notice of Appeal to the U.S. Court of Appeals for the D.C. Cir. (Aug. 31, 2023) [Dkt. 150].) After Chen moved to dismiss the appeal for lack of jurisdiction, this Court entered an order dismissing the appeal and holding that, to appeal the merits of the Order Denying the Motion to Quash, Herridge would first need to defy that Order, be held in contempt, and then appeal from the contempt citation. (Order, *Chen v. Herridge*, No. 23-5198 (D.C. Cir. Sept. 25, 2023) [Dkt. 2018838].)

In September 2023, counsel for Chen deposed Herridge pursuant to the District Court's Order Denying the Motion to Quash, and Herridge defied the Order by refusing to identify the source that leaked Chen's protected records to her. (Mem. Op. & Order at 2 , No. 1:18-cv-03074-CRC (D.D.C. Feb. 29, 2024) (Feb. 29, 2024) [Dkt. 193] ("Contempt Order").) After Chen moved for an order finding Herridge

6

in contempt of the Order Denying the Motion to Quash, the District Court entered an Opinion and Order on February 29, 2024, holding Herridge in contempt. (*Id*.) The District Court held that there was "no genuine dispute that Herridge is in contempt of the Court's August 1, 2023 Order partially denying her motion to quash Chen's deposition subpoena," noting that order "clearly and unambiguously required Herridge to answer questions" about the source or sources of the documents leaked to Herridge in violation of the Privacy Act, and that "Herridge willfully disobeyed the Order by refusing to answer questions about the identity of the sources who supplied the allegedly leaked materials." (*Id*. at 10-11.)

The District Court rejected Herridge's arguments in opposition as retreads of the arguments already rejected in the District Court's Order Denying the Motion to Quash. (*Id*. at 11.) Specifically, the District Court reiterated that established Circuit precedent instructs that in a Privacy Act case, the question of whether the plaintiff can discover the identity of the leaker from a non-party journalist is guided by two "precise guidelines" and "central factors"; namely, whether the requested discovery is central to the plaintiff's claims and whether the plaintiff has first exhausted other reasonable alternatives of accessing the information. (*Id*. at 11.) The District Court again held that application of both factors favored Chen, and again rejected Herridge's argument for an "open-ended weighing of all possible interests" that would require a District Court to "adjudicate who is worthy of the law's protection."

(*Id*. at 11-15.)  The Court further held that "a free-wheeling balancing of interests would not change the outcome in any event," and in a detailed discussion, rejected as unpersuasive Herridge's arguments that Chen's damages case might ultimately prove unsuccessful, that disclosure of Herridge's source raised national security concerns, and that a contempt finding would have a chilling effect on the press.  (*See id*. at 12-19.)

After finding that Herridge provided the District Court "no compelling reason to modify its August 1, 2023 Order requiring her to answer questions concerning the identity and intent of the source or sources of the records allegedly given to her in violation of the Privacy Act," and that "Herridge plainly violated that Order when she refused to divulge the identity of the suspected leaker during her deposition last September," the Court concluded that Herridge's "defiance" warranted a finding of civil contempt.  (*Id*. at 19.)  Rejecting Herridge's request for a nominal sanction, the District Court observed that "[j]udicial orders are not tollbooths that can be bypassed with spare change," and held that such a "trivial sanction" would not serve the fundamental purpose of ensuring compliance with the District Court's Order.  (*Id*. at 21.)  The Court ultimately imposed a sanction of $800 a day until Herridge complied with the Order Denying the Motion to Quash, but agreed to stay the sanction until completion of proceedings on a timely appeal if Herridge lodged her appeal within

thirty days.  (*Id*. at 24.)  Herridge filed her Notice of Appeal on March 8, 2024. (Notice of Appeal to the D.C. Cir. (Mar. 8, 2024) [Dkt. 194].)

