No. 24-5050

IN THE

# United States Court of Appeals
# for the District of Columbia Circuit

YANPING CHEN,
*Plaintiff-Appellee,*

*v.*

FEDERAL BUREAU OF INVESTIGATION, *et al.*,
*Defendants-Appellees,*

CATHERINE V. HERRIDGE,
*Appellant.*

On Appeal from the United States District Court for the District of Columbia,
No. 1:18-cv-03074-CRC

## APPELLANT CATHERINE V. HERRIDGE'S OPPOSITION TO MOTION TO EXPEDITE

Patrick F. Philbin
Kyle T. West
Chase Harrington
TORRIDON LAW PLLC
1155 F Street, N.W.
Suite 750
Washington, DC 20004
(202) 249-6900
pphilbin@torridonlaw.com

*Counsel for Catherine V. Herridge*

April 3, 2024

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................1

BACKGROUND ...................................................................................4

ARGUMENT .......................................................................................10

    A.    Plaintiff Fails To Provide Any Justification for Expediting Ms. Herridge's Appeal. ..............................................................10

    B.    Plaintiff's Proposed Schedule, Requiring Briefing To Be Completed in July, Makes Little Sense...............................................16

    C.    Plaintiff Fails To Provide Any Justification—Or Any Viable Schedule—for Her Unexplained Request To Have the Case Argued Before the Summer Recess. ..................................................17

CONCLUSION ....................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Chen v. FBI*,
   No. 1:18-cv-03074 (D.D.C. Feb. 29, 2024)..............................................10, 14, 15

*Chen v. FBI*,
   No. 18-CV-3074, 2023 WL 6461011 (D.D.C. Sept. 6, 2023)..............2, 8, 13, 15

*In re Grand Jury Subpoena*,
   438 F.3d 1141 (D.C. Cir. 2006).........................................................................13

*Lee v. Dep't of Justice*,
   428 F.3d 299 (D.C. Cir. 2005)...............................................................2, 8, 12, 13

*Whole Woman's Health v. Smith*,
   896 F.3d 362 (5th Cir. 2018) ...............................................................................9

*Zerilli v. Smith*,
   656 F.2d 705 (D.C. Cir. 1981)..........................................................................2, 6

**Statutes**

28 U.S.C. § 1291 ...................................................................................................9

28 U.S.C. § 1292(b) ..............................................................................................7

**Other Authorities**

Dan Lamothe, *China's military seeks to exploit U.S. troops,
   veterans, general warns*, Wash. Post, Sept. 8, 2023............................................4

Natalie Gross, *DoD bans popular TA school from accepting the
   benefit*, Military Times, Apr. 6, 2018 ................................................................5

PRESS Act, H.R. 4250, 118th Cong. (2023)........................................................14

Steven Nelson, *Bill shielding press from feds could reach
   Biden's desk this year, Schumer says*, N.Y. Post, Mar. 7, 2024 .......................14

## INTRODUCTION

Plaintiff fails to provide any "strongly compelling" reason to grant the "very rare[]" relief of expediting this appeal. D.C. Cir. Handbook of Practice & Internal Procs. at 34 ("Handbook"). At bottom, her only rationale is that the case raises issues of great importance to the public that "will have significant ramifications going forward," and that the case has generated an "unusual level of public interest." Pl.'s Mot. to Expedite at 10, Doc. No. 2045902 ("Motion"). It is certainly true that Ms. Herridge's appeal raises important issues about the scope of the First Amendment reporter's privilege and will critically affect the public's interest in the functioning of a free press. The fact that the public has a strong interest in the merits of the case, however, does not establish the essential requirement for expedition, which is a particular public interest in *speed*. For expedition, Plaintiff would have to make a "strongly compelling" showing that the public has "an unusual interest in *prompt* disposition." Handbook at 34 (emphasis added). But Plaintiff has made no showing on that score. There is no upcoming event that will be affected by the Court's decision and that requires urgent resolution of the case. Instead, the immense importance of the issues counsels in favor of careful consideration through briefing under the ordinary schedule, not rushing the case through for an expedited decision.

