**PUBLIC COPY—SEALED MATERIAL DELETED**

**No. 24-5050**

IN THE

# United States Court of Appeals for the District of Columbia Circuit

YANPING CHEN,
*Plaintiff-Appellee*,

*v.*

FEDERAL BUREAU OF INVESTIGATION, et al.,
*Defendants-Appellees*,

CATHERINE V. HERRIDGE,
*Appellant*.

On Appeal from the United States District Court for the District of Columbia, No. 1:18-cv-03074-CRC

## REPLY BRIEF FOR APPELLANT CATHERINE V. HERRIDGE

Patrick F. Philbin
Kyle T. West
Chase Harrington
TORRIDON LAW PLLC
801 Seventeenth Street, N.W.
Suite 1100
Washington, DC 20006
(202) 249-6900
pphilbin@torridonlaw.com

*Counsel for Catherine V. Herridge*

August 12, 2024

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), counsel for Non-Party-Appellant Catherine V. Herridge certifies as follows:

### A. Parties, Intervenors, and Amici Curiae

Appellant in this case and non-party witness in the district court is Catherine V. Herridge. Fox News Network LLC is also a non-party witness in the district court.

Appellee in this case and Plaintiff in the district court is Yanping Chen.

Defendants in the district court are the Federal Bureau of Investigation, the U.S. Department of Justice, the U.S. Department of Defense, and the U.S. Department of Homeland Security.

Reporters Committee for Freedom of the Press filed a brief as amicus curiae in the district court.

Amici appearing before this Court include: Senator Ted Cruz; Asian American Legal Defense and Education Fund; CBS Broadcasting, Inc., d/b/a CBS News; Committee to Protect Journalists; Asian Americans Advancing Justice Southern California; Dow Jones & Company, Inc.; Asian Americans United; Gannett Co., Inc.; Asian Law Alliance; Hearst Corporation; Asian Law Caucus; Los Angeles Times Communications LLC; APA Justice Task Force; NBCUniversal

Media, LLC; Chinese for Affirmative Action; National Newspaper Association; Fred T. Korematsu Center for Law and Equality; National Press Photographers Association; Helen Zia and the Vincent Chin Institute; News/Media Alliance; Japanese American Citizens League; POLITICO, LLC; Muslim Advocates; Pro Publica, Inc.; Stop AAPI Hate; Radio Television Digital News Association; Reuters News & Media Inc.; Society of Professional Journalists; TEGNA Inc.; TIME USA, LLC; The Associated Press; The Atlantic Monthly Group, LLC; The Center for Investigative Reporting; The Guardian U.S.; The National Press Club; The New York Times Company; The Reporters Committee for Freedom of the Press; The Seattle Times Company; and The Washington Post.

**B. Rulings Under Review**

The rulings under review are: (1) the Order of the District Court for the District of Columbia entered on August 1, 2023 (Dkt. 140) (redacted version filed on August 17, 2023, Dkt. 148) denying Ms. Herridge's motion to quash and compelling her to give deposition testimony identifying her confidential source(s); (2) the Order of the District Court for the District of Columbia entered on February 29, 2024 (Dkt. 193) adjudging Ms. Herridge in civil contempt, and (3) all other orders antecedent to such orders and thus incorporated therein. Each of the rulings under review was issued by United States District Judge Christopher R. Cooper. These Rulings are reproduced at JA__ and JA__.

### C. Related Cases

This case was previously before this Court in *Chen v. FBI*, No. 23-5198 (2023), which the Court dismissed for lack of appellate jurisdiction. Undersigned counsel is not aware of any related cases pending in this Court or any other court.

August 12, 2024

Respectfully submitted,

/s/ *Patrick F. Philbin*

Patrick F. Philbin
Kyle T. West
Chase Harrington
TORRIDON LAW PLLC
801 Seventeenth Street, N.W.
Suite 1100
Washington, DC 20006
(202) 249-6900
pphilbin@torridonlaw.com

*Counsel for Catherine V. Herridge*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................ 1

ARGUMENT .............................................................................................. 4

I. The District Court Erred by Reducing *Zerilli* to a Two-Factor Test Based on Centrality and Exhaustion............................................................ 4

A. *Zerilli* Adopted Balancing Interests, Not a Two-Factor Test. ............. 4

B. Applying the Balancing Called for by *Zerilli* and Ensuring that the First Amendment Privilege Prevails in Most Cases Is Not "Unworkable," "Insidious," or "Un-American." ................................ 11

C. Balancing Under *Zerilli* Requires Assessing Defects in Plaintiff's Case and the Extent to Which It May Fail on Summary Judgment. ........................................................................................... 15

II. Under *Zerilli* Balancing, the First Amendment Privilege Should Prevail. ..................................................................................................... 17

A. Plaintiff's Private Interest in Securing Damages Under the Privacy Act Weighs Little in the Balance. ......................................... 17

1. Plaintiff Cannot Secure Privacy Act Damages for DOD's Independent National Security Decision. ................................ 19

2. There Is a Serious Risk Plaintiff's Suit Effectively Seeks Taxpayer Dollars to Fund Illicit Activity. ................................ 20

3. Almost All the Information in the Stories About Plaintiff Did Not Involve Privacy Act Disclosures................................ 22

4. Plaintiff's' Claim that She Is Vindicating the Privacy Act Adds Little to the Balance on the Facts of This Case.............. 23

B. The Public Interest in Upholding Protections for a Free Press Overwhelms Plaintiff's Interest in Minimal Damages. ...................... 24

III. The Court Should Recognize a Federal Common Law Reporter's Privilege. ................................................................................................. 26

CONCLUSION ........................................................................................................ 28

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Baker v. F&F Investment*,
470 F.2d 778 (2d Cir. 1972) ....................................................................7

