No. 24-5050

IN THE

# United States Court of Appeals for the District of Columbia Circuit

YANPING CHEN,
*Plaintiff-Appellee,*

*v.*

FEDERAL BUREAU OF INVESTIGATION, et al.,
*Defendants-Appellees,*

CATHERINE V. HERRIDGE,
*Appellant.*

On Appeal from the United States District Court for the District of Columbia,
No. 1:18-cv-03074-CRC

## CATHERINE V. HERRIDGE'S PETITION FOR REHEARING AND REHEARING EN BANC

Patrick F. Philbin
Kyle T. West
Chase T. Harrington
TORRIDON LAW PLLC
801 Seventeenth Street NW
Suite 1100
Washington, DC 20006
(202) 249-6900
pphilbin@torridonlaw.com

November 14, 2025

*Counsel for Catherine V. Herridge*

**TABLE OF CONTENTS**

**Page**

STATEMENT ............................................................................................................1

BACKGROUND ......................................................................................................4

ARGUMENT ...........................................................................................................8

I.      The Panel Decision Conflicts with Circuit Precedent on an Important
        Matter of First Amendment Law and Effects an Unexplained Change
        in the Law. .......................................................................................................8

II.     The Panel Decision Conflicts with Decisions of Multiple Other
        Circuits. .........................................................................................................12

III.    The Decision Dismissing the Motion to Unseal the DOD Decision
        Documents as "Moot" Conflicts with Circuit Precedent. ............................15

CONCLUSION .....................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcraft v. Conoco, Inc.*,
  218 F.3d 282 (4th Cir. 2000) ..................................................................14

*Bruno & Stillman, Inc. v. Globe Newspaper Co.*,
  633 F.2d 583 (1st Cir. 1980) ...........................................................4, 12, 13

*Cervantes v. Time, Inc.*,
  464 F.2d 986 (8th Cir. 1972) ..................................................................14

*Cusumano v. Microsoft Corp.*,
  162 F.3d 708 (1st Cir. 1998) ..................................................................12

*Grandbouche v. Clancy*,
  825 F.2d 1463 (10th Cir. 1987) ..............................................................15

*Lee v. DOJ*,
  428 F.3d 299 (D.C. Cir. 2005) ...........................................................10, 11

*Lee v. DOJ*,
  413 F.3d 53 (D.C. Cir. 2005) ..............................................................8, 10

*Metlife, Inc. v. Fin. Stability Oversight Council*,
  865 F.3d 661 (D.C. Cir. 2017) ...........................................................15, 16

*N.Y. Times Co. v. United States*,
  403 U.S. 713 (1971) ................................................................................4

*Matter of Pub. Def. Serv. for D.C. to Unseal Certain Recs.*,
  607 F. Supp. 3d 11 (D.D.C. 2022) ...........................................................16

*Riley v. City of Chester*,
  612 F.2d 708 (3d Cir. 1979) ...................................................................14

*Shoen v. Shoen*,
  5 F.3d 1289 (9th Cir. 1993) ...................................................................14

*Stone v. Univ. of Maryland Med. Sys. Corp.*,
  855 F.2d 178 (4th Cir. 1988) ..................................................................16

ii

## TABLE OF AUTHORITIES
### (cont'd)

*United States v. Hubbard*,
  650 F.2d 293 (D.C. Cir. 1980)....................................................................4, 5, 16

*Zerilli v. Smith*,
  656 F.2d 705 (D.C. Cir. 1981)............................................................1, 3, 8, 9, 11

**Statutes**

5 U.S.C. § 552a(b) ........................................................................................5

# GLOSSARY

PLA ....................................................................People's Liberation Army

UMT ........................................................ University of Management Technology

# STATEMENT

This case presents a question of exceptional importance: the scope of the balancing test under *Zerilli v. Smith*, 656 F.2d 705 (D.C. Cir. 1981), for applying the First Amendment reporter's privilege—the privilege that protects journalists from being forced to disclose (among other things) their confidential sources. *Zerilli* adopted a broad case-by-case balancing and instructed that the privilege should "prevail in all but the most exceptional cases." *Id.* at 712. The Panel here, however, reduced *Zerilli* exclusively to a two-part test that, in Privacy Act cases (like this), guarantees the opposite result: the First Amendment privilege always *loses* and confidential sources are always disclosed, eventually. Based on that approach, the Panel affirmed an order holding award-winning national security reporter Catherine Herridge in contempt for refusing to disclose her confidential source(s). That result conflicts with *Zerilli* and also creates a conflict with the law of other Circuits.

It also yields a particularly wrongheaded result in this case. Plaintiff is suing the government under the Privacy Act because she claims that, when the Department of Defense (DOD) cut off funding for her university on national security grounds, it was prompted to act by Ms. Herridge's reporting on a counterespionage investigation into Plaintiff. Plaintiff thinks that reporting included some information leaked from government files. She is transparently trying to use the Privacy Act to secure as damages from the government the same taxpayer funds that DOD

1

decisively cut off for national security reasons.  And although DOD determined that Plaintiff is a national security threat, the Panel ruled it could not even consider that fact before requiring Ms. Herridge to turn over to Plaintiff her confidential source(s)—presumptively U.S. government personnel with knowledge of counterespionage investigations.

Next, in a ruling that flatly contradicts Circuit precedent, the Panel denied as "moot" Ms. Herridge's motion to unseal the DOD decision documents detailing why Plaintiff is a threat to national security.  By keeping those documents under wraps, the Panel ensured that the public cannot understand the full implications of the order requiring Ms. Herridge to hand over her confidential source(s) to Plaintiff.

