**[DECIDED SEPTEMBER 30, 2025]**
**No. 24-5050**

———————————————

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA**

———————————————

YANPING CHEN,

*Plaintiff-Appellee,*

v.

FEDERAL BUREAU OF INVESTIGATION, ET AL.,

*Defendants-Appellees,*

CATHERINE HERRIDGE,

*Interested Party-Appellant.*

———————————————————————————————

**FREEDOM OF THE PRESS FOUNDATION MOTION TO**
**INTERVENE FOR THE LIMITED PURPOSE OF UNSEALING**

———————————————————————————————

H. Christopher Bartolomucci
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Tel: (202) 787-1060
Fax: (202) 776-0136
cbartolomucci@schaerr-jaffe.com

*Counsel for Proposed Intervenor*
*Freedom of the Press Foundation*

## MOTION TO INTERVENE FOR THE
## LIMITED PURPOSE OF UNSEALING

The public's right of access to judicial records is "fundamental [to the] rule of law, important to maintaining the integrity and legitimacy of an independent Judicial Branch." *MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 663 (D.C. Cir. 2017). This right of access "reflects the antipathy of a democratic country to the notion of 'secret law,' inaccessible to those who are governed by that law." *In re Leopold*, 964 F.3d 1121, 1127 (D.C. Cir. 2020). Yet, in this case, the Court's refusal to unseal certain judicial records tramples on that important right.

The Freedom of the Press Foundation ("Press Foundation") thus seeks leave to intervene in this proceeding for the limited purpose of unsealing two Department of Defense documents (the "DOD Files"), which together memorialize the Department's decision to terminate the University of Management and Technology ("UMT") from the Department's Tuition Assistance Program "on national security grounds." Additionally, the Press Foundation seeks unsealing of the transcript from the sealed portion of the November 18, 2024 oral argument in this matter, because that portion of the argument was only sealed due to the DOD Files being under seal. Thus, when the Court

unseals the DOD Files, it follows that the transcript should also be unsealed.

As shown below, the public and the press have a right of access to these records under the First Amendment and the common law. The public has an interest in these files, because they relate to how the public's financial resources have been used. More relevant here, though, the public and the press have an interest in the DOD Files because, after Appellant Catherine Herridge reported on an investigation into national security concerns involving Appellee Yanping Chen and UMT, DOD terminated the University's participation in DOD's tuition program, this litigation ensued, and the district court rejected Herridge's reliance on the reporter's privilege—instead holding Herridge in civil contempt. The DOD Files are relevant to understanding how the Court should properly apply the balancing test when determining whether Chen can overcome Herridge's reliance on the reporter's privilege.

Because the DOD Files are pivotal to Herridge's defense, she sought to unseal them. And the Government agreed that these *Government documents* should be unsealed. *See* Ltr. from Brad Hinshelwood, U.S. Dep't of Just. to Clifford Cislak, Clerk of Court, U.S. Ct. of Appeals for

D.C. Cir. at 1 (May 29, 2025, docketed May 30, 2025) ("Gov't Ltr."). Yet this Court denied Herridge's motion to unseal without explanation as moot after holding that Herridge may not rely on the reporter's privilege. But that conclusion is mistaken, as a motion to unseal cannot be moot unless the documents are released, which has not happened here. If this Court's unexplained denial of the motion to unseal is allowed to stand, it will significantly impair public access to records in future cases.

Accordingly, the Court should allow the Press Foundation to intervene, and the Court should grant rehearing and unseal the DOD Files, because the public has an interest in those documents, and the public's interest is not moot.

## BACKGROUND

Appellee Yanping Chen is allegedly a former colonel in China's People's Liberation Army who was suspected of passing information about U.S. military personnel to China. Herridge reported about a counterespionage investigation into Chen, JA111–14, 119–21, 22–23, and that reporting relied in large part on information already in the public record or provided by a UMT whistleblower. Chen later claimed the

reporting also relied on information from government files, thereby violating the Privacy Act.