## ARGUMENT

Under 28 U.S.C. § 1657(a), "each court of the United States … shall expedite the consideration" of any action "if good cause therefor is shown."  Consistent with that command, this Court's Internal Operating Procedures authorize it to "expedite cases in which the public generally, or in which persons not before the Court, have an unusual interest in prompt disposition."  D.C. Cir. Handbook of Prac. & Internal Proc. § VIII.B.  This appeal is just such a case, as the District Court and Herridge have previously emphasized.

As the District Court acknowledged in its Order Denying the Motion to Quash and the Contempt Order, this case draws two important and competing interests into conflict.  The first is the right of a private citizen, under the Privacy Act, to obtain redress for violation of her rights by a rogue government official.  (MTQ Order at 24-25; Contempt Order at 14-15.)  The second is the claimed First Amendment right of a reporter to refuse to reveal the identity of her confidential sources.  (MTQ Order at 24-25; Contempt Order at 1.)  In the past two decades, two Privacy Act case appeals to this Court have purported to pit those interests against each other, and, in each of them, this Court granted motions to expedite.  (*See* Order, *Hatfill v. Mukasey*,

No. 08-5049, Doc. #1105997 (D.C. Cir. Mar. 14, 2008); Order, *Lee v. Dep't of Justice*, No. 04-5301, Doc. #860963 (D.C. Cir. Nov. 19, 2004).)

Although Chen and Herridge disagree about the correct outcome of this appeal, they agree that the case involves important issues and that their resolution will have significant ramifications going forward for government officials, reporters, and individuals whose Privacy Act rights are violated.  Indeed, Herridge previously told this Court, in her appeal of the Order Denying the Motion to Quash, that this case "raises vitally important issues," and she suggested that it would be appropriate for this Court to resolve them on an expedited basis.  (*See* Non-Party Catherine Herridge's Opposed Emergency Mot. to for Stay Pending App. and for Admin. Stay Pending Disposition of the Stay Motion at 2, 5, *Chen v. Herridge*, No. 23-5198 (D.C. Cir. Sept. 11, 2023).)  That non-parties to the underlying proceeding and this appeal are greatly interested in the outcome is further underscored by the fact that the Reporters Committee for Freedom of the Press filed an amicus brief in the District Court to weigh in on the issues involving the scope of the reporter's privilege.  (Brief of Reporters Committee for Freedom of the Press as Amicus Curiae in Support of Non-Party Catherine V. Herridge's Response to the Order to Show Cause, No. 1:18-cv-03074-CRC (D.D.C. Jan. 4, 2024) [Dkt. 177-1].)  The unusual level of public interest in this case is also demonstrated by the wave of press coverage concerning the District Court's Contempt Order.  Within 24 hours of the District Court's holding

Herridge in contempt, the District Court's decision received coverage in numerous national news outlets, including the Associated Press, the New York Times, CNN, and Bloomberg Law.[1]

The national interest in this case is undoubtedly driven, in no small part, by the centrality to this appeal of the so-called "reporter's privilege" to decline to divulge sources in certain instances, and the claims of Herridge and her supporters