There can be no question that the case involves First Amendment issues of the greatest importance. The court below held Ms. Herridge in contempt for refusing to disclose confidential source(s) to Plaintiff in her Privacy Act case. A central issue

on appeal is whether, in Privacy Act cases, the test for the First Amendment reporter's privilege under *Zerilli v. Smith*, 656 F.2d 705 (D.C. Cir. 1981), boils down to a mechanical question whether the plaintiff has exhausted other avenues for discovery—in which case Privacy Act plaintiffs will *always* succeed, eventually, in getting reporters' confidential sources. The last time this Court considered that question almost twenty years ago, it produced a tied four-four vote denying rehearing en banc and no definitive resolution. *See Lee v. Dep't of Justice*, 428 F.3d 299, 300 & nn. 1 & 5 (D.C. Cir. 2005). Judge Tatel and Judge Garland argued that reducing *Zerilli* to such an "arid" test would "allo[w] the exigencies of even the most trivial litigation to trump core First Amendment values." *Id.* at 301 (Tatel, J., dissenting from denial of reh'g en banc).

Pointing to "the Circuit's evenly split vote" in *Lee,* the court below acknowledged that there were "substantial grounds for difference of opinion" about its decision ordering disclosure of Ms. Herridge's confidential source(s), and predicted that "there is good reason to believe this case might generate en banc activity that could upend existing precedents." *Chen v. FBI*, No. 18-CV-3074, 2023 WL 6461011, at *2 (D.D.C. Sept. 6, 2023). Indeed, in resolving the dispute left open in *Lee*, this case will likely set the governing First Amendment standard that all journalists will have to operate under for the next two decades. That the case has such import for the functioning of the press, however, is not a reason for *expediting* the case. Instead, it counsels in favor of a regular schedule ensuring that the Court

can receive carefully considered briefs, including briefs from interested amici, fully addressing the constitutional issues at stake and that the briefing allows for full public transparency and scrutiny of the constitutional issues being decided.

Plaintiff's proposal for expedition also does not make practical sense. Even if it were entered today, the briefing schedule Plaintiff proposes (40 days for appellant's brief, 30 days for appellee, and 21 days for appellant's reply, *see* Mot. at 15), would result in the case being fully briefed in July—in the middle of the Court's summer recess. There is no justification for departing from ordinary scheduling simply to have briefs submitted in midsummer. Regular briefing would likely result in the case being argued in the fall, and thus Plaintiff has not provided any "strongly compelling" reason for adopting her schedule.

To the extent Plaintiff tacks on to the end of her brief an unexplained request that the case be argued *before* the summer recess, *see* Mot. at 15, Plaintiff has not even suggested how that would be possible. It is already April 3. Plaintiff's proposed schedule would not permit argument in May, and Plaintiff has not attempted to describe (or to justify) an extraordinary schedule that would permit a May argument. The very fact that Plaintiff has not even tried to suggest such a schedule confirms that a headlong rush to cram the case in by May cannot be justified. The motion to expedite should be denied.

## BACKGROUND

Ms. Herridge was the lead reporter on three stories in 2017 describing a counterintelligence investigation into Plaintiff, Yanping Chen, who is the founder of the University of Management Technology ("UMT"). The stories presented evidence that Plaintiff had been a colonel in the People's Liberation Army—the military of the Chinese Communist Party—and that she sought to hide that fact by lying on her immigration forms and telling others to lie under oath to a federal grand jury to conceal her past. Among other things, the stories featured on-camera interviews with a whistleblower who had worked at UMT and had served as an undercover FBI informant for the counterintelligence investigation. He explained that Plaintiff had admitted that she was a colonel in the PLA and, when it appeared that the whistleblower would be called before a federal grand jury, she told him to lie about her past military service. *See* Mem. in Response to the Order to Show Cause at 9, *Chen v. FBI*, No. 1:18-cv-03074 (Jan. 10, 2024), ECF No. 183. In addition, UMT, which catered primarily to military personnel, was gathering data on thousands of U.S. servicemembers—including their service history and training—and making it remotely accessible from China.[1] DOD was even funding UMT with millions of dollars in taxpayer money under a tuition assistance program.