*Branzburg v. Hayes*,
408 U.S. 664 (1972)....................................................................26

*Bruno & Stillman, Inc. v. Globe Newspaper Co.*,
633 F.2d 583 (1st Cir. 1980)....................................................................16

*Carey v. Hume*,
492 F.2d 631 (D.C. Cir. 1974)....................................................................16

*Chen v. FBI*,
No. 23-5198 (2023).................................................................... iii

*Crawford-El v. Britton*,
523 U.S. 574 (1998)....................................................................15

*Dietz v. Bouldin*,
579 U.S. 40 (2016)....................................................................15

*FedEx Home Delivery v. NLRB*,
849 F.3d 1123 (D.C. Cir. 2017)....................................................................9

*Fleck v. Dep't of Veterans' Affs. Off. of Inspector Gen.*,
596 F. Supp. 3d 24 (D.D.C. 2022)....................................................................20

*Garcetti v. Ceballos*,
547 U.S. 410 (2006)....................................................................13

*Gen. Dynamics Corp. v. United States*,
563 U.S. 478 (2011)....................................................................13

*Grunseth v. Marriott Corp.*,
868 F. Supp. 333 (D.D.C. 1994)....................................................................9, 10

*Authorities upon which we chiefly rely are marked with asterisks.

*Hand v. Gary*,
838 F.2d 1420 (5th Cir. 1988) ....................................................................19

*Hatfill v. Baltimore Sun Co.*, No. 08-5049, Doc. No. 1104546 (D.C. Cir. Mar. 11, 2008).............................................................................................25

*Hatfill v. Baltimore Sun Co.*, No. 08-5049, Doc. No. 1149629 (D.C. Cir. Nov. 17, 2008) .............................................................................................25

*Hatfill v. Mukasey*,
539 F. Supp. 2d 96 (D.D.C. 2008)...............................................................25

*Hotel Oakland Assocs. v. Doyle Real Est. Advisors, LLC*,
No. 21-CV-05389, 2022 WL 1493267 (N.D. Cal. May 3, 2022) ......................20

*Jaffee v. Redmond*,
518 U.S. 1 (1996).............................................................................................26

*Kennedy v. Bremerton Sch. Dist.*,
597 U.S. 507 (2022)...................................................................................12, 13

*Lee v. Dep't of Justice*,
413 F.3d 53 (D.C. Cir. 2005)...........................................................................8, 9

*Lee v. Dep't of Justice*,
428 F.3d 299 (D.C. Cir. 2005)....................................................................12, 26

*Marrese v. Am. Acad. of Orthopaedic Surgeons*,
726 F.2d 1150 (7th Cir. 1984) ........................................................................15

*Molerio v. FBI*,
749 F.2d 815 (D.C. Cir. 1984).........................................................................13

*N.Y. Times Co. v. United States*,
403 U.S. 713 (1971).........................................................................................25

*Shoen v. Shoen*,
5 F.3d 1289 (9th Cir. 1993) ............................................................................14

*Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*,
200 F.3d 795 (Fed. Cir. 1999) ........................................................................15

*Zerilli v. Smith*,
656 F.2d 705 (D.C. Cir. 1981)......... 1, 2, 4, 5, 6, 7, 11, 12, 14, 16, 17, 18, 22, 26

**OTHER AUTHORITIES**

*News Firms Settle With Wen Ho Lee*, CBSNews (June 2, 2006),
https://www.cbsnews.com/news/news-firms-settle-with-wen-ho-lee/...............25

## INTRODUCTION

Plaintiff stakes her case on the mistaken view—adopted by the district court—that *Zerilli v. Smith*, 656 F.2d 705 (D.C. Cir. 1981), set a bright-line, "two-factor test" (Br. 20) for applying the First Amendment reporter's privilege. According to Plaintiff, *Zerilli* asks only two questions: (i) is the information sought central to the litigant's claim; and (ii) has the litigant exhausted other avenues of discovery. Plaintiff does not dispute that, in a Privacy Act case, a reporter's confidential source is always central to the claim, and thus reducing *Zerilli* to those factors means reducing it to an exhaustion test under which *every* Privacy Act plaintiff can override the First Amendment privilege and get access to confidential sources eventually. At the same time, Plaintiff does not offer a single word to reconcile this plaintiff-always-gets-access rule with the core instructions from *Zerilli* that applying the First Amendment privilege calls for balancing interests, that the privilege must "prevail in all but the most exceptional cases," and that "in the ordinary case the civil litigant's interest in disclosure should yield to the journalist's privilege." *Id.* at 712. Plaintiff does not grapple with those commands, she simply ignores them.

While Plaintiff's brief is short on analysis of *Zerilli*, it is long on overblown rhetoric designed to divert attention from the defects in Plaintiff's position. Contrary to Plaintiff's assertions, it is not "insidious" or "un-American"—nor does it involve treating some people as not "worthy" of the law's protection (Br. 4, 36, 39)—to

follow *Zerilli*'s instruction that society's interest in preserving First Amendment protections requires the privilege to prevail "in all but the most exceptional cases." *Zerilli*, 656 F.2d at 712. It is inherent in recognizing an evidentiary privilege that, in some cases, the privilege will prevent a litigant's claim from proceeding. Determining which are the "rare" cases that present an "interest sufficiently compelling to override [the] privilege," *id.* at 712 n.45, necessarily demands distinguishing between different claims. That does not mean that courts will "apply the law unequally." Br. 4. Instead, it means they will apply equally the principle that First Amendment interests require protecting confidential sources and that few cases raise sufficiently important interests to overcome the societal need to protect the flow of information to a free press.