In fact, DOD has determined that Plaintiff is ███████████████████████ ██████████████████████████████████████████████████████████who has █████████████████████████████████  In 2018, acting on "national security grounds," DOD publicly cut off taxpayer funding for a university founded and run by Plaintiff.  JA075-76 & n.14.  DOD found that █████████████ ███████████████████████████████████████████████████████████ ██████████████████████ and ██████████████████████████████ ███████████████████████████████████████████

Plaintiff never challenged DOD's findings in court.  Instead, she filed this Privacy Act suit seeking taxpayer funds as damages to compensate her for the

2

taxpayer funds that DOD cut off for national security reasons. In support of that claim, the Panel held that Ms. Herridge must disclose her confidential source(s) to a former colonel in the PLA who was suspected of passing information on U.S. military personnel to China.

En banc review is warranted for multiple reasons.

First, the proper test for applying the First Amendment reporter's privilege is an issue of exceptional importance, and the Panel decision conflicts with Circuit precedent. *Zerilli* requires a broad, case-by-case balancing of interests. The Panel here, by contrast, held that *Zerilli* requires considering only two factors: (i) whether the information is central to the claim ("centrality") and (ii) whether plaintiff has exhausted other avenues of discovery ("exhaustion"). Because the identity of the source is always deemed "central" to a Privacy Act claim, that approach reduces *Zerilli* to a mere exhaustion requirement under which every Privacy Act plaintiff can *always* get access to confidential sources eventually, no matter how trivial or tenuous the claims.

The Panel's approach eviscerates the First Amendment privilege and turns upside down the clear instruction from *Zerilli* that "in the ordinary case the civil litigant's interest in disclosure should yield to the journalist's privilege." 656 F.2d at 712. By undermining First Amendment protections, the Panel's approach will stifle the flow of information to the press. Especially in the arena of national security

reporting, investigative journalists cannot be effective and seek accountability for decision-makers without credible assurances of confidentiality to their sources. The Panel decision hobbles the ability of the press to "bare the secrets of government and inform the people." *N.Y. Times Co. v. United States*, 403 U.S. 713, 717 (1971) (Black, J., concurring).

Second, restricting analysis to centrality and exhaustion makes this Circuit an outlier providing *less* protection under the First Amendment than other Circuits. The Panel's approach conflicts with decisions of at least the First, Third, Fourth, Eighth, Ninth, and Tenth Circuits, all of which engage in broader balancing to weigh the plaintiff's interest in disclosure against society's interest in the "free flow of information" to the press. *Bruno & Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583, 596 (1st Cir. 1980).

Third, dismissing the motion to unseal the DOD documents as "moot" conflicts with binding Circuit precedent. Judicial records may be sealed only pursuant to the standards set in *United States v. Hubbard*, 650 F.2d 293, 317-22 (D.C. Cir. 1980), which the Panel wholly failed to apply.

## BACKGROUND

In 2017, Ms. Herridge, then the Chief Intelligence Correspondent for Fox News Network, was the lead reporter on a series of articles about a counterespionage investigation into Plaintiff. *See* JA111, 119-23. As those Articles explained,

Plaintiff—a former colonel in the PLA—founded and runs the University of Management Technology (UMT), a school that caters primarily to U.S. military personnel. *Id.* The Articles presented evidence that UMT was collecting information about U.S. servicemembers' military history that could then be remotely accessed from China. *Id.* An expert explained that the personnel records would provide a "curated database" that would aid the PLA in assessing U.S. military capabilities and identifying servicemembers to target for espionage purposes. JA120.

The Articles further detailed that Plaintiff had sought to hide her past with the PLA by lying on immigration forms and telling others to lie under oath to a federal grand jury. *See* JA111-14.

Although almost all of the information in the Articles was either public or provided by a whistleblower at UMT, the stories included some information— mainly photographs of Plaintiff in her PLA colonel's uniform—that Plaintiff later claimed had come from government files and was subject to the Privacy Act, which under certain circumstances prohibits the release of information about individuals stored in government records. *See* 5 U.S.C. § 552a(b).

In 2018, DOD publicly announced that it was terminating UMT from a tuition assistance program "on national security grounds." JA254. DOD based its decision on its finding that Plaintiff is █████████████████████████████████

and that ████████████████████████████████████████████████

DOD also determined that Plaintiff ████████████████████████

████████████████████████████████████████████████████

████████████████████████████ DOD found that UMT ████████████

████████████████████ that it ████████████████████████████

████████████████████████████████ and that Plaintiff ████████

████████████████████████████████████████████████████

████████████████████ DOD noted that ████████████████████████

████████████████████████████████████████████████████

████████████████████████████

Rather than challenging DOD's findings, Plaintiff sued several agencies under the Privacy Act seeking to have the government compensate her for the revenue she lost when DOD cut off UMT's funding. She sought to blame her losses, not on DOD's national security findings, but on an alleged leak of Privacy Act information to Ms. Herridge.

Plaintiff eventually subpoenaed Ms. Herridge to discover her confidential source(s). JA054. After denying a motion to quash, the district court ordered disclosure. Holding that the test for applying the First Amendment reporter's privilege under *Zerilli* "focused primarily … on centrality and exhaustion," JA222-23, the court found the identity of the source(s) was central to Plaintiff's claim and

that she had exhausted alternative discovery. JA242. The court emphasized that it was "possible that any refinement of the applicable test [under *Zerilli*] by the Circuit on appeal would alter the result." *Id.* The court also refused to consider partial summary judgment briefing before ordering disclosure to determine whether Plaintiff's claim would even survive. As Ms. Herridge explained, Plaintiff's claim could be entirely (or largely) eliminated by failure to prove causation of damages due to both (i) DOD's intervening decision to terminate UMT on national security grounds and (ii) the fact that almost everything in the stories came from sources *not* covered by the Privacy Act. JA090-98, 103. If Plaintiff's claims were whittled away to almost nothing, that should matter under the balance in *Zerilli*. The district court refused to consider that.

After Ms. Herridge declined to identify her source(s), JA313-14, the district court held her in civil contempt and set a fine of $800/day, stayed pending appeal. JA342.

The Panel held that the district court properly limited its analysis to centrality and exhaustion. A13-14. In the Panel's view, Ms. Herridge must reveal her confidential source(s) even if Plaintiff were limited to a nominal claim for $1,000 in statutory damages. A12.