In 2018, DOD publicly announced that it was terminating UMT from the Department's tuition assistance program for "national security" reasons. JA254 & n.1 (citing Natalie Gross, *DoD bans popular TA school from accepting the benefit*, Military Times (Apr. 6, 2018)). The Department explained the decision in the DOD Files, which Chen chose not to challenge. Instead, she sought damages under the Privacy Act and demanded that Herridge divulge her confidential source(s). JA254. After Herridge refused to provide those sources—relying on the well-established reporter's privilege—the district court held her in contempt, and this Court affirmed that decision.

During the underlying district court proceedings, Herridge filed a motion to unseal the DOD Files, which Chen had claimed were subject to the protective order in place during the district court proceedings. R.174. That motion remained pending for months, at which point Herridge sought this Court's unsealing of the DOD Files during her appeal of the district court's contempt order. *See* Appellant's Mot. to Unseal (July 2, 2024). As Herridge explained, the DOD Files should be unsealed because

they are vital to the public's understanding of how the Court should apply the balancing test when deciding whether Chen can overcome Herridge's First Amendment reporter's privilege. *Id.* at 1.

On September 30, 2025, this Court issued its Opinion, affirming the district court's civil-contempt order against Herridge. *See Chen v. FBI*, 153 F.4th 1289 (D.C. Cir. 2025). That Opinion did not discuss Herridge's motion to unseal. *See id.* Instead, the Court issued a separate, one-line order, which stated without explanation that Herridge's motion to unseal is "moot in light of the court's decision[.]" Order (Sep. 30, 2025) (per curiam).

On November 20, 2025, Herridge filed a petition for en banc rehearing. Pet. for Reh'g & Reh'g En Banc (Nov. 20, 2025). In that petition, Herridge not only explained why the Court's Opinion was incorrect on the merits, she explained why the Court incorrectly held that the motion to unseal was moot. *Id.* at 15–17. As explained below, Herridge is correct, and the public's interest demands access to the DOD Files and oral argument transcript.

**ARGUMENT**

## I.   The Court Should Allow the Press Foundation to Intervene.

The Court should allow the Press Foundation to intervene for the limited purpose of unsealing the DOD Files.[1]  The Press Foundation is a national non-profit organization dedicated to press freedom, government accountability, and the public's right to know.  As relevant here, the Press Foundation has published articles about Herridge's reporting on the UMT matter and on the importance of the reporter's privilege.[2]

Through that reporting, the Press Foundation has emphasized the important role the reporter's privilege plays in enhancing journalists' ability to inform the public about the Government's actions.  For several decades, courts and legislatures have debated the scope of the First Amendment's protections for reporters.  And the Press Foundation has contributed significantly to that debate, advocating for state and federal

---

[1] References to the "DOD Files" throughout this motion incorporate the transcript from the sealed portion of the November 18, 2024 oral argument in this matter, which was sealed only because of the DOD Files being under seal.  Once those files are unsealed, there is no longer any basis for keeping the argument transcript sealed.

[2] Seth Stern, *Crucial transparency case may be heard in secret*, Freedom of the Press Found. (Nov. 8, 2024), https://tinyurl.com/5cv2shja; Seth Stern, *Herridge case shows the need to pass the PRESS Act*, Freedom of the Press Found. (Apr. 4, 2024), https://tinyurl.com/3ntznyvu.

shield laws that provide statutory protection to journalists against compelled production of confidential information.[3]

As the Press Foundation shows below, continued sealing of the DOD Files is a violation of the public's First Amendment and common law rights of access to judicial records. The Press Foundation seeks permission to intervene to be heard on the important matter of the public's interest in the sealed files. Intervention is thus warranted because no party to this appeal will adequately represent the distinct public interest in the DOD Files. While Herridge seeks unsealing, she does so to support her basis for relying on the reporter's privilege. And, while that is an important reason to unseal the records, the public's interest in the DOD Files is broader, it is not currently represented, and courts routinely allow press organizations to intervene to assert the public's right of access. *Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 370–71 (1979) (discussing access for "members of the public"); *Press-*

---

[3] *See, e.g.*, Seth Stern, *Prominent journalists' union risks harming reporter's privilege*, Freedom of the Press Found. (Oct. 25, 2023), https://tinyurl.com/4xwfmbmm; Caitlin Vogus, *Congress has reintroduced the PRESS Act. Now lawmakers must pass it.*, Freedom of the Press Found. (June 21, 2023), https://tinyurl.com/5hevfe47.