---

[1] *See, e.g.*, Jeremy Barr, *Journalist Catherine Herridge held in contempt for not revealing source*, Wash. Post (Feb. 29, 2024) https://www.washingtonpost.com/style/media/2024/02/29/catherine-herridge-held-contempt-cbs-fox-journalist/; Alanna Durkin Richer & Eric Tucker, *Judge holds veteran journalist Catherine Herridge in civil contempt for refusing to divulge source*, AP News (Feb. 29, 2024) https://apnews.com/article/catherine-herridge-journalist-contempt-fox-news-cbs-63f6b2cde67fceae192daebe5d11b1a1; Stephen Battaglio, *Journalist held in contempt for refusing to reveal sources in Fox News investigation*, L.A. Times (Feb. 29, 2024) https://www.latimes.com/entertainment-arts/business/story/2024-02-29/fox-news-catherine-herridge-civil-contempt-fbi-yanping-chen; Katie Robertson, *Judge Fines Ex-Fox News Reporter for Not Revealing Sources*, N.Y. Times (Feb 29, 2024) https://www.nytimes.com/2024/02/29/business/catherine-herridge-fox-news-sources.html; Oliver Darcy, *Judge holds veteran journalist Catherine Herridge in contempt for refusing to reveal her sources*, CNN (Feb. 29, 2024) https://www.cnn.com/2024/02/29/media/catherine-herridge-contempt-refusing-to-reveal-sources/index.html; Allie Griffin, *Judge holds veteran journalist Catherine Herridge in civil contempt for refusing to divulge source*, N.Y. Post (Feb. 29, 2024) https://nypost.com/2024/02/29/us-news/judge-holds-veteran-journalist-catherine-herridge-in-civil-contempt-for-refusing-to-divulge-source/; Christopher Brown, *Ex-Fox Reporter Held in Contempt Over Refusing to Reveal Sources*, Bloomberg Law (Mar. 1, 2024) https://news.bloomberglaw.com/legal-ops-and-tech/ex-fox-reporter-held-in-contempt-over-refusing-to-reveal-sources; Alanna Durkin Richer & Eric Tucker, *Judge holds veteran journalist Catherine Herridge in civil contempt for refusing to divulge source*, S.F. Chron. (Mar. 1 2024) https://www.sfchronicle.com/entertainment/article/judge-holds-veteran-journalist-catherine-herridge-18696939.php.

that the Contempt Order will have a "chilling effect" on journalists' ability to report going forward.[2] The First Amendment issues on which Herridge has focused have (predictably, given the press's interests) garnered most of the headlines, but there are also other major public interests at stake here. In particular, the public has a compelling interest in the prompt resolution of Chen's underlying Privacy Act claim. As the District Court observed, one of Congress's primary goals in enacting that law was to protect "all private citizens, whether blameworthy or blameless, from the risk that government officials might be tempted to abuse their access to sensitive information by leaking materials intended to embarrass particular individuals."[3] (Contempt Order at 14-15.) Thus, Privacy Act claims like Chen's "vindicate more than the personal interests of the litigant," because "they serve a systemic function in deterring the 'intentional or willful' dissemination of private records maintained by our government." (*Id*. at 6.)

Herridge's ongoing defiance of the District Court, and her refusal to identify the government official who abused his access to sensitive information to harm Chen, affects more than just Chen's personal interest in seeking redress for the violation of her rights. It frustrates the very purpose of the Privacy Act. And it is

---

[2] Obviously, Chen disagrees with these arguments, as did the District Court. (Contempt Order at 15-18.)

[3] Indeed, the report accompanying the House version of the Privacy Act called the non-disclosure requirement "one of the most important, if not the most important, provisions of the bill." H.R. Rep. No. 1416, 93rd Cong., 2d Sess., at 12 (1974).

not only allowing the government official who violated Chen's rights to go undiscovered and unpunished, but also risks encouraging future would-be leakers who will believe that they can violate the Privacy Act with impunity so long as they launder their lawbreaking by leaking a citizen's protected records to a journalist.

Although the District Court rightly imposed a hefty fine on Herridge for flouting the Court's Order Denying the Motion to Quash, the Court also stayed that fine pending the resolution of this appeal. (Contempt Order at 24.) Thus, until this appeal is resolved, Herridge will have no incentive to come into compliance and identify the individual who violated Chen's rights. Expedition of this appeal will, in the event that the District Court's orders are affirmed, help to ensure that the sanction's coercive effect is restored more quickly, thus sending a message to government officials entrusted with sensitive materials that they will be held to account if they abuse their power and access to harm American citizens. It bears emphasis that Chen has already suffered substantial delay in prosecuting her case due to the reporter's privilege, which required her to meticulously exhaust alternative discovery for five years before asking Herridge for the smoking-gun information that she admits she has. (Contempt Order at 8 (at her deposition, "Herridge … repeatedly admitted that she knew who the source was").) Now that Chen has reached this stage and Herridge is in contempt, there is "good cause" to

expeditiously resolve this matter to allow Chen's case to proceed without further unnecessary delay.