---

[1] *Cf.* Dan Lamothe, *China's military seeks to exploit U.S. troops, veterans, general warns*, Wash. Post, Sept. 8, 2023, *available at* https://tinyurl.com/mrvcmhdv.

In 2018, DOD announced that it had concluded its own inquiry and that it had terminated UMT from the tuition program "on national security grounds."[2] The document in which DOD explained its national security decision is not classified and is part of the record in this case. Nevertheless, it is hidden from public view because it remains under seal in the district court, which prevents the public from understanding some of the key disputed issues in this case.[3]

When DOD terminated Plaintiff's university from the tuition program on national security grounds, Plaintiff never challenged DOD's decision in court. Instead, she sued several agencies under the Privacy Act seeking to have the federal government compensate her for the revenue she lost when DOD found UMT to be a national security threat, terminated UMT from the tuition assistance program, and publicly announced that decision. She sought to blame her losses on an alleged leak of Privacy Act information to Ms. Herridge. In other words, Plaintiff's Privacy Act case largely seeks to recover in Privacy Act damages the same payments that DOD deliberately terminated for national security reasons.

In June 2022, Plaintiff served subpoenas seeking to uncover Ms. Herridge's confidential source(s). Ms. Herridge moved to quash, raising both the First

---

[2] Natalie Gross, *DoD bans popular TA school from accepting the benefit*, Military Times, Apr. 6, 2018, https://tinyurl.com/3sfzyxbu.

[3] A motion to unseal that document has been under submission since January 10, 2024. *See* Reply in Support of Motion to Unseal, *Chen v. FBI*, No. 1:18-cv-03074 (Jan. 10, 2024), ECF No. 184.

Amendment reporter's privilege and a federal common law reporter's privilege. *See* Mem. in Support of Catherine V. Herridge's Mot. to Quash, *Chen v. FBI*, No. 1:18-cv-03074 (Aug. 1, 2022), ECF No. 94-1 ("Motion to Quash").

Ms. Herridge argued that, under this Court's controlling precedent on the reporter's privilege, the district court must "weigh[] the public interest in protecting the reporter's sources against the private interest in compelling disclosure." *Zerilli v. Smith*, 656 F.2d 705, 712 (D.C. Cir. 1981). That required weighing multiple factors in a broad assessment, including: (i) the likelihood that Plaintiff's Privacy Act claim would fail because her damages were actually caused by an independent DOD national security decision (not a leak of Privacy Act information); (ii) the fact that the objective of Plaintiff's Privacy Act lawsuit was to allow someone who had sought to conceal her service as a colonel in the PLA to recover, as damages, the same funding that DOD had cut off on the ground that Plaintiff and her operations at UMT created a national security risk; (iii) that requiring disclosure of confidential source(s) here would require identifying presumably U.S. government employee(s) to a person whom DOD determined to be a national security risk; and (iv) the importance of confidential sources to national security reporting and the public's interest in protecting the ability of a free press to provide such reporting. *See* Mot. to Quash at 26-39. Ms. Herridge argued for the same broad balancing under a federal common law reporter's privilege. *Id.* at 39-44.

On August 1, 2023, the district court denied in relevant part the motion to quash and required Ms. Herridge to appear for a deposition to identify her confidential source(s). *Chen*, 2023 WL 5289432, at *13 (D.D.C. Aug. 17, 2023). The court determined that balancing under *Zerilli* should largely be limited to two factors: (1) whether the information sought is central to the plaintiff's case ("centrality") and (2) whether the plaintiff has exhausted alternative avenues of discovery ("exhaustion"). *See id.* at *6. As Ms. Herridge pointed out, the problem with that approach in a Privacy Act case is that the identity of a source is always deemed "central" to a Privacy Act claim. As a result, the two-prong approach reduces *Zerilli* to a mechanical exhaustion requirement that involves no real balancing at all and under which a Privacy Act plaintiff *always* gets access to confidential sources, no matter how tenuous the claims are. The Court also rejected the existence of a federal common law reporter's privilege. *See id.* at *11-12.