Similarly, it is not "un-American," nor does it involve "hurling unsubstantiated accusations" (Br. 33), to rely on findings of fact entered by the Department of Defense (DOD) when it determined that Plaintiff and her school presented a national security risk. Plaintiff would like the Court to ignore those findings. And her efforts to have DOD's findings disappear from memory have been aided by the fact that DOD's decision has been under seal in this proceeding—so that no one reading the public filings can understand what DOD independently

concluded and what the district court wrongly refused to consider in the balancing test.[1]

DOD's decision is critical because it wholly undermines any weight that could be given to Plaintiff's Privacy Act claim in the balance under *Zerilli*. First, Plaintiff cannot claim damages for DOD's independent action cutting off tuition assistance, and that alone wipes out the bulk of her claim. Second, DOD's factual findings are devastating. DOD found that Plaintiff [redacted] Those findings raise the serious risk that Plaintiff's Privacy Act lawsuit may be seeking to recover funding for illicit activity. That cannot be ignored in any rational balancing under *Zerilli*.

On top of that, Plaintiff does not dispute on appeal that almost all the information in Ms. Herridge's articles was already public in an FBI affidavit and thus disclosing it could not involve a Privacy Act violation. Instead, she asks the

---

[1] Sealing the DOD decision is especially unjustified given that Plaintiff's letter to the Deputy Secretary of Defense complaining about the decision (and selectively disclosing aspects of it) is on the public docket. JA___[Dkt._113-35].

Court to rule on the assumption that her claim may largely fail, but insists that even a trivial claim for damages should prevail over the First Amendment.

On the other side of the balance, Plaintiff presents nothing to rebut the evidence from experts in investigative journalism who have explained that ordering the disclosure of Ms. Herridge's confidential source(s) would have a broad chilling effect on the willingness of potential sources to work with reporters.

In short, Plaintiff provides no basis for the Court to conclude that her claims present a "most exceptional case[]," *Zerilli*, 656 F.2d at 712, that warrants overriding the First Amendment privilege. The judgment of contempt should be reversed.

## ARGUMENT

### I. The District Court Erred by Reducing *Zerilli* to a Two-Factor Test Based on Centrality and Exhaustion.

Plaintiff does not dispute that the district court reduced *Zerilli* to a two-prong test based on centrality and exhaustion. Indeed, she insists that "*Zerilli* set forth a two-factor test." Br. 20. But Plaintiff cannot reconcile that approach with the plain terms of *Zerilli*, nor can she justify it with various attacks on the balancing called for by *Zerilli*.

#### A. *Zerilli* Adopted Balancing Interests, Not a Two-Factor Test.

Plaintiff dismisses *Zerilli*'s call for balancing as a "general statement" (Br. 19), as if it were a mere passing reference. That distorts what *Zerilli* said. *Zerilli* squarely announced that "to determine whether the [First Amendment] privilege

applies courts should look to the facts of each case, weighing the public interest in protecting the reporter's sources against the private interest in compelling disclosure." 656 F.2d at 712. That language unmistakably demands individually weighing the interests at stake in each case. The Court did not endorse that balancing approach just once, or in a passing aside. It repeatedly explained that "a balancing approach should be applied," and that courts should "strik[e] [a] balance between the civil litigant's interest in compelled disclosure and the public interest in protecting a newspaper's confidential sources." *Id.*

Tellingly, *Zerilli* expressly considered whether such case-by-case balancing would fail to provide sufficient "certainty" to "reporters and informers" about protections for confidential sources and whether a test with more "specificity" was needed. *Id.* at 712 n.46. Rejecting those concerns, the Court defended "the case-by-case balancing approach we have adopted" on the view that it would provide sufficient certainty "so long as the privilege is overridden only in rare circumstances." *Id.* If *Zerilli* had actually adopted a two-factor test (as Plaintiff claims), there would have been no need for the Court to defend a less mechanical case-by-case balancing.

When *Zerilli* went on to identify "[a] number of more precise guidelines" to aid in "determin[ing] how the balance should be struck," *id.* at 713, it was providing guideposts to assist in balancing. It was not replacing balancing with a mechanical

test. In fact, the Court's language would make no sense if *Zerilli* actually imposed a two-factor test. For example, *Zerilli* instructed that, in "striking the balance," a court should be "mindful of the preferred position of the First Amendment and the importance of a vigorous press" and explained that, in balancing interests, "efforts will be taken to minimize impingement upon the reporter's ability to gather news." *Id.* at 712. If *Zerilli* were actually instructing courts to apply a two-factor test, there would be no room for "efforts" to minimize intrusions on First Amendment rights. The two-factor test would produce a mechanical result. The language in *Zerilli* makes sense only in the context of a genuine balancing of factors in which the court has discretion to adjust the balance to give appropriate protection to the First Amendment privilege.

*Zerilli* also made clear that centrality and exhaustion are not a complete test in themselves. After holding that the identity of the source in that case was "central" to the claim but that the plaintiff had failed to exhaust alternatives, the Court emphasized that it was not deciding "whether compelled disclosure would have been appropriate if appellants had fulfilled their obligation to exhaust alternative sources." *Id.* at 714 n.52. In other words, the two factors are not the end of the analysis. *Even if* the plaintiff had met *both* the centrality *and* exhaustion requirements, that would not necessarily result in disclosing a reporter's confidential sources. Plaintiff has no response to that square rejection of a two-part test. She simply ignores it.

Plaintiff also does not offer a *single word* to reconcile a two-factor test with *Zerilli*'s core instruction that courts should ensure that the privilege would "prevail in all but the most exceptional cases." *Id.* at 712. Plaintiff does not dispute that the identity of a reporter's source is always deemed central to a Privacy Act claim. Nor does she dispute what logically follows—that in Privacy Act cases, a test limited to centrality and exhaustion becomes an exhaustion-only test under which the plaintiff eventually gets access to confidential sources in *every case*, no matter how trivial the claim or how strong the First Amendment interest at stake.