# ARGUMENT

## I. The Panel Decision Conflicts with Circuit Precedent on an Important Matter of First Amendment Law and Effects an Unexplained Change in the Law.

The Panel decision conflicts with the clear instructions of *Zerilli v. Smith*, 656 F.2d 705 (D.C. Cir. 1981), on a constitutional issue of exceptional importance and, if it stands, would mark an abandonment of First Amendment principles announced in *Zerilli* without any explanation from this Court.

In *Zerilli*, this Court announced a broad balancing test and instructed that "to determine whether the [First Amendment] privilege applies courts should look to the facts of each case, weighing the public interest in protecting the reporter's sources against the private interest in compelling disclosure." *Id.* at 712; *see also id.* (courts should "strik[e] [a] balance between the civil litigant's interest in compelled disclosure and the public interest in protecting a newspaper's confidential sources").

While *Zerilli* also identified some "guidelines"—including centrality and exhaustion—to inform the balancing, it made clear those factors were *not* a complete test in themselves. In *Zerilli*, as in all Privacy Act cases, the identity of the source was deemed central to the case given the need for plaintiff to prove willfulness and intent. *E.g.*, *Lee v. DOJ*, 413 F.3d 53, 60 (D.C. Cir. 2005). This Court nonetheless barred disclosure because plaintiff had failed to exhaust alternative discovery. But *Zerilli* made clear it was not deciding "whether compelled disclosure would have

been appropriate if appellants had … exhaust[ed] alternative sources." 656 F.2d at 714 n.52. That is, *even if* both centrality and exhaustion requirements were met, that would not necessarily warrant disclosing confidential sources. The Panel here acknowledged that *Zerilli* "expressly reserved the question" of weighing factors beyond centrality and exhaustion. A13.

Critically, *Zerilli* also gave further instructions about how the balancing must operate, explaining that it must protect the "preferred position of the First Amendment" and ensure that the privilege would "prevail in all but the most exceptional cases." 656 F.2d at 712. *Zerilli* repeatedly cautioned that "in the ordinary case the civil litigant's interest in disclosure should yield to the journalist's privilege" and that an "interest sufficiently compelling to override [the] privilege will be rare." *Id.* at 712 & n.45.

Limiting analysis to centrality and exhaustion cannot be reconciled with those instructions. Because the identity of a source is deemed central in every Privacy Act case, restricting analysis to centrality and exhaustion reduces *Zerilli* to an exhaustion test. After pursuing other discovery, a Privacy Act plaintiff would *always* get access to confidential sources, no matter how minimal the alleged violation, how dubious the merits of the claim, or how important the First Amendment interests involved. That result cannot be squared with the plain terms of *Zerilli*.

The Panel in this case nevertheless held that balancing must be limited solely to centrality and exhaustion and believed that result was dictated by *Lee*, 413 F.3d 53. To the extent *Lee* ended its analysis after considering those two factors, it conflicts with *Zerilli*—and *Zerilli*, as the earlier decided case, should govern. *Lee*, moreover, provided no rationale whatsoever for truncating *Zerilli* balancing. *Lee* merely addressed centrality and exhaustion and then abruptly ended the analysis. *See id.* at 60-61. The Panel acknowledged that *Lee* lacked a reasoned explanation for its incomplete application of *Zerilli*, but thought "even [that] silence is fatal to [Ms. Herridge's] position." A13.

In fact, the record in *Lee* suggests that the panel simply failed to address the question of broader balancing under *Zerilli* and left a glaring gap in its reasoning. When petitions for rehearing en banc pointed out that failure, Judge Tatel and then-Judge Garland explained that the "panel never balanced the public and private interests" as required by *Zerilli* and that, contrary to *Zerilli*'s clear instructions, the "panel's arid two-factor test allows the exigencies of even the most trivial litigation to trump core First Amendment values." 428 F.3d 299, 301-02 (D.C. Cir. 2005) (Tatel, J., joined by Garland, J., dissenting from denial of rehearing en banc). Even a member of the *Lee* panel, Judge Rogers, voted for rehearing en banc, noting that the petitions "present significant issues" regarding "the comprehensiveness of the necessary balancing analysis." *Id.* at 300 (Rogers, J., dissenting from denial of

rehearing en banc). The Court denied rehearing on a 4-4 vote, still without any opinion explaining the decision to convert *Zerilli* from a broad balancing test to a mechanical examination of centrality and exhaustion. *See id.* at 300 & nn. 1, 5 (per curiam).

If the Panel decision stands, the law of the Circuit will have dramatically shifted from a commitment in *Zerilli* that the First Amendment privilege would "prevail in all but the most exceptional cases," 656 F.2d at 712, to a diametrically opposed rule that, in Privacy Act cases, the First Amendment privilege always *loses* (eventually). And that sea change will have occurred without *any* reasoned opinion from this Court explaining why *Zerilli* should be truncated in that fashion. Instead, the panel in *Lee* simply failed to address part of the balancing mandated in *Zerilli*— and the Panel in this case treated that unexplained omission as redefining the law of the Circuit. And the cogent arguments Judge Tatel and then-Judge Garland raised explaining why *Zerilli* should not be gutted in that fashion have gone wholly unanswered by the Court to this day.

The Court should not allow a vital First Amendment privilege to be whittled down through such a haphazard, unreasoned process without en banc consideration or, at a minimum, some opinion explaining *why* the Court has reached that result— especially when it conflicts with the law in other Circuits.

## II. The Panel Decision Conflicts with Decisions of Multiple Other Circuits.

In contrast to the rule adopted by the Panel, multiple other Circuits require broad balancing to apply the reporter's privilege—including weighing many factors the Panel refused to consider here.