*Enter. Co. v. Super. Ct. of Cal.*, 464 U.S. 501, 508 (1984) (discussing access for "everyone in the community").

Additionally, the Press Foundation has standing to enforce the press and public's constitutional and common law rights of access to court records and proceedings. *See, e.g.*, *United States v. El-Sayegh*, 131 F.3d 158, 160 (D.C. Cir. 1997) ("The First Amendment guarantees the press and the public access to aspects of court proceedings[.]"); *Wash. Post v. Robinson*, 935 F.2d 282, 288–90 (D.C. Cir. 1991) (recognizing standing of news media to enforce public right of access).

In fact, both the Supreme Court and this Court have emphasized that a news organization moving to intervene to assert the public access right must be afforded a prompt and full hearing. *See Globe Newspaper Co. v. Super. Ct. Norfolk Cnty.*, 457 U.S. 596, 609 n.25 (1982) (representatives of press must be given a chance to be heard on restrictions to constitutional access right); *Wash. Post*, 935 F.2d at 288–90 (vacating sealing order where court failed to provide notice and an opportunity to express views on sealing of plea agreement); *see also Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 252 (4th Cir. 1988); *In re Wash. Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986).

Intervention is also the appropriate mechanism for the Press Foundation to assert its right of access to court records. *See, e.g.*, *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1045–46 (D.C. Cir. 1998) (allowing intervention "for the limited purpose of seeking access to materials that have been shielded from public view either by seal or by a protective order"); *United States v. Moussaoui*, 65 F. App'x 881, 884, 891 (4th Cir. 2003) (granting news organizations' motion to intervene in appeal for limited purpose of obtaining access to records); *In re Guantanamo Bay Detainee Litig.*, 630 F. Supp. 2d 1, 5 (D.D.C. 2009) (allowing press applicants to intervene to oppose sealing motion).

This is also the appropriate time for intervention. Before the Court's unexplained mootness decision, the Court was presented with a fully briefed motion to unseal, the Government's statement that unsealing these records was in the public's interest, and Chen's partial agreement to unsealing. Gov't Ltr. at 1. On that record, it was reasonable to assume that this Court would grant Herridge's motion. Instead, the Court not only denied the motion, but it did so without explanation and with a questionable application of the mootness doctrine. That unexplained mootness conclusion significantly increases

the public's interest, thereby necessitating the Press Foundation's intervention.

Moreover, the Court is currently considering a petition for rehearing, and the DOD Files are relevant to the Court's disposition of that petition because the DOD Files must play a role in the balancing test for determining whether Herridge may rely on the reporter's privilege. The public thus has an interest in understanding the Court's balancing of those interests when resolving the current petition.

Intervention typically requires a showing of three things: "(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." *Nat'l Children's Ctr.*, 146 F.3d at 1046. For the first two factors, this Court has explained that in cases involving a right of public access, those requirements are lessened: In such cases, "[a]n independent jurisdictional basis [for intervention] is simply unnecessary," and "intervention … may take place long after a case has been terminated." *Id.* at 1047. Additionally, for the final factor, it is satisfied when "the only common question is whether certain materials

are properly sealed." *Aristotle Int'l, Inc. v. NGP Software, Inc.*, 714 F. Supp. 2d 1, 19, 21 (D.D.C. 2010).

The Court should thus grant this motion to intervene, because the Court is currently considering Ms. Herridge's petition for rehearing, which addresses the shortcomings in the Court's conclusion that any request to unseal the DOD Files is moot. As shown below, the only thing that renders a motion to unseal moot is the unsealing or publication of the records. The public thus has a significant interest in ensuring that the panel's mootness decision does not become the standard in this Circuit.