Two specific features of the rules governing expedition further support this Motion. First, this Court's Internal Operating Procedures specifically list the Court's imposition of a "stay … pending appeal" as a situation in which the Court "may at the same time expedite the case to minimize possible harm to the parties or the public." D.C. Cir. Handbook of Prac. & Internal Proc. § VIII.B. While it was the District Court here rather than this Court that imposed a stay pending appeal, the considerations are the same, and the District Court went ahead and did so here in light of this Court's decision to impose an identical stay in *Hatfill* when the District Court did not. (Contempt Order at 22 ("when the district court denied a stay of contempt sanctions in *Hatfill III*, 539 F. Supp. 2d at 106, the D.C. Circuit stepped in and granted the stay request, *see Hatfill v. Mukasey*, No. 08-5049, Doc. No. 1104546 (D.C. Cir. March 11, 2008)").) And, consistent with Section VIII.B of its Handbook of Practice and Internal Procedures, this Court followed up its stay in *Hatfill* with an expedition order just three days later that condensed all briefing and oral argument into only two months. Order, *Hatfill*, Doc. #1105997 (D.C. Cir. Mar. 14, 2008). Second, while not strictly applicable here, 28 U.S.C. § 1657's requirement that this Court "shall expedite the consideration of any action brought under … [28 U.S.C.

§] 1826"—addressing the confinement of a recalcitrant witness—shows Congress's attitude in favor of expediting review of rulings holding civil witnesses in contempt.

The foregoing reasons illustrate that there is an unusually strong public interest in expediting this appeal and, thus, good cause for expediting it. Assuming the Court agrees, Chen proposes that the Court issue an expedited briefing schedule that tracks the one set forth in Federal Rule of Appellate Procedure 31:

| | |
|---|---|
| Appellant's Brief: | 40 days after this Motion is granted |
| Appellee's Brief: | 30 days after Appellant's brief is served |
| Appellant's Reply: | 21 days after Appellee's brief is filed |
| Oral argument: | As soon as practicable following filing of Appellant's reply |

Given that the parties here have already briefed the relevant issues repeatedly in the District Court—first in connection with Herridge's motion to the District Court to quash Chen's subpoena, which resulted in the District Court's Order Denying the Motion to Quash, and then in connection with Chen's application for a contempt finding, which resulted in the District Court's Contempt Order—this proposed schedule would give both parties more than enough time to complete their filings. It would also ensure that the case is fully briefed in time for oral argument before this Court's summer recess.

## CONCLUSION

For the foregoing reasons, Appellee Chen respectfully requests that the Court expedite consideration of this appeal, issue an order setting the above briefing schedule, and direct the Clerk to schedule oral argument on the earliest practicable date following completion of briefing and before the Court's summer recess.

Dated: March 20, 2024

Respectfully Submitted,

_/s/ Andrew C. Phillips_
Andrew C. Phillips (Bar No. 64792)
MEIER WATKINS PHILLIPS PUSCH LLP
919 18th St NW, Suite 650
Washington, DC 20006
Email: andy.phillips@mwpp.com

_Counsel for Plaintiff-Appellee Yanping Chen_

# CERTIFICATE OF COMPLIANCE

This motion by Plaintiff-Appellee complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 3,688 words. This motion also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1) because it was prepared using Microsoft Word in 14-point Times New Roman font, a proportionately spaced typeface.

March 20, 2024                                          */s/ Andrew C. Phillips*
                                                        Andrew C. Phillips

**CERTIFICATE OF SERVICE**

I hereby certify that, on March 20, 2024, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the District of Columbia Circuit by using that Court's CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Andrew C. Phillips*
Andrew C. Phillips