Ms. Herridge promptly asked the district court to certify its order for interlocutory appeal under 28 U.S.C. § 1292(b). Mem. in Support of Mot. for Certification of Interlocutory Appeal, *Chen v. FBI*, No. 1:18-cv-03074 (Aug. 11, 2023), ECF No. 144-1. Ms. Herridge explained that an interlocutory appeal would be the most efficient way to bring the constitutional issues in this case in front of this Court and that it would speed ultimate resolution of the case. *See id.* at 14.

Plaintiff, however, adamantly opposed bringing the issues quickly before this Court. Instead, she insisted that she wanted: (i) to force Ms. Herridge to decline to

7

disclose her sources at a deposition, (ii) to pursue further briefing on contempt, and (iii) to secure an order holding Ms. Herridge in contempt. *See* Mem. in Opp. to Mot. for Certification of Interlocutory Appeal at 1, *Chen v. FBI*, No. 1:18-cv-03074 (Aug. 16, 2023), ECF No. 147.

On September 6, 2023, the district court denied the motion to certify its order for appeal. *See Chen*, 2023 WL 6461011, at *1. The court acknowledged that "there are . . . substantial grounds for a difference of opinion" about its decision requiring Ms. Herridge to divulge her source(s). *Id.* at *2. In particular, the court pointed to the evenly divided vote denying rehearing en banc in *Lee v. Department of Justice*, 428 F.3d 299 (D.C. Cir. 2005) (per curiam), where the disagreement turned on the exact same question presented in this case—the scope of balancing under *Zerilli*. The court recognized that "there is a substantial difference of opinion" about how to apply *Zerilli* "as evidenced by the Circuit's evenly split vote in" *Lee*. *Id.* at *2. And the court predicted that, "[g]iven this disagreement and the importance of the First Amendment issues here, there is good reason to believe this case might generate en banc activity that could upend existing precedents." *Id.* The court also acknowledged that allowing an immediate appeal "would materially advance the litigation," that the "roundabout path to the D.C. Circuit" through contempt would add delay, and that "denying certification will probably further delay resolution here." *Id.* Nevertheless, at Plaintiff's urging, the court exercised its discretion to deny an interlocutory appeal. *Id.* at *3.

Ms. Herridge also sought to accelerate this Court's ruling on the merits by appealing under 28 U.S.C. § 1291 and the collateral order doctrine. *See* Emergency Mot. to Stay, *Chen v. FBI*, No. 23-5198 (D.C. Cir. Sept. 18, 2023), Doc. No. 2017416; *see also, e.g.*, *Whole Woman's Health v. Smith*, 896 F.3d 362, 368 (5th Cir. 2018) ("[I]nterlocutory court orders bearing on First Amendment rights remain subject to appeal pursuant to the collateral order doctrine."). This Court dismissed that appeal for lack of jurisdiction, holding that Ms. Herridge could disobey the district court's order and "appea[l] from any contempt citation." Per Curiam Order at 1, *Chen v. FBI*, No. 23-5198 (D.C. Cir. Sept. 25, 2023), Doc. No. 2018838.

Accordingly, Ms. Herridge was left with no avenue for an appeal other than through a contempt proceeding.

In September 2023, Plaintiff deposed Ms. Herridge. When asked to reveal her confidential source(s), Ms. Herridge made clear that she respected the district court's order and had no wish to defy it, but that she had been left with no other alternative to secure appellate review of her constitutional rights. As she stated:

> I have complete respect for the court and its authority and for the order. I have no desire to defy a court order, but my understanding is that the courts have ruled that in order to seek further judicial review, I must now disobey the order, and for that reason, among others, I am invoking my First Amendment rights and declining to answer the question.

Mem. in Resp. to Order to Show Cause 14-15, *Chen v. FBI*, No. 1:18-cv-03074 (Jan. 10, 2024), ECF No. 183 (quoting Dep. of Catherine V. Herridge at 19:17-20:13).

After Plaintiff filed a motion seeking contempt sanctions, on February 29, 2024, the district court held Ms. Herridge in civil contempt. Mem. Op. and Order, *Chen v. FBI*, No. 1:18-cv-03074 (Feb. 29, 2024), ECF No. 193 ("Contempt Order"). The court stayed any sanction pending appeal. *See id.* at 24. In explaining that the stay factors were satisfied, the court noted that Plaintiff could not show any material harm from a stay pending an appeal in the ordinary course. As the court explained, "the time it will take to pursue an appeal is somewhat marginal in comparison to the five years" that the case has been pending. *Id.* at 22-23.