That outcome is flatly irreconcilable with *Zerilli*'s express instruction that courts should ensure that the privilege would "prevail in all but the most exceptional cases." *Id.* *Zerilli* repeatedly cautioned that "in the ordinary case the civil litigant's interest in disclosure should yield to the journalist's privilege," that an "interest sufficiently compelling to override [the] privilege will be rare," and that "cases in which First Amendment rights must yield are 'few in number.'" *Id.* at 712 & n.45 (quoting *Baker v. F&F Investment*, 470 F.2d 778, 783 (2d Cir. 1972)). The Court also explained that balancing interests would result in the privilege being "overridden only in rare circumstances." *Id.* at 712 n.46. A mechanical test turning on centrality and exhaustion—which would mean that *every* Privacy Act plaintiff gets access to confidential sources eventually—is flatly at odds with those

instructions. Once again, Plaintiff has no response. She simply ignores the plain terms of *Zerilli*.

At bottom, Plaintiff argues for a test under which, if a civil litigant can show (i) that she needs the information for her case and (ii) that she cannot get it elsewhere, her need trumps First Amendment protections every time. But that is not the constitutional rule that *Zerilli* adopted. Instead, *Zerilli* instructed that, in the vast majority of cases, a civil litigant's need for privileged information would not justify incurring the societal costs of overriding the First Amendment privilege.

If the *Zerilli* Court had actually adopted a rule that, whenever a litigant really *needs* access to a confidential source for a claim to proceed, the First Amendment must yield every time, it would have written a very different opinion.

Plaintiff also gets no support for her gloss on *Zerilli* from the decision in *Lee*. *See Lee v. Dep't of Justice*, 413 F.3d 53 (D.C. Cir. 2005). Nothing in *Lee* changed the law of the Circuit established in *Zerilli*, calling for a case-by-case balancing of interests. To be sure, the *Lee* Court essentially ended its analysis after considering centrality and exhaustion. *See id.* at 60-61. But *Lee* did not consider weighing further factors and *reject* that approach. It was simply silent on the subject. That cannot be read as rewriting the balancing called for in *Zerilli*. Moreover, even if *Lee* had clearly said that analysis must end with the two factors of centrality and exhaustion (it did not), this Court would be bound to follow the clear instruction

from *Zerilli* to apply a case-by-case balancing. *See, e.g.*, *FedEx Home Delivery v. NLRB*, 849 F.3d 1123, 1127 (D.C. Cir. 2017) ("[W]hen a conflict exists within our own precedent … a subsequent panel is bound by the earlier of the two conflicting decisions." (quotation omitted)). The *Lee* panel could not overrule or modify *Zerilli* and cut back on the balancing test adopted there, and it certainly could not do so *sub silentio* by merely applying a truncated analysis without even discussing whether broader balancing was intended under *Zerilli*.

Plaintiff fares no better with her assertions (Br. 22) that district judges have agreed that *Zerilli* turns solely on centrality and exhaustion. Lower court interpretations are not binding here. In any event, Plaintiff cites only two decisions, and to the extent she suggests that *all* district courts have agreed with that approach, that is not accurate.

As Ms. Herridge explained below, the court in *Grunseth v. Marriott Corp.*, 868 F. Supp. 333 (D.D.C. 1994), considered exactly the sort of factors that *Zerilli* envisioned in a broader balancing. That case involved a former candidate for office whose extramarital affair was disclosed by a newspaper, causing him to withdraw his candidacy and (he claimed) lose his job. *Id.* at 334. He sued Marriott for disclosing to the newspaper records related to a hotel stay (allegedly related to his affair) and he sought to discover the reporter's source inside Marriott. In denying discovery, the court noted that the information was not central to the plaintiff's

claims and that he had not exhausted other avenues of discovery, but it did not end its analysis there. *Id.* at 335-36. The court also explained that "Plaintiff has demonstrated no overwhelming or compelling societal interest in overcoming the presumption favoring First Amendment protections for a reporter's sources." *Id.* at 335-36. The court went on: "[t]his is not a case involving election fraud, or governmental corruption, or any other issue that affects the fundamental validity of the electoral process." *Id.* at 336. As that reasoning makes clear, the court believed that, to overcome the privilege, the plaintiff's case would have to promote some broader interest—like addressing election fraud—rather than advancing only the plaintiff's interest in damages. The court concluded that "[w]hile one can feel sympathy for any individual who has to endure public humiliation," the plaintiff's private interest in redress did not raise a sufficiently compelling interest to override First Amendment protections for the press. *Id.* That is precisely the sort of broader weighing of interests that *Zerilli* called for.[2]

To the extent that *Lee* may have sown confusion about *Zerilli*, the Court should use this opportunity to return to the clear instructions of *Zerilli* and clarify the balancing analysis set out in that case.

---

[2] The court below did not dispute that *Grunseth* applied a broader balancing under *Zerilli*. Instead, it dismissed *Grunseth* as "inconsistent with both *Lee*'s analysis and the trend in this district." JA___[Dkt._148_at_13_n.3].

### B. Applying the Balancing Called for by *Zerilli* and Ensuring that the First Amendment Privilege Prevails in Most Cases Is Not "Unworkable," "Insidious," or "Un-American."