The First Circuit, for example, holds that applying the reporter's privilege requires courts to broadly "balance the potential harm to the free flow of information that might result [from disclosure] against the asserted need for the requested information." *Bruno & Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583, 595-96 (1st Cir. 1980). The First Circuit consistently emphasizes that its test "contemplates consideration of a myriad of factors, often uniquely drawn out of the factual circumstances of the particular case," *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 716 (1st Cir. 1998), and that "[t]he task … demands sensitivity, invites flexibility, and *defies formula*," *Bruno*, 633 F.2d at 598 (emphasis added).

In fact, at every turn, the First Circuit has endorsed weighing factors the Panel refused to consider. The First Circuit expressly instructs courts to consider "the importance to the [journalist's] continued newsgathering effectiveness of preserving the source's confidentiality." *Id.* at 597-98. Ms. Herridge presented declarations explaining how disclosing her source(s) would destroy her ability to function as a national security investigative journalist, JA293-99, but the Panel refused to consider them.

Next, while the Panel considered whether Plaintiff's Privacy Act claims were "frivolous," A11, it forbade any further examination of those claims, A12-13. The First Circuit, however, expressly holds that a "finding that plaintiff's claim is not frivolous" "does not terminate the sensitive balancing process." *Bruno*, 633 F.2d at 599 n.17.

Indeed, the First Circuit requires that, before overcoming the privilege, "plaintiff should show that it can establish jury issues on the essential elements of its case not the subject of the contested discovery." *Id.* at 597. That is, the plaintiff's claims should be tested on partial summary judgment to determine whether they will entirely (or mostly) collapse. *Id.* (falsity element of a defamation claim should be "established as a jury issue before discovery is compelled"). Ms. Herridge argued for precisely such testing of Plaintiff's case on partial summary judgment, Herridge Br. 29-31 (No. 2061066), but the Panel refused to consider it.

Finally, the First Circuit has acknowledged that "there may be cases where revelation of sources will threaten physical or other harm that will be quite disproportionate to a plaintiff's litigation needs." *Bruno*, 633 F.2d at 595. The Panel's test forbids considering such factors. Here again, Ms. Herridge submitted declarations detailing the significant risk that Plaintiff was engaged in espionage for China and the risks involved in forcing disclosure to her of the identity of

(presumptively) government personnel with knowledge of counterespionage investigations. JA300, 612. The Panel refused to consider that.

The First Circuit is not alone. The Fourth Circuit has set out three factors to be considered—relevance, exhaustion, and whether the plaintiff has a "compelling interest in the information"—but has cautioned that those factors do not end the inquiry. *Ashcraft v. Conoco, Inc.*, 218 F.3d 282, 287-88 & n.12 (4th Cir. 2000). Even where a plaintiff identifies an interest that may be compelling, the "compelling nature of the interest [in disclosure] would have to be balanced against the reporter's interest in protecting the confidentiality of his sources." *Id.*

The Eighth Circuit holds that a plaintiff should show that he can survive summary judgment, because "compulsory disclosure of anonymous news sources without first inquiring into the substance of [an action] would emasculate" First Amendment protections. *Cervantes v. Time, Inc.*, 464 F.2d 986, 993 (8th Cir. 1972).

The Third Circuit requires evaluating whether the reporter's privilege should "yield to a paramount interest" on "an Ad hoc basis." *Riley v. City of Chester*, 612 F.2d 708, 715-16 (3d Cir. 1979). The Ninth Circuit broadly requires that the "First Amendment privilege and the opposing need for disclosure be judicially weighed in light of the surrounding facts, and a balance struck to determine where lies the paramount interest," *Shoen v. Shoen*, 5 F.3d 1289, 1293 (9th Cir. 1993), and the Tenth Circuit has similarly endorsed a "balancing test," while identifying four non-

exhaustive factors "[a]mong the factors that the trial court must consider," *Grandbouche v. Clancy*, 825 F.2d 1463, 1466-67 (10th Cir. 1987).

In short, the Panel's two-part test—guaranteeing that Privacy Act plaintiffs *always* get confidential sources eventually—warrants rehearing en banc because it would make this Circuit an outlier providing *less* protection than other Circuits under the First Amendment reporter's privilege.

### III. The Decision Dismissing the Motion to Unseal the DOD Decision Documents as "Moot" Conflicts with Circuit Precedent.

Rehearing is also warranted to address the decision dismissing as "moot" Ms. Herridge's motion to unseal the DOD decision documents. Those documents include findings of fact that Plaintiff ███████████████████████████████ ███████████████████████████████████████████, which supported DOD's conclusion that she presented a national security threat. Those documents are essential for the public to understand both the public interest served by Ms. Herridge's reporting and the implications of the Panel's decision requiring Ms. Herridge to expose her confidential source(s) to Plaintiff.

Treating the unsealing motion as "moot" is indefensible under settled Circuit precedent. Because there is a "strong presumption in favor of public access to judicial proceedings," there must a be a strong justification for sealing. *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017). "The right of public access is a fundamental element of the rule of law, important to maintaining

the integrity and legitimacy of an independent Judicial Branch." *Id.* at 663. And a decision resolving the appeal "does not moot [a] motion to unseal, because the right of access to judicial records and documents is independent of the disposition of the merits of the case." *Stone v. Univ. of Maryland Med. Sys. Corp.*, 855 F.2d 178, 180 n.* (4th Cir. 1988). Records in this Court remain hidden from public view— including half the oral argument transcript. Under Circuit precedent, such a "seal may be maintained only" under the test from *United States v. Hubbard*, 650 F.2d 293, 317-22 (D.C. Cir. 1980). *Metlife*, 865 F.3d at 665-66. The Panel failed to apply that test at all.