## II.    The Court Should Order Unsealing of the DOD Documents.

The Court should unseal the DOD Files because there is a presumptive right of access to judicial records based on the public's desire to hold the government accountable. *Nixon v. Warner Commn'cs, Inc.*, 435 U.S. 589, 597–98 (1978); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 564–75 (1980). And there can be no dispute that the DOD Files are judicial records, as "judicial records" include documents—like the DOD Files—that are filed with an "inten[t] to influence" a court. *Leopold*, 964 F.3d at 1128; *accord United States v. Munchel*, 567 F. Supp. 3d 9, 14

(D.D.C. 2021) ("in all cases," materials that a party "intend[s] to influence the court qualify as judicial records" (cleaned up)).  Moreover, if a court may have relied on a party's submission in making a substantive ruling, "that is more than enough to make them judicial records." *MetLife,* 865 F.3d at 668.

Because the DOD Files are judicial records, the common law and First Amendment rights of access apply.  And those rights are held by the public generally—rather than by Herridge alone—and the request to unseal is therefore not moot.  Thus, the Court should unseal the DOD Files under the common law and First Amendment rights of access.

## A.    Herridge's Motion to Unseal is not Moot.

The Court made a serious error when concluding that Herridge's motion to unseal was rendered moot by the Court's decision on the merits of her challenge to the contempt order.  *See* Order (Sep. 30, 2025).  The Court should reconsider that decision for at least two reasons.

First, a motion to unseal does not become moot until the document is unsealed or otherwise made public.  As the Fourth Circuit explains: "the affirmance of the summary judgment order in this case *does not moot* the Sun's motion to unseal," because access rights are separate and they

survive case resolution. *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 n.\* (4th Cir. 1988) (emphasis added). The Tenth Circuit agrees. *See United States v. Pickard*, 733 F.3d 1297 (10th Cir. 2013). In *Pickard*, the court rejected the government's mootness argument, concluding that a request to unseal is not moot "until the court unseals the documents." *Id.* at 1301.

Second, the need for unsealing cannot be rendered moot by a decision on Herridge's appeal of the contempt order. The interest in the DOD Files is not Herridge's alone. Rather, it is the *public's* interest in the DOD Files—like all judicial records—that requires unsealing. The public's right to the DOD Files is independent of Herridge's appeal of the contempt order: "[T]he right of access to judicial records and documents is independent of the disposition of the merits of the case." *Stone*, 855 F.2d at 180 n.\*. Thus, that public interest did not become "moot" after the Court's decision. If anything, the Court's decision *increased* the public's interest, as the decision affirming the contempt order severely limited the scope of the reporter's privilege, and the public is denied the right to see the relevant underlying records that should have been

13

reviewed as part of the balancing test used to determine whether the reporter's privilege applied.

This is not an academic faux pas on the Court's part. Rather, this Court's treatment of Herridge's motion to unseal will lead other courts to do likewise—sidestepping motions to unseal when the court rules against the requesting party on the merits. Such a rule will have severe ramifications for public access, and neither the First Amendment nor the common law rights of access can bear such a rule.

### B.    The *Hubbard* Factors Support Unsealing.

The Court should have instead resolved Herridge's motion to unseal by applying the *Hubbard* factors. *See MetLife*, 865 F.3d at 665 (citing *United States v. Hubbard*, 650 F.2d 293, 317–22 (D.C. Cir. 1980)). Those factors plainly favor unsealing of the DOD Files under the common law right of access. By failing to perform the balancing that *Hubbard* requires, the Court has prevented Herridge and the public from analyzing the strength of the Court's reasoning, and it has limited effective judicial review of the Court's decision. *See Nat'l Children's Ctr.*, 146 F.3d at 1411 (noting that a court must explain its decision to seal records to permit effective judicial review).

Rather than duck the issue, the Court should have applied the six-part *Hubbard* test, which requires the court to consider the following factors:

(1) the need for public access to the documents at issue;

(2) the extent of previous public access to the documents;

(3) the fact that someone has objected to disclosure, and the identity of that person;

(4) the strength of any property and privacy interests asserted;

(5) the possibility of prejudice to those opposing disclosure; and

(6) the purposes for which the documents were introduced during the judicial proceedings.