Ms. Herridge promptly filed her notice of appeal on March 8, 2024. Notice of Appeal, *Chen v. FBI*, No. 1:18-cv-03074 (Mar. 8, 2024), ECF No. 194.

After previously opposing every effort to bring the First Amendment issues in this case before this Court more quickly, Plaintiff has now changed course. Having secured the contempt order she desired, Plaintiff now wants an abbreviated schedule for Ms. Herridge's appeal.

## ARGUMENT

### A. Plaintiff Fails To Provide Any Justification for Expediting Ms. Herridge's Appeal.

Plaintiff does not advance any sound basis for expediting this appeal. Her arguments boil down to the assertion that the case presents "important issues" in which there is an "unusual level of public interest" and that the Court's decision "will have significant ramifications going forward." Mot. at 10. It is certainly true

that the First Amendment issues in this case have immense importance and that the Court's decision will have a tremendous impact nationally on the functioning of the press for years into the future. This case may set the standards for the First Amendment reporter's privilege—and thus for protecting journalists' confidential sources—for a generation. But to justify expedition, it is not enough to show a strong public interest in the merits of the appeal. Instead, Plaintiff must make a "strongly compelling" showing that the public has an "unusual interest in *prompt* disposition." Handbook at 34 (emphasis added). That is, she must show an unusual public interest in a *quick* decision. Plaintiff makes no compelling showing on that score. There is no upcoming event—such as an election or the start of school year—that requires the issues in this case to be resolved before a particular time to avoid massive disruptions. And contrary to Plaintiff's suggestions, the importance of the issues and the impact that this case will likely have for years into the future counsel in favor of careful briefing and considered deliberation in the ordinary course, not an abbreviated schedule to rush this appeal through to a finish.

This case presents at least two issues of critical importance that counsel in favor of permitting careful briefing and deliberation under an ordinary schedule. First, one central issue will be the proper scope of the balancing test announced in *Zerilli* for the application of the First Amendment reporter's privilege. The last time this Court considered that issue in 2005, it produced a tied four-four vote denying rehearing en banc and no definitive resolution. *See Lee v. Dep't of Justice*, 428 F.3d

299, 300 & nn. 1 & 5 (D.C. Cir. 2005). *Lee* presented the same question at issue in this case—whether balancing under *Zerilli* can be reduced largely to two factors: (i) whether the information sought is "central" to the case, and (ii) whether the plaintiff has exhausted alternative avenues for discovery. *See id.* at 302 (Garland, J., dissenting from denial of reh'g en banc). The question is vitally important in Privacy Act cases (like this case), because the identity of a source is always deemed "central" to the case. Thus, reducing *Zerilli* to centrality and exhaustion really means reducing it solely to an exhaustion requirement under which a plaintiff *always* gets access to a reporter's confidential sources eventually, no matter how trivial or tenuous the claim.

Judge Tatel and then-Judge Garland dissented from the denial of rehearing en banc in *Lee* expressly on the ground that *Zerilli* required a broad balancing of interests, exactly as Ms. Herridge argues in this case. *See id.* at 301-03 (Tatel, J., joined by Garland, J., dissenting from denial of reh'g en banc). They objected that reducing *Zerilli* to an "arid two-factor test" would "allo[w] the exigencies of even the most trivial litigation to trump core First Amendment values." *Id.* at 301. Their position secured four votes for rehearing en banc, including Judge Rogers, who noted that it was "evident" that "there are different views regarding the proper application of *Zerilli* in Privacy Act cases." *Id.* at 300 (Rogers, J., dissenting from denial of reh'g en banc). The tied vote failing to bring *Lee* before the Court en banc left these disputes about *Zerilli* unresolved and they remain unresolved to this day.

12

In fact, pointing to "the Circuit's evenly split vote in" *Lee*, the court below recognized that "there is a substantial difference of opinion" about how to apply *Zerilli* and predicted that, "[g]iven this disagreement and the importance of the First Amendment issues here, there is good reason to believe this case might generate en banc activity that could upend existing precedents." *See Chen*, 2023 WL 6461011, at *2. A case that may generate en banc activity to resolve a twenty-year-old disagreement on the Circuit calls for careful consideration in the ordinary course, not an abbreviated schedule.