Plaintiff also cannot advance the ball with various assertions that the genuine balancing called for by *Zerilli* is "unworkable," "unfeasible," or somehow "insidious" or that it involves "apply[ing] the law unequally." Br. 4, 36, 39. To start, Plaintiff mischaracterizes the test. On one side of the balance, contrary to Plaintiff's overheated rhetoric, a court does not weigh "a litigant's worth" or her "worth as a person." *Id.* at 37, 39. Instead, the court must consider the nature of the *claim* the litigant advances and whether that claim promotes some broader interest to weigh against the public interest in promoting the flow of information to the press. The court must consider whether the litigant raises an "interest sufficiently compelling to override [the] privilege." 656 F.2d at 712 n.45. On the other side of the balance, contrary to Plaintiff's assertion, the court does not narrowly weigh the "newsworthiness of a particular piece of reporting." Br. 38; *see also id.* 34 n.12. Instead, *Zerilli* called for weighing "the public interest in protecting the reporter's sources." 656 F.2d at 712. That interest arises from recognition that "[c]ompelling a reporter to disclose the identity of a source may significantly interfere with th[e] news gathering ability" of the press by broadly discouraging sources from coming forward. *Id.* at 711. Ordering disclosure of a confidential source does not hobble solely the ability of *one* reporter to pursue *one* story. Instead, it broadly chills the

flow of information to the press by undermining any confidence potential sources may have that their names will remain confidential. As *Zerilli* explained, "[u]nless potential sources are confident that compelled disclosure is unlikely, they will be reluctant to disclose any confidential information to reporters." *Id.* at 712. Accordingly, under *Zerilli*, the "countervailing interest is the value, rooted in the First Amendment, of an 'unfettered press' that ensures that citizens are 'able to make informed political, social, and economic choices.'" *Lee v. Dep't of Justice*, 428 F.3d 299, 302 (D.C. Cir. 2005) (Tatel, J., dissenting from denial of rehearing en banc) (quoting *Zerilli*, 656 F.2d at 711).

Plaintiff misses the mark in claiming that balancing these interests is "unworkable" because it would be "untethered" and "unmoored" and would give rein to judges' "subjective" views (Br. 19, 23, 35, 37)—as if federal judges cannot be trusted to evaluate the competing interests where a litigant's claim would require overriding the First Amendment privilege. There is nothing unusual about federal judges being called upon to weigh competing values where a constitutional principle comes into conflict with other interests. As Ms. Herridge pointed out, to give just one example, as the Supreme Court recently explained, "[t]o account for the complexity associated with the interplay between free speech rights and government employment," "our cases suggest that courts should attempt to engage in 'a delicate balancing of the competing interests surrounding the speech and its consequences.'"

*Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 527-28 (2022) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 423 (2006)). In that balance, courts consider "whether an employee's speech interests are outweighed by 'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Id.* at 528. The *Zerilli* balancing is similar to the sort of balancing federal judges are routinely trusted to perform.

Nor is there anything "insidious" or "un-American," Br. 36, about following *Zerilli*'s instructions and recognizing that some litigants' claims will not merit incurring the systemic societal costs involved in forcing disclosure of a reporter's confidential sources. It is a necessary consequence of recognizing an evidentiary privilege that the privilege will, in some cases, foreclose a litigant's case. That is part of the trade-off inherent in recognizing a privilege. *See, e.g.*, *Gen. Dynamics Corp. v. United States*, 563 U.S. 478, 486 (2011) ("Public policy … forbids the maintenance of any suit the trial of which would inevitably lead to the disclosure of matters which the law itself regards as confidential" due to an evidentiary privilege (quotations, brackets, and ellipsis omitted)); *Molerio v. FBI*, 749 F.2d 815, 826 (D.C. Cir. 1984) (affirming dismissal of action due to state-secrets privilege). Adopting the journalist's privilege necessarily entails "a recognition that society's interest in protecting the integrity of the newsgathering process, and in ensuring the free flow of information to the public, is an interest of sufficient social importance to justify

some incidental sacrifice of sources of facts needed in the administration of justice." *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993) (quotations omitted).

When Plaintiff complains that applying *Zerilli* balancing in a case where it cuts off a litigant's claim would amount to deciding "who is worthy of the protection of the law," Br. 36, or applying the law "unequally," Br. 4, what she is really saying is that she disagrees with the fundamental holding in *Zerilli* that there will be instances in which—even though a litigant *needs* access to a reporter's confidential source for her claim to go forward—the First Amendment nevertheless dictates that the source must remain protected, thereby ending that litigant's ability to pursue her claim. *Zerilli* was crystal clear, however, that the litigant's "private interest in compelling disclosure," 656 F.2d at 712, would rarely outweigh the public interest on the First Amendment side of the scales. That is, "in the ordinary case the civil litigant's interest in disclosure should yield to the journalist's privilege" and the privilege would "prevail" in "all but the most exceptional cases." *Id.* Plaintiff cannot ask this panel to overrule *Zerilli* and adopt the very different rule she proposes (and that the district court wrongly adopted)—a rule under which, if a litigant can show (i) that she needs the identity of a source for her claim to proceed (centrality) and (ii) she cannot get that information any other way (exhaustion), the litigant's interest *always* trumps the First Amendment. *Zerilli* rejected such a mechanical rule.

### C. Balancing Under *Zerilli* Requires Assessing Defects in Plaintiff's Case and the Extent to Which It May Fail on Summary Judgment.

Balancing under *Zerilli* logically requires evaluating the strength of a litigant's underlying claim before compelling disclosure of a confidential source—including assessing whether the claim would fail (or largely fail) on summary judgment. *See* Opening Br. 29-32. That is a matter of common sense. *Zerilli* recognized that there is a societal cost every time a journalist is compelled to disclose a confidential source because that action discourages potential sources and chills the flow of information to the press. It would make no sense to incur that cost for a case that will collapse (or largely collapse) on summary judgment. Plaintiff has no response to this straightforward point.