It does not matter that the Panel held that the DOD decision documents should not be considered in *Zerilli* balancing. Even where a court does not rely on them, materials presented by a party to persuade the court and relevant to a party's arguments must be unsealed because "[w]ithout access to the sealed materials, it is impossible to know which parts of those materials persuaded the court and which failed to do so (and why)." *Id.* at 668; *see also Matter of Pub. Def. Serv. for D.C. to Unseal Certain Recs.*, 607 F. Supp. 3d 11, 26 (D.D.C. 2022) ("The public interest [in disclosure] … covers both material that the court found persuasive and material that it did not."). The entire dispute in this case turns on what information should be considered in the First Amendment privilege's balancing test. The public cannot evaluate the implications of the rule the Panel adopted—including that it requires

sensitive disclosures to a person deemed a national security threat—unless it has access to the information the Panel erroneously kept sealed.

As Judge Katsas acknowledged, ████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████ Sealed Tr. 35:8-9, 15-17 (No. 2139482). That is precisely the point. Without the DOD decision documents, which underscore both the public interest in Ms. Herridge's reporting and the dangers in disclosing confidential source(s) to Plaintiff, the public cannot assess the import of the Court's decision. Not surprisingly, the government has determined that unsealing is "in the public interest." Sealed Letter (No. 2118151).

The Panel's decision facilitating Plaintiff's misuse of the Privacy Act to secure a payout of taxpayer funds may be hard for the public to fathom if the details of DOD's decisions are disclosed. That does not justify keeping the public in the dark about how the Court's decisions affect their money.

## CONCLUSION

The Court should grant rehearing or rehearing en banc.

November 14, 2025

Respectfully submitted,

/s/ *Patrick F. Philbin*
Patrick F. Philbin
Kyle T. West
Chase T. Harrington
TORRIDON LAW PLLC
801 Seventeenth Street NW
Suite 1100
Washington, DC 20006
(202) 249-6900
pphilbin@torridonlaw.com

*Counsel for Catherine V. Herridge*

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limit of Federal Rule of Appellate Procedure 40(d)(3) because it contains 3,899 words. This motion also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word in Times New Roman 14-point font, a proportionally spaced typeface.

November 14, 2025                               */s/ Patrick F. Philbin*
                                                Patrick F. Philbin

# CERTIFICATE OF SERVICE

I hereby certify, in accordance with Federal Rule of Appellate Procedure 25(c) and Circuit Rule 25(c), that on November 14, 2025, the foregoing document was electronically filed with the Clerk of the Court using the Clerk's Box system. I have caused to be transmitted true and correct copies of the forgoing document and its attachments to counsel for the Appellee Yanping Chen and to the other parties as follows:

<u>Counsel for Yanping Chen:</u>

Andrew C. Phillips
919 18th Street NW
Suite 650
Washington, DC 20006
andy.phillips@mwpp.com

<u>Counsel for Federal Bureau of Investigation, United States Department of Justice, United States Department of Defense, and United States Department of Homeland Security:</u>

Bradley A. Hinshelwood
Michael Raab
950 Pennsylvania Avenue NW
Room 7256
Washington, DC 20530
Bradley.A.Hinshelwood@usdoj.gov
Michael.Raab@usdoj.gov

November 14, 2025                          */s/ Patrick F. Philbin*
                                          Patrick F. Philbin

**ADDENDUM**

# ADDENDUM TABLE OF CONTENTS

Certificate as to Parties, Rulings, and Related Cases……………………….………A01

Opinion, *Chen v. FBI*,
     No. 24-5050 (D.C. Cir. Sept. 30, 2025)……………...………………A04

Order, *Chen v. FBI*,
     No. 24-5050 (D.C. Cir. Sept. 30, 2025)…………………………...…A16

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), counsel for Non-Party-Appellant certifies as follows:

### A.    Parties, Intervenors, and Amici Curiae

Appellant in this case and non-party witness in the district court is Catherine V. Herridge.  Fox News Network LLC is also a non-party witness in the district court.

Appellee in this case and Plaintiff in the district court is Yanping Chen.

Defendants in the district court are the Federal Bureau of Investigation, the U.S. Department of Justice, the U.S. Department of Defense, and the U.S. Department of Homeland Security.

Reporters Committee for Freedom of the Press; The Associated Press; The Atlantic Monthly Group LLC; CBS Broadcasting Inc. d/b/a CBS News; The Center for Investigative Reporting d/b/a Reveal; Committee to Protect Journalists; Dow Jones & Co., Inc.; Gannett Co., Inc.; The Guardian U.S.; Hearst Corporation; Los Angeles Times Communications LLC; National Newspaper Association; The National Press Club; National Press Photographers Association; NBCUniversal Media, LLC; The New York Times Co.; News/Media Alliance; POLITICO LLC; Pro Publica, Inc.; Radio Television Digital News Association; Reuters News & Media Inc.; The Seattle Times Company; Society of Professional Journalists;

TENGA Inc.; TIME USA, LLC; The Washington Post; and Senator Ted Cruz participated as amici curiae in support of Ms. Herridge.

Asian American Legal Defense and Education Fund; Asian Americans Advancing Justice Southern California; Asian American United; The Asian Law Alliance; The Asian Law Caucus; The APA Justice Task Force; Chinese for Affirmative Action; The Fred T. Korematsu Center for Law and Equality; Helen Zia and the Vincent Chin Institute; The Japanese Americans Citizens League; Muslim Advocates; and Stop AAPI Hate participated as amici curiae in support of Chen.

**B.    Rulings Under Review**

First, Ms. Herridge seeks review of the September 30, 2025 Order issued by a Circuit Panel consisting of Judges Katsas, Childs, and Edwards, which affirmed: (1) the Order of the District Court for the District of Columbia entered on August 1, 2023 (ECF No. 140) (redacted version filed on August 17, 2023, ECF No. 148) denying Ms. Herridge's motion to quash and compelling her to give deposition testimony identifying her confidential source(s); (2) the Order of the District Court for the District of Columbia entered on February 29, 2024 adjudging Ms. Herridge in civil contempt, and (3) all other orders antecedent to such orders and thus incorporated therein.  Each of those underlying rulings was issued by United States District Judge Christopher R. Cooper.