*MetLife*, 865 F.3d at 665 (citing *Hubbard*, 650 F.2d at 317–22). Under this test, the party seeking to keep records sealed has the burden of demonstrating the need for sealing, and must show that "disclosure will work a clearly defined and serious injury[.]" *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001) (quoting *Miller v. Indiana Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994)).

1. As to the first factor, which considers the public's need for access to the requested documents, the public has a strong interest in learning whether Chen's claimed damages are the result of a reporter's First Amendment activity or, more likely, the result of DOD's independent

15

conclusion about national security issues raised by Chen's actions. *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987) ("The appropriateness of making court files accessible is accentuated in cases where the government is a party: in such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch."). Indeed, that question is core to the underlying dispute here, as Herridge has argued that the DOD Files break the causal chain between any Privacy Act violation and Chen's alleged injury. Without the DOD Files, the public cannot assess the strength of the district court's conclusion that the reporter's privilege was outweighed. And the public cannot assess the balance the Court struck when demanding that Herridge disclose confidential sources.

Moreover, the public needs access to the DOD Files to assess the national security implications of Chen's demand that Herridge divulge her sources. The public would likely be concerned to learn that a person who is affiliated with a foreign adversary and presents "national security concerns" is attempting to use discovery to learn who within the U.S. Government is speaking with a national security reporter. After all, the

district court has not yet determined that Chen has a viable Privacy Act claim. But under the district court's reasoning, nothing would stand in the way of others like Chen filing weak lawsuits and using those lawsuits to issue subpoenas to reports to demand confidential information from national security reporters.

This factor weighs in favor of unsealing, and there is a "strong presumption" in favor of public access to court records. *MetLife*, 865 F.3d at 665 (quoting *Hubbard*, 650 F.2d at 317); *accord Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992) ("Once a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case."). In fact, the Government agrees, noting that unsealing these *Government records* is in the public's interest. *See* Gov't Ltr. at 1.

2. The second *Hubbard* factor considers whether the requested materials have previously been released, and this factor also favors unsealing. The crux of the DOD Files has already been released—DOD terminated UMT "on national security grounds." *See* R.174-1 at 7–8 & n.6. And, as Herridge explained during the proceedings below, this fact has been reported and discussed in unsealed filings. *See id.* It's the

17

details that led to this decision that the Press Foundation seeks for the public to better understand how the reporter's privilege should have been analyzed in this case.

Yet if the Court disagrees, this factor is, at most, neutral. *See Am. Pro. Agency, Inc. v. NASW Assurance Servs., Inc.*, 121 F. Supp. 3d 21, 24 (D.D.C. 2013) ("[T]he second *Hubbard* factor is 'neutral' where there has been no previous access.").

3. As to the third factor, Chen's objection should be afforded minimal weight. To begin, Chen's objection should be considered alongside the fact that the records in question are *Government records*, and the Government believes unsealing is appropriate. *See* Gov't Ltr. at 1. Indeed, the Government agrees that unsealing is appropriate, and these records are not classified. *See id.* Moreover, Chen herself only partially opposes unsealing. *See id.* It cannot be the case that private parties may demand sealing of non-classified Government records where the Government favors unsealing.

For her remaining partial opposition to unsealing, this concededly weighs against disclosure, but it is due little weight because each of the other factors so clearly favors unsealing. *See EEOC v. Nat'l Children's*

*Ctr., Inc.*, 98 F.3d 1406, 1410 (D.C. Cir. 1996) (reversing a decision to seal documents when the only factor favoring sealing was the other party's objection).

4. As to the fourth and fifth factors, privacy interests and the risk of prejudice do not outweigh the public's interest. At most, Chen has a privacy interest in avoiding embarrassment and public scrutiny surrounding her activities. But concerns about reputation or embarrassment are insufficient to prevent unsealing. *In re McCormick & Co., Inc.*, No. 15-mc-1825 (ESH), 2017 WL 2560911, at *2 (D.D.C. June 13, 2017) ("[S]imply showing that the information would harm [one's] reputation is not sufficient to overcome the strong common law presumption in favor of public access to court proceedings and records." (cleaned up)).