Ms. Herridge's appeal also presents the weighty question whether a federal common law reporter's privilege should be recognized. The last time this Court considered that issue, a splintered panel failed to come to a majority view. Judge Sentelle rejected such a privilege. *See In re Grand Jury Subpoena*, 438 F.3d 1141, 1153-59 (D.C. Cir. 2006) (Sentelle, J., concurring). Judge Tatel argued for it. *See id.* at 1163-83 (Tatel, J., concurring in judgment). And Judge Henderson concluded only that, if such a privilege existed, it would have been overcome in that case. *See id.* at 1159 (Henderson, J., concurring). Given those divergent views, the existence of such a privilege also presents a substantial question that the Court will have to weigh thoughtfully. As the district court acknowledged, the Court may "recognize a new federal common law newsgathering privilege broader than the constitutional

analog." Contempt Order at 22.[4]  Once again, careful consideration of that issue, including full participation of amici, counsels in favor of briefing in the ordinary course, not an expedited schedule.

Plaintiff claims that two additional factors support expedition, but neither point has any merit.  First, Plaintiff notes that this Court may consider expedition when granting a stay pending appeal.  *See* Mot. at 14.  But that simply means that expedition may be warranted where there will be some *harm* to a party (or the public) during the time it takes for an ordinary appeal.  Plaintiff cannot point to any such harm here.  Indeed, the court below considered that point in granting a stay and concluded there was no harm to Plaintiff.  As the court below explained, "the time it will take to pursue an appeal is somewhat marginal in comparison to the five years" that the case has been pending.  Contempt Order at 23.[5]  Plaintiff cannot and does

---

[4] The Court's consideration of that issue may also be informed by activity in Congress.  In January, the House of Representatives passed the PRESS Act, a federal press shield law that would protect reporters' confidential sources in cases like this.  *See* PRESS Act, H.R. 4250, 118th Cong. (2023).  And the Senate Majority Leader recently announced that he hoped to have the bill through the Senate and on the President's desk this year.  *See* Steven Nelson, *Bill shielding press from feds could reach Biden's desk this year, Schumer says*, N.Y. Post, Mar. 7, 2024, https://nypost.com/2024/03/07/us-news/bill-shielding-press-from-feds-could-reach-bidens-desk-this-year-schumer-says/.

[5] Plaintiff is also wrong in claiming that Ms. Herridge previously suggested that expediting an appeal would be appropriate due to the importance of the issues in this case.  *See* Mot. at 10.  When Ms. Herridge attempted to appeal last fall and sought a stay pending appeal, she simply noted that, *if* the Court believed there might be harm to Plaintiff from a stay, that harm could be mitigated by expediting the appeal.  *See* Emergency Mot. for Stay Pending Appeal at 5, 20-21, *Chen v. Herridge*, No. 23-5198 (D.C. Cir. Sept. 18, 2023), Doc. No. 2017416.  As the court below explained

not claim that the information she seeks from Ms. Herridge will somehow be lost during the pendency of an appeal, and the rest of discovery in the underlying case has long been finished. Next, Plaintiff strangely points to a provision calling for expedition in cases where a witness has been jailed. *See* Mot. at 14-15 (citing 28 U.S.C. § 1657 and 28 U.S.C. § 1826). That provision is irrelevant. Ms. Herridge has not been jailed, and the district court stayed any sanction pending appeal. The rationale for expediting the cases of imprisoned witnesses is thus wholly inapplicable. And in any event, that provision is designed to protect *witnesses*, like Ms. Herridge, not to permit the opposing party to rush through a witness's appeal.