Assertions that Ms. Herridge lacks "standing" to seek summary judgment (Br. 39) miss the point. District courts have inherent authority "to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases," *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016), and that includes "dictat[ing] the sequence of discovery," *Crawford-El v. Britton*, 523 U.S. 574, 599 (1998). "When a particular issue may be dispositive, the court may stay discovery concerning other issues until the critical issue is resolved." *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803-04 (Fed. Cir. 1999); *see also, e.g.*, *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 726 F.2d 1150, 1161 (7th Cir. 1984), *rev'd on other grounds*, 470 U.S. 373 (1985). Indeed, the district court in this case originally took the view

that ruling on the reporter's privilege could be postponed almost to the point of trial. JA___[Dkt._77_at_10:10-12]. Common sense dictates that, before taking the irretrievable step of forcing disclosure of a confidential source, courts should evaluate whether (and to what extent) claims will survive summary judgement. That is part of ensuring that the case qualifies as a "most exceptional case" that warrants overriding the privilege. *Zerilli*, 656 F.2d at 712. And it follows this Court's instruction that "courts must always be alert to the possibilities of limiting impingements upon press freedom to the minimum" by ensuring that compelled disclosure from a journalist is a "last resort." *Carey v. Hume*, 492 F.2d 631, 639 (D.C. Cir. 1974).

Plaintiff is also wrong to dismiss such an approach on the ground that it was adopted in state courts. Br. 41 n.14. The First Circuit has also explained that, before a court compels discovery of confidential sources, a "plaintiff should show that it can establish jury issues on the essential elements of its case not the subject of the contested discovery." *Bruno & Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583, 597 (1st Cir. 1980). In any event, there is no reason to reject a common sense approach to protecting First Amendment interests simply because it was outlined by a state court.

## II. Under *Zerilli* Balancing, the First Amendment Privilege Should Prevail.

When genuine balancing is applied in this case, the First Amendment clearly should prevail. To the extent Plaintiff claims (Br. 29-30) that the district court did balance interests and can be affirmed on that alternative basis, that is clearly wrong. The district court itself made clear that its passing "prediction" of the "likely" outcome "*if* it entertained" full balancing "was far from conclusive" and that it "remains possible that any refinement of the applicable test by the Circuit on appeal would alter the result." JA___[Dkt._152_at_2] (emphasis added). The district court merely repeated that inconclusive prediction in ruling on contempt.

### A. Plaintiff's Private Interest in Securing Damages Under the Privacy Act Weighs Little in the Balance.

Plaintiff's "private interest in compelling disclosure," *Zerilli*, 656 F.2d at 712, suffers from multiple defects that give it little weight in the balance. Plaintiff cannot and does not seriously dispute that weaknesses in her Privacy Act claim undermine her chance at ultimate recovery. Instead, she attempts to divert attention and dismiss those weaknesses as a "red herring" (Br. 31) based on two assertions: (i) she claims that Ms. Herridge has not argued that Plaintiff has *no* claim that will survive; and (ii) she asserts that, as long as *any* claim survives, her interest in recovering damages—even a trivial amount—trumps the First Amendment. Br. 31. She is wrong on both counts.

First, Ms. Herridge squarely argued that Plaintiff's claims may collapse *entirely*. She argued that the government may have an unclean hands defense "that would defeat Plaintiff's Privacy Act claim entirely," Opening Br. 41, and that "it is unlikely that Plaintiff will be able to prove that *any damages* were caused by the few bits of Privacy Act information in the stories … rather than by the mountain of other information about her." *Id.* at 18 (emphasis added). The reality is that summary judgment may foreclose Plaintiff's case entirely, and the Court must take that into account.

Second, the legal rule Plaintiff asserts (and the district court applied to the extent it "predicted" the "likely" outcome of balancing) cannot be reconciled with *Zerilli*. Plaintiff defends the decision below on the stark assertion that, as long as even a nominal claim for damages would survive (no matter how trivial the amount), there can be no weighing whatsoever of the value of that claim against the societal cost incurred by ordering disclosure of a confidential source. Instead, she insists that her interest in even one dollar of damages should trump the First Amendment. That proposed rule flies in the face of the repeated instructions in *Zerilli* that only the "most exceptional case" could warrant overriding the privilege and that an "interest sufficiently compelling to override [the] privilege will be rare." 656 F.2d at 712 & n.45.

Under a proper weighing under *Zerilli*, the First Amendment privilege clearly should prevail.

### 1. Plaintiff Cannot Secure Privacy Act Damages for DOD's Independent National Security Decision.

Plaintiff's claim is undermined first by the fact that she cannot recover damages under the Privacy Act for DOD's independent decision to cut off tuition assistance funds "based on national security grounds." JA___[Dkt._94-2_at_1]. That defect alone eliminates the bulk of Plaintiff's damages claims. Plaintiff counters that at least *some* damages may be sufficiently independent from DOD's decision to survive. Br. 31. But even if that were correct, as explained above, a claim for minimal damages weighs little in the balance under *Zerilli*.

Beyond that, Plaintiff offers only the half-hearted theory that perhaps she could trace causation *through* DOD's independent decision, depending on whether DOD's action was foreseeable to the particular individual who allegedly gave Privacy Act information to Ms. Herridge. Br. 41. That is not correct. To trace causation through an independent agency action based on a fact-finding record, Plaintiff would have to show that the agency proceeding was tainted by tortious conduct.[3] The mere fact that it might have been foreseeable that DOD would start a

---

[3] *See, e.g.*, *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988) ("An independent intermediary breaks the chain of causation unless it can be shown that

proceeding and find against Plaintiff is not enough. Nor do the cases Plaintiff cites stand for that proposition. Each involved a Privacy Act violation in which information was provided directly to the decisionmaker on an individual personnel action—in one case actually making the information part of the record on the decision, thereby directly tainting it. *See Fleck v. Dep't of Veterans' Affs. Off. of Inspector Gen.*, 596 F. Supp. 3d 24, 58 (D.D.C. 2022) (defective OIG report that did not include exculpatory information was sent to decisionmaker on demotion). There is nothing comparable here. And Plaintiff has no response at all to the point that she cannot use her Privacy Act claim to collaterally attack DOD's decision and attempt to show that it was somehow caused by Ms. Herridge's articles rather than being based on the information in the record before the agency. *See* Opening Br. 36-37.