Second, Ms. Herridge seeks review of the September 30, 2025 Order issued by a Circuit Panel consisting of Judges Katsas, Childs, and Edwards dismissing Ms. Herridge's Motion to Unseal (2062653) as moot.

### C.    Related Cases

This case was previously before this Court in *Chen v. FBI*, No. 23-5198 (2023), which the Court dismissed for lack of appellate jurisdiction.  Undersigned counsel is not aware of any related cases pending in this Court or any other court.

November 14, 2025                    Respectfully submitted,

                              /s/ *Patrick F. Philbin*
                              Patrick F. Philbin
                              Kyle T. West
                              Chase Harrington
                              TORRIDON LAW PLLC
                              801 Seventeenth Street NW
                              Suite 1100
                              Washington, DC 20006
                              (202) 249-6900
                              pphilbin@torridonlaw.com

                              *Counsel for Catherine V. Herridge*

# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

―――――

Argued November 18, 2024      Decided September 30, 2025

No. 24-5050

YANPING CHEN,
APPELLEE

v.

FEDERAL BUREAU OF INVESTIGATION, ET AL.,
APPELLEES

CATHERINE HERRIDGE,
APPELLANT

―――――

Appeal from the United States District Court
for the District of Columbia
(No. 1:18-cv-03074)

―――――

*Patrick F. Philbin* argued the cause for appellant. With him on the briefs were *Kyle T. West* and *Chase Harrington*.

*Judd E. Stone II* was on the brief for *amicus curiae* Senator Ted Cruz in support of appellant.

*Bruce D. Brown*, *Katie Townsend*, *Gabe Rottman*, and *Grayson Clary* were on the brief for *amici curiae* Reporters Committee for Freedom of the Press, et al. in support of appellant.

**A04**

2

*Andrew C. Phillips* argued the cause and filed the brief for appellee Yanping Chen.

*Jane Shim* was on the brief for *amici curiae* Asian American Legal Defense and Education Fund, et al. in support of appellee.

Before: Katsas and Childs, *Circuit Judges*, and Edwards, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* Katsas.

Katsas, *Circuit Judge*: Yanping Chen alleges that federal officials violated the Privacy Act by disclosing records about her compiled as part of an FBI investigation. The records were published by Fox News. In discovery, Chen sought to compel Catherine Herridge—one of the journalists involved in publishing the records—to identify who had leaked them. Herridge invoked a First Amendment reporter's privilege to avoid being compelled to testify. The district court held that Chen had overcome that qualified privilege and ordered Herridge to answer Chen's questions. When Herridge refused to do so, the court held her in contempt. On appeal, Herridge reasserts the privilege. We affirm the district court.

I

The First Amendment to the Constitution provides that "Congress shall make no law … abridging the freedom of speech, or of the press." U.S. Const. Amend. I. In *Zerilli v. Smith*, 656 F.2d 705 (D.C. Cir. 1981), this Court recognized a "qualified reporter's privilege" based on the First Amendment. *Id.* at 712–14. Where it applies, the privilege allows reporters to resist civil discovery into the identity of their confidential

A05

3

sources. *See id.*  We identified two considerations as being "of central importance" in determining whether the privilege applies—the litigant's "need for the information" and her efforts "to obtain the information from alternative sources." *Id.* at 713.  We further noted that the "equities weigh somewhat more heavily in favor of disclosure" if, as in libel cases, the journalist is a party and successful assertion of the privilege "will effectively shield him from liability." *Id.* at 714.

The reporter's privilege often arises in litigation under the Privacy Act, which prohibits government agencies from publicly disclosing certain records about individuals without prior consent from the individual to whom the record pertains. 5 U.S.C. § 552a(a)(4), (b).  An individual harmed by a Privacy Act violation may bring a civil action against the offending agency. *Id.* § 552a(g)(1), (5).  If the agency acted "in a manner which was intentional or willful," then the affected individual may recover "actual damages," subject to a statutory floor of $1,000. *Id.* § 552a(g)(4)(A).

II

A

We recite the facts as alleged in the complaint.  Yanping Chen was born in China.  In 1987, she moved to the United States to study at George Washington University, from which she eventually obtained graduate degrees.  Chen became a lawful permanent resident in 1993 and a citizen in 2001.

In 1998, Chen founded the University of Management and Technology (UMT), an educational institution headquartered in Arlington, Virginia.  Until January 2018, UMT participated in the Department of Defense's "Tuition Assistance Program," which pays a portion of tuition expenses for military students.

A06

4

In 2010, the Federal Bureau of Investigation began investigating Chen for statements made on her immigration forms. The FBI interviewed Chen's family and colleagues, seized her computer, used an informant to gather information about her, monitored her travel, and recorded her private conversations. In 2012, the FBI executed search warrants at Chen's home and UMT's main office. The FBI seized materials including tax records, business documents, family photographs, and electronic storage devices. In 2016, the U.S. Attorney's Office for the Eastern District of Virginia decided not to file charges against Chen.

In 2017, Fox News aired a report alleging that Chen had concealed her prior work for the Chinese military. The network later published an FBI form memorializing an interview with Chen's daughter, personal photographs seized from Chen's home during the FBI search, and information from Chen's immigration and naturalization papers. The reports stated that the FBI searches had occurred as part of a counter-intelligence operation. They also cited anonymous sources describing a conflict between the FBI and the U.S. Attorney's Office over whether to file charges against Chen, as well as comments from an anonymous FBI agent who was upset that UMT continued to receive payments from DoD. The print versions of these reports were authored by Catherine Herridge.

In 2018, DoD terminated UMT's participation in the Tuition Assistance Program. That decision, along with a broader hit to UMT's reputation, caused its enrollment and revenue to fall sharply. These losses impacted Chen's income and the value of her personal investment in UMT.

B

In December 2018, Chen filed this Privacy Act lawsuit against the FBI and various other federal agencies. She sought

A07

5

damages and an injunction prohibiting further disclosures of information about her.