Even if some privacy interests are at play, "this factor does not serve as a blanket excuse to keep the public from accessing entire judicial records[.]" *Vanda Pharms., Inc. v. FDA*, 539 F. Supp. 3d 44, 55 (D.D.C. 2021) (citing *Hubbard*, 620 F.2d at 324). Moreover, Chen cannot rely on this factor, because any underlying investigation related to the DOD Files is complete, and there is thus no danger of an investigation being

thwarted if the Court releases the documents. *See Appl. of N.Y. Times Co.*, 585 F. Supp. 2d 83, 93 (D.D.C. 2008).

6. Finally, the purpose for which the DOD Files were introduced strongly supports unsealing. *See Hubbard*, 650 F.2d at 321. The DOD Files are important for Herridge's arguments about the proper scope of the balancing test that should be used in evaluating the First Amendment reporter's privilege. As the D.C. Circuit has explained, "[a] brief (or part of a brief) can affect a court's decisionmaking process even if the court's opinion never quotes or cites it." *MetLife*, 865 F.3d at 667. Thus, the filing need not be expressly relied on by a court to tilt this factor in favor of unsealing. It is enough when a party "intended the Court" to rely on the documents. *Vanda Pharms.*, 539 F. Supp. 3d at 57; *accord United States v. Munchel*, 567 F. Supp. 3d 9, 14 (D.D.C. 2021) ("in all cases," materials that a party "intend[s] to influence the court qualify as judicial records" (cleaned up)).

In fact, as this Court has explained: "Without access to the sealed materials, it is impossible to know which parts of those materials persuaded the court and which failed to do so (and why)." *MetLife*, 865

F.3d at 668.  That is particularly true where, as here, the Court failed to explain its decision when denying the motion to unseal.

Notably, this Court recently remanded a case for consideration of the sixth *Hubbard* factor in a case where "the district court did not address the sixth factor[.]"  *In re L.A. Times Commc'ns*, 28 F.4th 292, 298 (D.C. Cir. 2022).  If it was reversible error for the district court not to address a *Hubbard* factor in that case, it's certainly an error for the Court here to ignore *all Hubbard* factors.

## C.    The First Amendment Also Requires Unsealing.

In addition to the common-law right of access, the public has a First Amendment right to the DOD Files.  Although the Court need not reach this question, as the common-law right of access to relief should be dispositive, *see Leopold*, 964 F.3d at 1126–27 (not reaching First Amendment right of access because the common-law right of access provided sufficient relief), the public's First Amendment right of access also requires disclosure of the DOD Files.

To determine whether the public has a First Amendment right of access to judicial documents, the Supreme Court applies an "experience and logic" test.  Under that test, the First Amendment is implicated

21

when: (1) the types of records sought have historically been available to the public; and (2) public access plays a "significant positive role" in the functioning of those processes. *See Press-Enter. Co. v. Super. Ct. of Cal.*, 478 U.S. 1, 8–9, 11 (1986); *Globe Newspaper*, 457 U.S. at 605–07; *Wash. Post*, 935 F.2d at 287–92; *United States v. Brice*, 649 F.3d 793, 795 (D.C. Cir. 2011) (applying the experience and logic test).

As to experience, records of government decisions are generally public. These documents reflect DOD's final agency action, which should be released. *See, e.g.*, *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975) (explaining that the Government's "final opinions" should be subject to release when requested); *Bristol-Meyers Co. v. FTC*, 598 F.2d 18, 23 (D.C. Cir. 1978). And the Government agrees that the DOD Files should be unsealed. *See* Gov't Ltr. at 1. Moreover, while there is a tradition of keeping properly classified records away from the public eye, there is no similar tradition for non-classified records, like the DOD Files.