Finally, Plaintiff is not well positioned to suddenly claim that there is an imperative need for speed in this case. Seven months ago, Ms. Herridge sought to bring an interlocutory appeal that would have hastened resolution of the case. Indeed, the district court recognized that an interlocutory appeal "would materially advance the litigation" and that "denying certification will probably further delay resolution here." *Chen*, 2023 WL 6461011, at *2. If Plaintiff had not opposed that motion, the interlocutory appeal likely would have been certified and the case would have been fully briefed and ready for argument by now, if not already argued. Instead, Plaintiff insisted on pursuing contempt, which meant that there was not an

---

in granting a stay, there is no harm to Plaintiff here from "the time it will take to pursue an appeal," which confirms that there is no need for expedition. Contempt Order at 23.

appealable order until February 29, 2024. That delay was Plaintiff's strategic choice, because Plaintiff did not want swift resolution of the legal issues without the threat of a contempt sanction hanging over Ms. Herridge's head. Having opted for a delayed procedure when she thought it was to her advantage, Plaintiff is not well positioned to claim that speed is imperative now.

Indeed, it is telling that Plaintiff sums up her view of the case in these terms: "Now that . . . Herridge is in contempt, there is 'good cause' to expeditiously resolve this matter." Mot. at 13-14. In other words, Plaintiff's view is that, "now that I've secured the order I want, it's time to speed things up." That is obviously not a principled basis for seeking expedition and suggests simply that Plaintiff wants to speed past review in this Court as the best strategy for leaving the district court's decision in place.

### B. Plaintiff's Proposed Schedule, Requiring Briefing To Be Completed in July, Makes Little Sense.

Plaintiff's proposed briefing schedule simply confirms that there is no sound basis for expedition. Under Plaintiff's schedule (40 days for appellant's brief, 30 days for appellee, and 21 days for appellant's reply, *see id.* at 15), the case would be fully briefed in July—in the middle of the Court's summer recess. There is no sound reason for accelerating briefing to have briefs submitted in July. Briefing in the ordinary course will also likely result in argument being scheduled for this fall, and accordingly there is no compelling reason to depart from the ordinary schedule.

### C. Plaintiff Fails To Provide Any Justification—Or Any Viable Schedule—for Her Unexplained Request To Have the Case Argued Before the Summer Recess.

Apparently as an afterthought, on the second to last page of her motion, Plaintiff suggests for the first time that she would like to have this case argued before the Court's summer recess. *See id.* at 15. That half-hearted and wholly unexplained request should be rejected.

Plaintiff does not even attempt to provide a schedule that would permit a May argument, nor does she provide any rationale to justify a headlong rush to brief this case in a timeframe for a May argument. It is already April 3. Plaintiff's representation that the schedule she proposes "would also ensure that the case is fully briefed in time for oral argument before this Court's summer recess," *id.* at 15, is simply not true. Even if Plaintiff's schedule were adopted, briefing would not be complete until the first week of July. Plaintiff does not even attempt to propose a schedule that would actually permit a May argument. The very fact that Plaintiff does not offer such a proposal confirms that there can be no justification for a breakneck rush to jettison an ordinary briefing cycle to argue this case in May. Where Plaintiff herself has not even proposed a schedule to permit a May argument—or tried to justify such a schedule—the Court should not abandon ordinary process to ram through the important constitutional issues in this case without adequate time for full briefing and amicus participation.

## CONCLUSION

The Court should deny the motion to expedite and allow briefing in the ordinary course.


April 3, 2024

Respectfully submitted,

/s/ Patrick F. Philbin
Patrick F. Philbin
Kyle T. West
Chase Harrington
TORRIDON LAW PLLC
1155 F Street, N.W.
Suite 750
Washington, DC 20004
(202) 249-6633
pphilbin@torridonlaw.com

*Counsel for Catherine V. Herridge*

**CERTIFICATE OF COMPLIANCE**

This motion complies with the type-volume limit set out in Federal Rule of Appellate Procedure 27(d)(2) because it contains 4,552 words. This motion also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)-(2) and 32(a)(5)-(6) because it was prepared using Microsoft Word in Times New Roman 14-point font, a proportionally spaced typeface.

April 3, 2024 /s/ Patrick F. Philbin

Patrick F. Philbin

**CERTIFICATE OF SERVICE**

I hereby certify that on April 3, 2024, the foregoing document was electronically filed with the Clerk and served on the parties using the Clerk's electronic filing system.


April 3, 2024                           /s/ Patrick F. Philbin
                                        Patrick F. Philbin