**2. There Is a Serious Risk Plaintiff's Suit Effectively Seeks Taxpayer Dollars to Fund Illicit Activity.**

The next defect in Plaintiff's claim arises from the serious risk that Plaintiff was passing information to the CCP and that she is now using this Privacy Act suit to recover funding for that conduct. Plaintiff rails against this suggestion as if it

---

the deliberations of that intermediary were in some way tainted ….”); *Hotel Oakland Assocs. v. Doyle Real Est. Advisors, LLC*, No. 21-CV-05389, 2022 WL 1493267, at *10 (N.D. Cal. May 3, 2022) (“Where a governmental actor makes a determination, there is no proximate cause for a private party's conduct without a showing that the private party had some control or power over the governmental actor.”).

amounts to "hurling unsubstantiated accusations" (Br. 33) and violates the principle of "innocent until proven guilty." *Id.* 37. But that overheated rhetoric ignores the record. While there have been no findings made about Plaintiff *beyond a reasonable doubt*, there was a formal agency proceeding at DOD that produced specific findings of fact [redacted] DOD's findings of fact on that record are not "unsubstantiated allegations." Br. 33. Plaintiff chose not to challenge those findings in court, so they remain wholly unrebutted in this proceeding.

And the findings are devastating for Plaintiff. Rejecting Plaintiff's assertions that she was merely a civilian worker in an "astronaut program," DOD found that Plaintiff [redacted] And expert affidavits confirmed that the sort of information UMT actively collected fitted precisely the pattern of CCP intelligence collection efforts. *See* JA___[Dkt._176-4_¶¶17-18]; [redacted].

Contrary to Plaintiff's assertions (and the district court's rationale), pointing out these facts does not amount to arguing that Plaintiff "had it coming." Br. 33. Instead, the point is that there is substantial evidence based on formal DOD fact finding that Plaintiff may have been involved in illicit activity and she may be using this Privacy Act suit to recover funding *for that illicit activity*. That cannot be ignored in any rational balancing of interests under *Zerilli* when the Court examines Plaintiff's "private interest in compelling disclosure." 656 F.2d at 712. As explained (Opening Br. 41), Plaintiff is essentially in the same position as a disability benefits fraudster who claims that her benefits never would have been cut off if a government employee had not leaked pictures showing that she had no disability. If the fraudster sues under the Privacy Act to recover the very same benefits that were cut off for fraud, that context matters. Where the objective of a suit is potentially extracting taxpayer dollars for illicit activity, that cannot be ignored under *Zerilli*.

### 3. Almost All the Information in the Stories About Plaintiff Did Not Involve Privacy Act Disclosures.

Plaintiff does not even bother to dispute another defect in her claim—namely that almost all of the information in the stories that she complains about came from sources *other than* Privacy Act information. Br. 34. She does not dispute (and thus concedes for this appeal) that all the information in an FBI search warrant affidavit was public—and thus there could be no Privacy Act violation from releasing that information. *See* Opening Br. 10-12, 44 n.10. Instead, Plaintiff points to the district

court's assessment that, even if the only Privacy Act information in the stories were the pictures of Plaintiff in her PLA uniform (which she does not dispute are pictures of her), she could still secure some minimal damages for release of those photos. Br. 34 (citing JA___[Dkt._140_at_23]). In reality, the more likely result is that Plaintiff will be unable to show any separate damages arising solely from the photos and her claim will entirely fail. In any event, as explained above, a claim for minimal damages cannot warrant overriding the First Amendment privilege under *Zerilli*.

#### 4. Plaintiff's' Claim that She Is Vindicating the Privacy Act Adds Little to the Balance on the Facts of This Case.

Plaintiff also cannot add weight to her side of the scales with the theory that her lawsuit advances a public interest by vindicating the Privacy Act. Br. 42-43. The same defects showing that her claims are likely to fail (or largely fail) undermine that assertion. Indeed, that is especially the case given that virtually all the information Plaintiff complains about was already public and disclosing it could not be a Privacy Act violation.

Plaintiff's assertions are also further undermined by the DOD decision. DOD determined that the highest consideration of the public interest—national security—required terminating funds to Plaintiff's school. Yet the primary objective of Plaintiff's lawsuit is to recover those funds. At a minimum, DOD's unchallenged factual findings significantly undermine any theory that Plaintiff is advancing the

public interest by seeking to extract a payment of the same taxpayer dollars that DOD found should be cut off as a matter of national security.

### B. The Public Interest in Upholding Protections for a Free Press Overwhelms Plaintiff's Interest in Minimal Damages.

On the other side of the balance, the First Amendment interest in protecting confidential sources is at its highest in a case like this involving reporting that exposes risks to national security. As experts in the field of investigative journalism and twenty-six press organizations as *amici* have explained, confidential sources are "vital for the functioning of a free and independent press," JA__[Dkt._176-2_¶5], and "central to preserving the press's structural role as a check on government," Br. of *Amici Curiae* Reporters' Committee on Freedom of the Press and 25 News Media Organizations 11. Forcing a reporter "to disclose a national security source would have a broad chilling effect on the flow of critical information to the press and thus to the people." JA__[Dkt._176-3_¶11]. "It would have a ripple effect discouraging government personnel with critical knowledge—including whistleblowers with knowledge of wrongdoing or government incompetence—from serving as sources." *Id.* The result would be "undermin[ing] the ability of the press to hold powerful decisionmakers accountable before the public" and "impair[ing] the ability of the press to fulfill its function of keeping the people informed about the actions of their government." *Id.* In other words, it would hobble the ability of the press to "bare

the secrets of government and inform the people." *N.Y. Times Co. v. United States*, 403 U.S. 713, 717 (1971) (Black, J., concurring).