In discovery, Chen served various document requests, interrogatories, and requests for admission, took eighteen depositions of current and former government employees, issued over a dozen third-party subpoenas, and obtained declarations from 22 government personnel who were connected to the FBI investigation. Despite all of this, Chen was unable to determine who was responsible for leaking the materials aired in the Fox reports. Ultimately, in mid-2022, Chen served Herridge and Fox with deposition and document subpoenas. Both Herridge and Fox moved to quash the subpoenas on the ground that they sought information protected by reporter's privileges grounded in the First Amendment and federal common law.

The district court denied Herridge's motion to quash in relevant part. It concluded that Chen had met her burden to overcome the qualified First Amendment privilege recognized in this Court's precedents. The court then refused to recognize a distinct newsgathering privilege under federal common law. The court sequenced discovery so that Chen could depose Herridge regarding her sources for the records allegedly disclosed in violation of the Privacy Act before seeking potentially the same information from Fox News. The court thus largely denied Herridge's motion and granted Fox's while allowing Chen to renew her subpoenas at a later time if necessary.

Following unsuccessful attempts to appeal the discovery order, Herridge sat for a deposition on September 26, 2023. When questioned, she refused to disclose the identity of her source, and she refused to provide information on when and how she received the leaked items. Herridge stated that she

A08

6

was disobeying the discovery order so that she could seek appellate review of it.

The district court held Herridge in civil contempt. It imposed a fine of $800 per day until Herridge complied with the discovery order, but stayed the fine pending resolution of this appeal.

III

A non-party may appeal an adjudication of civil contempt even before the entry of final judgment in the underlying case. *See*, *e.g.*, *U.S. Cath. Conf. v. Abortion Rts. Mobilization, Inc.*, 487 U.S. 72, 76 (1988); *In re Clinton*, 973 F.3d 106, 112 (D.C. Cir. 2020). And our review of the contempt order "logically includes" a review of the discovery order underlying the contempt. *Lee v. DOJ*, 413 F.3d 53, 59 (D.C. Cir. 2005). Whether a discovery order correctly articulates our test for the reporter's privilege is a legal question that we review *de novo*. *Id.* We review a district court's application of that test for abuse of discretion. *Id.*

We begin with a survey of the caselaw recognizing a reporter's privilege under the First Amendment. Next, we discuss the district court's application of governing precedent to this case. Finally, we consider Herridge's invitation to announce a new reporter's privilege rooted in federal common law rather than the Constitution.

IV

A

Under *Zerilli*, reporters have a qualified First Amendment privilege to protect the identity of their sources from civil discovery. 656 F.2d at 710–12. After recognizing the

**A09**

7

privilege, we set forth "more precise guidelines" for determining when it can be overcome. *Id.* at 713. We identified two considerations "of central importance" for doing so—whether the information is "crucial" to the case and whether the litigant seeking the information "has exhausted every reasonable alternative source of information." *Id.* In addition, we stated that a litigant may be more likely to overcome the privilege in cases where the reporter is a party (as in libel cases) than in cases where she is not (as in Privacy Act cases like this one). *Id.* at 714.

In *Lee v. Department of Justice*, 413 F.3d 53 (D.C. Cir. 2005), this Court held that a litigant may overcome the privilege by showing centrality and exhaustion—even in a case where the reporter is not a party. Like this case, *Lee* involved an appeal by non-party journalists held in contempt for refusing to identify their confidential sources in Privacy Act litigation. *Id.* at 55. Applying *Zerilli*'s "two guidelines [for] determining when a court can compel a non-party journalist to testify about a confidential source," we held that the district court had not abused its discretion in requiring the reporters to testify. *Id.* at 59–60. First, the plaintiff had shown that the information he sought went to the "heart" of the case, given the difficulty in proving intent or willfulness without knowing the identity of the leakers. *Id.* at 60. Second, by deposing numerous witnesses before seeking to compel the reporters' testimony, the plaintiff had met his burden to exhaust reasonable alternative sources of information. *Id.*

For the *Lee* Court, that was the end of the matter. We expressly declined to engage with *Zerilli*'s distinction between journalists who are parties to a lawsuit and those who are not, since all the journalists in the case before the court were non-parties. *Lee*, 413 F.3d at 57 n.1. And in response to an objection that we were leaving journalists without enough

**A10**

8

protection, we explained that a litigant's power to subpoena a journalist remains constrained by the requirements of centrality and exhaustion, which are not perfunctory, and by "the usual requirements of relevance, need, and limited burdens on the subpoenaed person" embodied in federal procedural and evidentiary rules. *Id.* at 60.

## B

On appeal, Herridge does not contest the district court's determination that *Lee*'s centrality and exhaustion requirements for overcoming the privilege were satisfied. Herridge nonetheless asks us to rule in her favor because (1) Chen's Privacy Act claim is frivolous or meritless and (2) *Lee* conflicts with prior circuit precedent and therefore does not bind us. We reject both contentions.

## 1

Herridge argues that we should uphold the privilege because Chen's Privacy Act claim is frivolous. We agree that our governing framework is flexible enough to accommodate such an inquiry. In *Zerilli*, we noted that the claim at issue was "not frivolous" as part of our inquiry into whether the information sought was "crucial" to the plaintiff's case. 656 F.2d at 714. And although *Lee* did not separately discuss frivolousness, we did reiterate the importance of considering whether the information sought "goes to the heart of his case." 413 F.3d at 60. Such an inquiry can readily accommodate assessing whether the underlying claims are frivolous. For if a claim would fail regardless of what the requested discovery might reveal, there is no good reason for deeming the discovery to be centrally important, much less for abrogating the privilege on that basis. *See*, *e.g.*, *Carey v. Hume*, 492 F.2d 631, 637–38 (D.C. Cir. 1974).