As to logic, this requirement considers whether access to the sealed documents would serve a "significant positive role in the functioning of the particular process in question." *Press-Enter.*, 478 U.S. at 8 (citing *Globe Newspaper,* 457 U.S. at 606). This prong is easily satisfied here,

because the public is otherwise prevented from evaluating the reasonableness of the Court's decision limiting the scope of the reporter's privilege, to which the DOD Files directly relate.

Transparency concerning judicial documents ensures fairness, decreases bias, improves public perception about the judicial system, and it enhances the likelihood that court orders will be well-justified and narrowly tailored. *See Nixon*, 435 U.S. at 597–98 (explaining that the law's recognition of the importance of judicial transparency serves "the citizen's desire to keep a watchful eye on the workings of public agencies, and ... the operation of government"); *see also Appl. of N.Y. Times*, 585 F. Supp. 2d at 90 ("[W]ith respect to warrants, openness plays a significant positive role in the functioning of the criminal justice system, at least at the post-investigation stage.").

In contrast, there is no compelling reason that the DOD Files should remain sealed, as the Government agrees, and their complete sealing is not narrowly tailored. *See Press-Enter.*, 478 U.S. at 15 ("The First Amendment right of access cannot be overcome by [a] conclusory assertion[.]"). Indeed, a document may not be sealed in its entirety if the privacy interests can be accommodated through some less drastic

alternatives to sealing, such as redaction of specific information.  *Id.* at 14; *accord Appl. of N.Y. Times*, 585 F. Supp. 2d at 91 (holding that "the goal of protecting the confidentiality of informants can be accomplished by means less restrictive than prohibiting access to the warrant materials altogether"); *Appl. of WP Co.*, No. 16-mc-351 (BAH), 2016 WL 1604976, at *2 (D.D.C. Apr. 1, 2016) ("While these interest[s] do not militate in favor of full secrecy, these interests may be protected through less restrictive means (*i.e.*, redacting this information prior to unsealing the relevant materials).").

## CONCLUSION

The public and the press have important interests in understanding more about why the Court refused to honor the reporter's privilege here. The DOD Files serve an important role in understanding that decision. Accordingly, the Court should allow the Press Foundation to intervene for the limited purpose of unsealing the DOD Files.

December 2, 2025                    Respectfully submitted,

                                   /s/ *H. Christopher Bartolomucci*
                                   H. Christopher Bartolomucci
                                   SCHAERR | JAFFE LLP
                                   1717 K Street NW, Suite 900
                                   Washington, DC 20006
                                   Tel: (202) 787-1060
                                   Fax: (202) 776-0136
                                   cbartolomucci@schaerr-jaffe.com

                                   *Counsel for Proposed Intervenor*
                                   *Freedom of the Press Foundation*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) & (6) and the 5,200-word type-volume limitation of Fed. R. App. P. 27(d)(2)(A) in that it uses Century Schoolbook 14-point type and contains 4,784 words. The number of words was determined through the word-count function of Microsoft Word.

*/s/ H. Christopher Bartolomucci*
H. Christopher Bartolomucci

# ADDENDUM

# CERTIFICATE OF PARTIES AND DISCLOSURE STATEMENT

Pursuant to D.C. Circuit Rule 27(a)(4), counsel for Proposed Intervenor Freedom of the Press Foundation certifies as follows:

## A. Parties, Intervenors, and Amici Curiae

Except for Proposed Intervenor Freedom of the Press Foundation, all parties, intervenors, and amici appearing before the district court and in this court are listed in the previously filed party briefs and motions.

## B. Disclosure Statement

Pursuant to Fed. R. App. P. and D.C. Cir. R. 26.1, Proposed Intervenor Freedom of the Press Foundation certifies that it is a 501(c)(3) nonprofit organization, has no parent corporation, and no publicly held company has a 10% or greater interest in it.

Freedom of the Press Foundation supports and defends public-interest journalism in the 21st century and works to preserve and strengthen First and Fourth Amendment rights guaranteed to the press through a variety of avenues, including engaging in public and legal advocacy.

/s/ *H. Christopher Bartolomucci*
H. Christopher Bartolomucci

27