Plaintiff has no countervailing evidence. Her only response is her lawyer's assertion that *Lee* essentially applied the two-factor test used by the district court below and *Lee* did not lead to closing down confidential sources for reporters. Br. 42. Plaintiff's lawyer's unsupported assertions, however, carry no weight. And those assessments about *Lee* are especially dubious for two reasons. First, after this Court's decision, the case settled and the confidential sources were not disclosed.[4] Second, half the judges on this Court voted to rehear *Lee en banc* and several wrote powerful critiques of the decision. As a result, there has been a question mark hanging over the decision awaiting the next opportunity for this Court to affirm the balancing requirements of *Zerilli*.[5] As the district court observed below, "there is a

---

[4] *See, e.g.*, *News Firms Settle With Wen Ho Lee*, CBSNews (June 2, 2006), https://www.cbsnews.com/news/news-firms-settle-with-wen-ho-lee/.

[5] That question mark over *Lee* was reinforced the next time disclosure of confidential sources arose in *Hatfill v. Mukasey*, 539 F. Supp. 2d 96 (D.D.C. 2008). This Court intervened to stay the disclosure order, *see Hatfill v. Baltimore Sun Co.*, No. 08-5049, Doc. No. 1104546 (D.C. Cir. Mar. 11, 2008) (per curiam), and then went out of its way—upon dismissing that appeal as moot after another settlement—to note that the order raised "close questions" under the First Amendment. No. 08-5049, Doc. No. 1149629 (D.C. Cir. Nov. 17, 2008) (per curiam). There would have been no "close question" if centrality and exhaustion provided a mechanical answer.

substantial difference of opinion" on this Court about *Lee*. JA___[Dkt._152_at_2]. That obvious disagreement necessarily minimized any broader effect from *Lee.*

The balance of interests here is not close. As Judge Tatel has put it, "it's hard to imagine" how a plaintiff's interest in Privacy Act damages "could outweigh the public's interest in protecting journalists' ability to report without reservation on sensitive issues of national security." *Lee*, 428 F.3d at 302 (Tatel, J., dissenting from denial of reh'g en banc).

## III. The Court Should Recognize a Federal Common Law Reporter's Privilege.

Plaintiff also offers no sound reason for rejecting a federal common law reporter's privilege. She fails entirely to address the factors under *Jaffee v. Redmond*, 518 U.S. 1, 7 (1996), and her other arguments are readily dismissed.

*First*, Plaintiff points to three cases suggesting that *Branzburg v. Hayes*, 408 U.S. 664 (1972), precludes a reporter's privilege under federal common law. Those cases are irrelevant here because—like *Branzburg*—they arose in the *criminal* context. This Court has held that, "in civil cases … [*Branzburg*] is not controlling." *Zerilli*, 656 F.2d at 711.

*Second*, Plaintiff rehashes the same claims that a balancing approach is "unworkable." Br. 49. Those arguments are not persuasive for the reasons above. *See supra* pp.11-14. In particular, Plaintiff repeats the mistaken assertion that balancing would require courts "to subjectively weigh the value of a news story."

Br. 49. The value to be weighed on the First Amendment side of the scale is not the value of a particular story, but the broader public interest in protecting confidential sources to promote the flow of information to the press. *See supra* pp.24-26.

*Third*, Plaintiff wrongly claims that a common law privilege would immunize violations of the Privacy Act. Br. 50-52. Again, that misrepresents the balancing test, which would allow discovery in limited cases, depending on the interests at stake. Plaintiff wrongly assumes that the only alternative to her erroneous rule under which a Privacy Act plaintiff always *wins* (eventually), is the rule that a Privacy Act plaintiff always *loses*. That ignores how case-by-case balancing operates. In rare cases, Privacy Act plaintiffs could present claims that weigh more heavily in the balance and could warrant overcoming a federal common law privilege.

## CONCLUSION

The judgment below should be reversed.

August 12, 2024

Respectfully submitted,

/s/ *Patrick F. Philbin*
Patrick F. Philbin
Kyle T. West
Chase Harrington
TORRIDON LAW PLLC
801 Seventeenth Street, N.W.
Suite 1100
Washington, DC 20006
(202) 249-6900
pphilbin@torridonlaw.com

*Counsel for Catherine V. Herridge*

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7) because it contains 6,498 words. This motion also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word in Times New Roman 14-point font, a proportionally spaced typeface.

August 12, 2024

/s/ *Patrick F. Philbin*
Patrick F. Philbin

## CERTIFICATE OF SERVICE

I hereby certify, in accordance with Federal Rule of Appellate Procedure 25(c) and Circuit Rule 25(c), that on August 12, 2024, the foregoing document was electronically filed with the Clerk of the Court using the Clerk's Box system. I have transmitted a true and correct copy of the forgoing Appellant's Brief and its attachments to counsel for the Appellee Yanping Chen and to the other parties as follows:

Counsel for Yanping Chen:

Andrew C. Phillips
andy.phillips@mwpp.com

Counsel for Federal Bureau of Investigation, United States Department of Justice, United States Department of Defense, and United States Department of Homeland Security:

Bradley A. Hinshelwood
Bradley.A.Hinshelwood@usdoj.gov

Michael Raab
Michael.Raab@usdoj.gov

August 12, 2024

/s/ Patrick F. Philbin
Patrick F. Philbin