A11

9

We reject Herridge's contention that the Privacy Act claim here is frivolous. Herridge presses two main points: "most" of Chen's alleged damages were caused by DoD's independent decision to cut off funds to UMT, Appellant's Br. at 34, and "almost all" of Herridge's reporting came from sources other than Privacy Act information, *id.* at 42. But "most" is not all, and Chen does seek damages not flowing from a loss of business after DoD severed its ties with UMT. Likewise, even if Herridge collected "almost all" of her information from material that was already in the public domain, Chen plausibly alleges that some of it had to have come from Privacy Act violations—such as the disclosure of photographs seized from Chen's home during the FBI search. And so long as Chen establishes that *some* Privacy Act violation harmed her, she may recover actual or statutory damages if it was willful. 5 U.S.C. § 552a(g)(4)(A); *Doe v. Chao*, 540 U.S. 614, 627 (2004). In sum, Herridge's arguments at most suggest that Chen is likely to recover only a small amount of damages, but that does not render her claim frivolous.

2

Beyond this discrete point about frivolousness, Herridge more broadly urges that Chen's claim is simply *not that important*. In Herridge's view, regardless of centrality and exhaustion, the reporter's privilege should prevail if a court determines that the social importance of the news story outweighs the plaintiff's personal interest in vindicating her claim. Here, for example, Herridge argues that "the public's interest in protecting journalists' ability to report without reservation on sensitive issues of national security" should outweigh Chen's merely private interest in recovering perhaps as little as $1,000 in statutory damages. Appellant's Br. at 3 (quoting *Lee v. DOJ*, 428 F.3d 299, 302 (D.C. Cir. 2005) (Tatel, J., dissenting from denial of rehearing en banc)).

10

Herridge's proposed balancing test echoes the view advanced by the judges dissenting from denial of rehearing *en banc* in *Lee*. *See* 428 F.3d at 300–03. As they were in dissent, we are left simply to apply the *Lee* panel opinion. And although Herridge describes that opinion as silent on the questions whether and how to weigh factors *beyond* centrality and exhaustion, even silence is fatal to her position here. Again, Herridge contends that the district court erred in ordering her to disclose the identity of her confidential source, despite its findings as to centrality and exhaustion. Given this posture, it makes no difference whether *Lee* affirmatively forbade the broader interest-balancing favored by Herridge or simply failed to apply it. Either way, *Lee* held that a district court permissibly found a reporter's privilege overcome based on findings of centrality and exhaustion in a Privacy Act case, without any broader balancing of private and public interests. 413 F.3d at 60. And that suffices to foreclose Herridge's privilege claim here.

Perhaps recognizing as much, Herridge falls back to an argument that *Zerilli* affirmatively requires case-by-case balancing regardless of *Lee*. She therefore asks us to disregard *Lee* as inconsistent with prior circuit precedent. But there is no inconsistency. *Zerilli* upheld an assertion of the reporter's privilege in a case where the plaintiff had failed to exhaust, *see* 656 F.2d at 714, and it expressly reserved the question "whether compelled disclosure would have been appropriate if [plaintiffs] had fulfilled their obligation to exhaust alternative sources," *id.* at 714 n.52. Then, *Lee* answered that question in the affirmative, in a Privacy Act case where the plaintiff had established both centrality and exhaustion. *See* 413 F.3d at 57–61. Herridge points us to *Zerilli*'s more general statement that "courts should look to the facts of each case, weighing the public interest in protecting the reporter's sources against the private interest in compelling disclosure." 656 F.2d at 712.

A13

11

But *Zerilli* made that statement in the course of deciding whether to recognize a reporter's privilege at all. *See id.* at 710–12. Having done so, the Court then established "more precise guidelines … to determine how the balance should be struck in a particular case." *Id.* at 713. And as explained above, it crystallized those guidelines into two inquiries "of central importance"—whether the information is "crucial" to the case and whether the litigant could obtain it from a "reasonable alternative source." *Id.*

V

Finally, Herridge urges us to recognize, as a matter of federal common law, a reporter's privilege broad enough to permit the case-by-case interest balancing urged by the *Lee* dissentals. We decline this invitation to end-run our precedent.

Rule 501 of the Federal Rules of Evidence authorizes federal courts to recognize new privileges "in the light of reason and experience." Fed. R. Evid. 501; *see Jaffee v. Redmond*, 518 U.S. 1, 8 (1996). But Herridge has provided little cause to think that "reason and experience" support the privilege that she propounds. As to reason, the First Amendment analysis in cases like *Zerilli* and *Lee* thoroughly lays out the competing considerations of encouraging newsgathering while also respecting the elemental principle that "the public has a right to every man's evidence." *Trump v. Vance*, 591 U.S. 786, 791 (2020). As to experience, Herridge contends that virtually every state has recognized some form of a reporter's privilege. She attached to her opening brief a chart summarizing the relevant law in every state. But as this chart demonstrates, the privilege varies widely in its scope from state to state, both in the abstract and on the question whether case-by-case interest balancing is appropriate. In short, if the First Amendment itself does not entitle Herridge to disobey

**A14**

12

discovery obligations imposed on every other citizen in the circumstances of this case, we see little reason to create that entitlement as a matter of judge-made common law.

For these reasons, we decline to recognize a federal common law newsgathering privilege.

*Affirmed.*

# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

**No. 24-5050**                     **September Term, 2025**

**1:18-cv-03074-CRC**

**Filed On:** September 30, 2025

Yanping Chen,

      Appellee

   v.

Federal Bureau of Investigation, et al.,

      Appellees

Catherine Herridge,

      Appellant

    **BEFORE:**   Katsas and Childs, Circuit Judges; Edwards, Senior Circuit Judge

## O R D E R

    Upon consideration of appellant's motion to unseal, the opposition thereto, and the reply, it is

    **ORDERED** that the motion be dismissed as moot in light of the court's decision issued herein this date.

### Per Curiam

                             **FOR THE COURT:**
                             Clifton B. Cislak, Clerk

                  BY:   /s/
                             Daniel J. Reidy
                             Deputy Clerk

A16