**No. 24-5050**

IN THE

# United States Court of Appeals for the District of Columbia Circuit

YANPING CHEN,
*Plaintiffs-Appellees*,

*v.*

FEDERAL BUREAU OF INVESTIGATION, et al.,
*Defendants-Appellees*,

CATHERINE V. HERRIDGE,
*Appellant*.

On Appeal from the United States District Court for the District of Columbia,
No. 1:18-cv-03074-CRC

## CATHERINE V. HERRIDGE'S MOTION TO STAY ISSUANCE OF MANDATE

Patrick F. Philbin
Kyle T. West
Chase T. Harrington
TORRIDON LAW PLLC
801 Seventeenth Street NW
Suite 1100
Washington, DC 20006
(202) 249-6900
pphilbin@torridonlaw.com

May 28, 2026                              *Counsel for Catherine V. Herridge*

**TABLE OF CONTENTS**

                                                                    **Page**

BACKGROUND ..............................................................................................3

ARGUMENT .................................................................................................7

I.      The Forthcoming Petition for Certiorari Will Raise Substantial
        Questions Concerning the Scope of the First Amendment Reporter's
        Privilege and the Need to Recognize a Common Law Privilege Under
        Federal Rule of Evidence 501. ....................................................................7

        A.      The First Amendment Reporter's Privilege Presents a Substantial
                Question...................................................................................8

        B.      Recognizing a Federal Common Law Reporter's Privilege
                Presents a Substantial Question. ..........................................13

II.     There Is Good Cause for a Stay, and Ms. Herridge Will Suffer
        Irreparable Harm Absent One...................................................................16

CONCLUSION ............................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcraft v. Conoco, Inc.*,
218 F.3d 282 (4th Cir. 2000) ............................................................................12

*Bruno & Stillman, Inc. v. Globe Newspaper Co.*,
633 F.2d 583 (1st Cir. 1980)....................................2, 8, 9, 10, 11, 18

*Cervantes v. Time, Inc.*,
464 F.2d 986 (8th Cir. 1972) ...........................................................................12

*Chen v. Fed. Bureau of Investigation*,
153 F.4th 1289 (D.C. Cir. 2025)........................................6, 9, 10, 15

*Cigar Ass'n of Am. v. U.S. Food and Drug Admin.*,
317 F. Supp. 3d 555 (D.D.C. 2018).................................................................16

*Cusumano v. Microsoft Corp.*,
162 F.3d 708 (1st Cir. 1998).............................................................................9

*Deering Milliken, Inc. v. FTC*,
647 F.2d 1124 (D.C. Cir. 1978)........................................................................7

*Elrod v. Burns*,
427 U.S. 347 (1976)...............................................................................3, 16

*In re Grand Jury Proc. (Ridenhour)*,
520 So. 2d 372 (La. 1988) ...............................................................................13

*In re Grand Subpoena, Judith Miller*,
438 F.3d 1141 (D.C. Cir. 2006)........................................................................14

*Grandbouche v. Clancy*,
825 F.2d 1463 (10th Cir. 1987) .......................................................................12

*Herbert v. Lando*,
441 U.S. 153 (1979).........................................................................................11

*Jaffee v. Redmond*,
518 U.S. 1 (1996)..............................................................................13, 14, 15

ii

*John Doe Agency v. John Doe Corp.*,
488 U.S. 1306 (1989)................................................................................18

*Jubilant DraxImage Inc. v. U.S. Int'l Trade Comm'n*,
396 F. Supp. 3d 113 (D.D.C. 2019).........................................................17

*Jud. Watch, Inc. v. Nat'l Energy Pol'y Dev. Grp.*,
No. 02-5355, 2003 WL 22319584 (D.C. Cir. Sept. 30, 2003) ...........16

*Lee v. Dep't of Justice*,
413 F.3d 53 (D.C. Cir. 2005)......................................................................9

*Lee v. Dep't of Justice*,
428 F.3d 299 (D.C. Cir. 2005)....................................................................8

*In re Letellier*,
578 A.2d 722 (Me. 1990)..........................................................................13

*Mills v. District of Columbia*,
571 F.3d 1304 (D.C. Cir. 2009)................................................................16

*Mitchell v. Superior Ct.*,
690 P.2d 625 (Cal. 1984)..........................................................................13

*Morgan v. State*,
337 So. 2d 951 (Fla. 1976) .......................................................................13

*N.Y. Times Co. v. United States*,
403 U.S. 713 (1971).............................................................................3, 14

*New York Nat. Res. Def. Council, Inc. v. Kleppe*,
429 U.S. 1307 (1976)................................................................................18

*Providence J. v. Fed. Bureau of Investigation*,
595 F.2d 889 (1st Cir. 1979).....................................................................17

*Riley v. City of Chester*,
612 F.2d 708 (3d Cir. 1979) ...............................................................12, 13

*Robert Half Int'l Inc. v. Billingham*,
315 F. Supp. 3d 419 (D.D.C. 2018)..........................................................17

*In re Roche*,
448 U.S. 1312 (1980).............................................................16, 17, 18

*In re Sealed Case*
No. 98-3077, 151 F.3d 1059 (D.C. Cir. 1998) ...................................17

*Shoen v. Shoen*,
5 F.3d 1289 (9th Cir. 1993) ...............................................................12

*Zelenka v. State*,
83 Wis. 2d 601 (1978) .......................................................................13

*Zerilli v. Smith*,
656 F.2d 705 (D.C. Cir. 1981).......................................................6, 14

**Statutes**

5 U.S.C. § 552a(b) ...................................................................................4

**Other Authorities**

11A C. Wright, A. Miller & M. Kayne, Federal Practice and
Procedure § 2948.1 (3d ed. 2016).....................................................17

D.C. Cir. R. 41 ....................................................................................1, 7

Fed. R. App. P. 41................................................................1, 3, 7, 20

Fed. R. Evid. 501 ................................................................................7, 13

Sup. Ct. R. 10........................................................................................8

Pursuant to Federal Rule of Appellate Procedure 41(d) and Circuit Rule 41(a)(2), national security reporter Catherine V. Herridge moves for a stay of the mandate pending the filing and consideration of her petition for a writ of certiorari in the United States Supreme Court. Ms. Herridge's forthcoming petition will raise substantial questions about the scope of the First Amendment and federal common law reporter's privileges. Absent a stay, Ms. Herridge will suffer irreparable harm, because she will be subject to an order forcing her to disclose her confidential source(s) in violation of her First Amendment rights. Such a disclosure would mean the secrecy of the source's (or sources') identity will be irretrievably destroyed, as will Ms. Herridge's credibility as a journalist whose assurances of confidentiality can be trusted.

Ms. Herridge's petition will present a constitutional question of exceptional importance: the scope of the First Amendment reporter's privilege protecting journalists' confidential sources. The panel decision in this case sharply narrowed that privilege, applying a mechanical, two-part test that considers only (i) whether a plaintiff seeking to disclose a journalist's confidential source has exhausted other sources of information and (ii) whether finding out the identity of the source is central to the plaintiff's claim. In a Privacy Act case like this one, because proving willfulness and intent is critical, finding out the identity of the source that provided information to the journalist is always central to the case. That means that the

panel's two-part test guarantees that the First Amendment privilege *always* loses in Privacy Act cases. The plaintiff will always overcome the First Amendment privilege and get access to the source after exhausting other avenues of discovery. Based on that approach, the panel affirmed an order holding Ms. Herridge in contempt for refusing to disclose her confidential source(s).

In doing so, the panel created a split in authority with decisions of at least the First, Third, Fourth, Eighth, Ninth, and Tenth Circuits, all of which evaluate the reporter's privilege by engaging in more complete balancing to weigh the plaintiff's interest in disclosure against society's interest in the "free flow of information" to the press. *Bruno & Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583, 596 (1st Cir. 1980). Those circuits recognize that society has a vital interest in protecting the confidentiality of sources because it is critical for the functioning of the press. They recognize, therefore, that society's interest in preserving the flow of information to the press may outweigh a plaintiff's need for access to a source in a particular case.

By undermining First Amendment protections, the panel's approach will stifle news reporting that is in the public interest. Especially in the arena of national security reporting, investigative journalists cannot obtain newsworthy information and seek accountability for decision-makers without credible assurances of confidentiality to their sources. The panel decision thus hobbles the ability of the

press to "bare the secrets of government and inform the people." *N.Y. Times Co. v. United States*, 403 U.S. 713, 717 (1971) (Black, J., concurring).

There is also good cause for a stay. Absent a stay, Ms. Herridge and her source will suffer irreparable harm. The district court's contempt order ("Order") would require her to reveal her confidential source(s) or pay a draconian sanction of $800 per day, in violation of her First Amendment rights. The U.S. Supreme Court has recognized that any deprivation of First Amendment rights constitutes irreparable harm. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). What is more, once the name of any source is disclosed in violation of her First Amendment rights, Ms. Herridge's ability to credibly promise confidentiality will be forever destroyed. This Court should stay its mandate to permit Ms. Herridge the opportunity to seek review in the U.S. Supreme Court before irreparable harm is done both to her First Amendment right to maintain the confidentiality of her source(s) and to her ability to work as a national security reporter. Alternatively, the Court—in accordance with Federal Rule of Appellate Procedure 41(b)—should withhold issuance of the mandate until seven days after entry of the Court's order so that the Supreme Court at least has an opportunity to consider and rule on an application for an emergency stay.

## BACKGROUND

In 2017, Ms. Herridge, then the Chief Intelligence Correspondent for Fox News, was the lead reporter on a series of articles about a counterespionage

investigation into Plaintiff. *See* JA111, 119-23. As those articles explained, Plaintiff—who is suspected of being a former colonel in the People's Liberation Army ("PLA")—founded and runs the University of Management Technology ("UMT"), a school that caters mainly to U.S. military personnel. *Id.* The articles reported that UMT was collecting information about U.S. servicemembers' military history that could be remotely accessed from China. *Id.* An expert explained that the personnel records would provide a "curated database" that would aid the PLA in assessing U.S. military capabilities and identifying servicemembers to target for espionage purposes. JA120.

The articles further detailed that Plaintiff had sought to hide her past with the PLA by lying on immigration forms and telling others to lie under oath to a federal grand jury. *See* JA111-14.

Although almost all of the information in the articles was either public or provided by a whistleblower at UMT, the stories included some information— mainly photographs of Plaintiff in her PLA colonel's uniform—that Plaintiff later claimed had come from government files and was subject to the Privacy Act, which under certain circumstances prohibits the release of information about individuals stored in government records. *See* 5 U.S.C. § 552a(b).

In 2018, DOD publicly announced that it was terminating UMT from a tuition assistance program "on national security grounds." JA254. DOD based its decision

on findings that are part of the record in this case, but that the Court has left under seal, with the result that the public cannot understand the full national security implications of plaintiff's Privacy Act suit. *See* JA403.

Plaintiff chose not to challenge DOD's national security findings about her. Instead, she sued several agencies under the Privacy Act seeking to have the government compensate her for the revenue she lost when DOD cut off her university's funding on national security grounds. She sought to blame her losses not on DOD's national security findings, but on an alleged leak of Privacy Act information to Ms. Herridge.

Plaintiff eventually subpoenaed Ms. Herridge to discover her confidential source(s). JA054. After denying a motion to quash, the district court ordered disclosure. Holding that the test for applying the First Amendment reporter's privilege "focused primarily . . . on centrality and exhaustion," JA222-23, the court found the identity of the source(s) was central to Plaintiff's claim and that she had exhausted alternative discovery. JA242. The court refused to consider partial summary judgment briefing to determine whether Plaintiff's claim would even survive. As Ms. Herridge explained, Plaintiff's claim could be entirely (or largely) eliminated by failure to prove that any leak caused Plaintiff's damages due to both (i) DOD's intervening decision to terminate UMT on national security grounds and (ii) the fact that almost everything in the stories came from sources *not* covered by

the Privacy Act. JA090-98, 103. If Plaintiff's claims were whittled away to almost nothing, Ms. Herridge argued, that should matter under the balancing test announced in *Zerilli v. Smith*, 656 F.2d 705 (D.C. Cir. 1981). The district court refused to consider that point in its analysis.

After Ms. Herridge declined to identify her source(s), JA313-14, the district court held her in civil contempt and set a fine of $800/day, stayed pending appeal. JA342.

On appeal, a panel of this Court held that the district court properly limited its analysis to centrality and exhaustion. *Chen v. Fed. Bureau of Investigation*, 153 F.4th 1289, 1294-95 (D.C. Cir. 2025). In the panel's view, it does not matter if partial summary judgment proceedings might show that most of a plaintiff's claim will collapse. Even if Plaintiff has nothing more than a nominal claim for $1,000 in statutory damages, the panel held that Ms. Herridge must be forced to disclose her confidential source(s) in aid of that claim. *Id.* Under the panel's approach, no matter how trivial a plaintiff's claim ultimately may be, it must trump the First Amendment reporter's privilege so long as the reporter has information "central" to the claim and the plaintiff has exhausted alternatives for obtaining that information.

Ms. Herridge subsequently sought rehearing or rehearing en banc, but the Court denied her petitions for rehearing on May 22, 2026.

6

**ARGUMENT**

To obtain a stay of the mandate pending the filing of a petition for certiorari, a movant must "show that the petition would present a substantial question and that there is good cause for a stay." Fed. R. App. P. 41(d)(1); *see also* D.C. Cir. R. 41(a)(2) ("A motion for a stay of the issuance of the mandate will not be granted unless the motion sets forth facts showing good cause for the relief sought."). Ms. Herridge's forthcoming petition will raise substantial questions concerning the scope of the First Amendment reporter's privilege and the need for federal courts to recognize a similar common law privilege under Federal Rule of Evidence 501. There is good cause for a stay because Ms. Herridge will suffer irreparable harm if she is forced to reveal her confidential source(s) on remand. Indeed, forced disclosure would moot her petition for certiorari without giving the Supreme Court an opportunity to consider the important constitutional issues it will present.

**I.    The Forthcoming Petition for Certiorari Will Raise Substantial Questions Concerning the Scope of the First Amendment Reporter's Privilege and the Need to Recognize a Common Law Privilege Under Federal Rule of Evidence 501.**

Ms. Herridge's petition for certiorari will raise "substantial" issues warranting a stay. *Deering Milliken, Inc. v. FTC*, 647 F.2d 1124, 1128 (D.C. Cir. 1978). The standards the Supreme Court applies for granting certiorari bear on that inquiry. As relevant here, there is a "compelling" case for Supreme Court review when a United States court of appeals "enter[s] a decision in conflict with the decision of another

United States court of appeals on the same important matter" or "has decided an important federal question in a way that conflicts with a decision by a state court of last resort." Sup. Ct. R. 10(a). There is also compelling cause for review when "a United States court of appeals has decided an important question of federal law that has not been, but should be, settled by this Court." *Id.* 10(c). The panel's decision in this case satisfies all those criteria. It conflicts with the decisions of other circuits and state high courts, and it plainly addresses a constitutional issue of profound importance for the functioning of the press and on which there should be a uniform nationwide rule set by the Supreme Court.

> **A.** **The First Amendment Reporter's Privilege Presents a Substantial Question.**

The Panel's "arid two-factor test," *Lee v. Dep't of Justice*, 428 F.3d 299, 301-02 (D.C. Cir. 2005) (Tatel, J., joined by Garland, J., dissenting from denial of rehearing en banc), for applying the First Amendment reporter's privilege conflicts with decisions of the First, Third, Fourth, Eighth, Ninth, and Tenth Circuits—as well as decisions of several state high courts—all of which engage in broader balancing to weigh the plaintiff's interest in disclosure of a source against society's interest in the "free flow of information" to the press. *Bruno & Stillman*, 633 F.2d at 596. This split in authority presents a substantial question justifying a stay of the mandate while Ms. Herridge's forthcoming petition for certiorari is pending.

8

Under the panel's decision, the reporter's privilege always fails if the information sought from a reporter is (1) central to the case and (2) the movant has exhausted other sources for getting at the information. *Chen*, 153 F.4th at 1294-95. Because the identity of a source is always deemed "central" to a Privacy Act claim, *see Lee v. Dep't of Justice*, 413 F.3d 53, 60 (D.C. Cir. 2005), this mechanical, two-part test effectively reduces the reporter's privilege to an exhaustion requirement under which *every* Privacy Act plaintiff can *always* get access to confidential sources eventually, no matter how trivial or tenuous the plaintiff's claims.

That mechanical approach conflicts with the tests adopted by the majority of the other Circuits—not to mention state courts of last resort—which require broad balancing to apply the reporter's privilege and which consider many factors the Court refused to consider here. The First Circuit, for example, holds that applying the reporter's privilege requires courts to broadly "balance the potential harm to the free flow of information that might result [from disclosure] against the asserted need for the requested information." *Bruno & Stillman*, 633 F.2d at 595-96. The First Circuit consistently emphasizes that its test "contemplates consideration of a myriad of factors, often uniquely drawn out of the factual circumstances of the particular case," *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 716 (1st Cir. 1998), and that "[t]he task . . . demands sensitivity, invites flexibility, and *defies formula*," *Bruno &*

9

*Stillman*, 633 F.2d at 598 (emphasis added).  That approach is diametrically opposed to the rigid, two-factor test adopted by the panel in this case.

In fact, the First Circuit weighs factors in the balancing test that this Court refused to consider.  The First Circuit expressly instructs courts to consider "the importance to the [journalist's] continued newsgathering effectiveness of preserving the source's confidentiality."  *Id.* at 597-98.  Ms. Herridge presented declarations explaining how disclosing her source(s) would destroy her ability to function as a national security investigative journalist, JA293-99, but the panel refused to consider them.

Next, while the panel considered whether Plaintiff's Privacy Act claims were "frivolous," *Chen*, 153 F.4th at 1293-94, it forbade any further examination into the merits of those claims, *see id.* 1294-95.  The First Circuit, however, expressly holds that a "finding that plaintiff's claim is not frivolous" "does not terminate the sensitive balancing process."  *Bruno & Stillman*, 633 F.2d at 599 n.17.

Indeed, the First Circuit requires that, before overcoming the privilege, "plaintiff should show that it can establish jury issues on the essential elements of its case not the subject of the contested discovery."  *Id.* at 597.  In other words, the plaintiff's claims should be tested on partial summary judgment to determine whether they will entirely (or mostly) collapse.  *See id.* (falsity element of a defamation claim should be "established as a jury issue before discovery is

10

compelled"). Ms. Herridge argued for precisely such testing of Plaintiff's case on partial summary judgment, Herridge Br. 29-31 (No. 2061066), but the Panel refused to consider it. Notably, the late Justice Powell endorsed this procedure to avoid discovery disputes in other cases. *See Herbert v. Lando*, 441 U.S. 153, 180 n.4 (1979) (Powell, J., concurring) (explaining that "[i]n some instances, it might be appropriate for the district court to delay enforcing a discovery demand, in the hope that the resolution of issues through summary judgment or other developments in discovery might reduce the need for the material demanded").

Finally, the First Circuit has acknowledged that "there may be cases where revelation of sources will threaten physical or other harm that will be quite disproportionate to a plaintiff's litigation needs." *Bruno & Stillman*, 633 F.2d at 595. This Court's test forbids considering such factors. Here again, Ms. Herridge submitted declarations detailing the significant risk that Plaintiff was engaged in espionage for China and the risks involved in forcing disclosure to her of the identity of (presumptively) government personnel with knowledge of counterespionage investigations. JA300, 612. The panel refused even to consider such national security harms from the disclosure of confidential sources in this case.

The First Circuit is not alone in requiring a broad balancing of interests. The Fourth Circuit also applies a full-fledged balancing test. It has set out three factors to be considered in the balance—relevance, exhaustion, and whether the plaintiff has

11

a "compelling interest in the information"—but has cautioned that those factors do not end the inquiry. *Ashcraft v. Conoco, Inc.*, 218 F.3d 282, 287-88 & n.12 (4th Cir. 2000) (quotation omitted). Even where a plaintiff identifies an interest that may be compelling, the "compelling nature of the interest [in disclosure] would have to be balanced against the reporter's interest in protecting the confidentiality of his sources." *Id.* The panel decision in this case allows no such balancing of interests.

The Eighth Circuit holds that a plaintiff should show that he can survive summary judgment, because "compulsory disclosure of anonymous news sources without first inquiring into the substance of [an action] would emasculate" First Amendment protections. *Cervantes v. Time, Inc.*, 464 F.2d 986, 993 (8th Cir. 1972).

The Third Circuit requires evaluating whether the reporter's privilege should "yield to a paramount interest" on "an Ad hoc basis." *Riley v. City of Chester*, 612 F.2d 708, 715-16 (3d Cir. 1979). The Ninth Circuit broadly requires that the "First Amendment privilege and the opposing need for disclosure be judicially weighed in light of the surrounding facts, and a balance struck to determine where lies the paramount interest," *Shoen v. Shoen*, 5 F.3d 1289, 1293 (9th Cir. 1993) (quotation omitted), and the Tenth Circuit has similarly endorsed a "balancing test," while identifying four non-exhaustive factors "[a]mong the factors that the trial court must consider," *Grandbouche v. Clancy*, 825 F.2d 1463, 1466-67 (10th Cir. 1987).

Numerous states also require a broad balancing of interests before finding that the First Amendment reporter's privilege can be overridden. *See, e.g.*, *Mitchell v. Superior Ct.*, 690 P.2d 625, 629 (Cal. 1984); *Morgan v. State*, 337 So. 2d 951, 955 (Fla. 1976); *In re Grand Jury Proc. (Ridenhour)*, 520 So. 2d 372, 376 (La. 1988); *In re Letellier*, 578 A.2d 722, 726 (Me. 1990); *Zelenka v. State*, 83 Wis. 2d 601, 619 (1978).

Given the conflict between the decision in this case and the approach used in other circuits, Ms. Herridge's forthcoming petition for certiorari will plainly raise substantial constitutional questions. A stay is warranted so that the Supreme Court can have the opportunity to consider these questions and the need for establishing a uniform, national rule governing application of the First Amendment reporter's privilege.

**B.     Recognizing a Federal Common Law Reporter's Privilege Presents a Substantial Question.**

"Rule 501 of the Federal Rules of Evidence authorizes federal courts to define new privileges by interpreting 'common law principles . . . in the light of reason and experience.'" *Jaffee v. Redmond*, 518 U.S. 1, 8 (1996) (quoting Fed. R. Evid. 501). The Supreme Court has yet to decide whether to recognize a common law reporter's privilege, and the lower courts are split on that issue. The panel's decision refusing to recognize a common law privilege conflicts, at a minimum, with the position of the Third Circuit. *See Riley*, 612 F.2d at 715. Supreme Court review is warranted

both to resolve this split and because the Panel's decision conflicts with *Jaffee*, as all the factors identified in *Jaffee* strongly favor recognizing a reporter's privilege.

First, like other relationships that have justified evidentiary privileges (such as the psychotherapist-patient privilege in *Jaffee*), the relationship between a journalist and a confidential source is plainly "rooted in the imperative need for confidence and trust." *Jaffee*, 518 U.S. at 10 (quotation omitted). Assurances of confidentiality are often "essential" for journalists to secure information from sources. *Zerilli*, 656 F.2d at 711.

Second, recognizing a common law privilege would "serve public ends." *Jaffee*, 518 U.S. at 11. The core purpose of the privilege is to protect journalists' ability to gather news and thereby to ensure that the press can "fulfill its essential role in our democracy" to "bare the secrets of government and inform the people." *N.Y. Times Co.*, 403 U.S. at 717 (Black, J., concurring). The press cannot fulfill its role without confidential sources. "Reporters could reprint government statements, but not ferret out underlying disagreements among officials; they could cover public governmental actions, but would have great difficulty getting potential whistleblowers to talk about government misdeeds." *In re Grand Subpoena, Judith Miller*, 438 F.3d 1141, 1168 (D.C. Cir. 2006) (Tatel, J., concurring in judgment). Promoting the functioning of a free press that can disclose information otherwise shrouded in government secrecy certainly merits recognition as a "public good

transcending the normally predominant principle of utilizing all rational means for ascertaining the truth." *Jaffee*, 518 U.S. at 9 (quotation omitted).

Finally, recognition of the privilege in federal court is appropriate given the clear trajectory of the development of the law in the States. Forty-nine States and the District of Columbia have recognized the reporter's privilege. *See* Addend. In twenty-five States and the District of Columbia, the privilege is *absolute* in civil cases (with exceptions for narrow circumstances not present here). *See id.* An additional eighteen states recognize a privilege that, while it would not be absolute in this case, requires a comprehensive balancing of interests to overcome the privilege. *See id.* Although the panel suggested that recognizing a privilege would be inappropriate because the specifics of each state's privilege "varies widely," *Chen*, 153 F.4th at 1295, the panel seems to have misapprehended Ms. Herridge's argument on this point. While it is true that some States do not require courts to conduct a balancing of interests, that is largely because those States provide a *more* protective privilege that is *absolute* in cases like the one at bar and *always* protect a source without the need for any balancing. *See* Addend. (showing that 43 states plus the District of Columbia have either an absolute privilege or require interest-balancing). Here, Ms. Herridge is advocating only for the *less protective* option—a privilege that employs a balancing test. The fact that some States have an even *more protective* absolute privilege does not undermine the fundamental point that

15

American law has overwhelmingly coalesced around a privilege that would protect Ms. Herridge's confidential source(s) in this case.

**II.    There Is Good Cause for a Stay, and Ms. Herridge Will Suffer Irreparable Harm Absent One.**

There is also "good cause" to stay the mandate in this case, because "irreparable" or "substantial harm . . . would result from the reactivation of proceedings in the District Court during the pendency of the certiorari petition." *Jud. Watch, Inc. v. Nat'l Energy Pol'y Dev. Grp.*, No. 02-5355, 2003 WL 22319584, at *1 (D.C. Cir. Sept. 30, 2003) (per curiam).

Absent a stay, Ms. Herridge will suffer irreparable harm because the Order requires her to disclose her confidential source(s) in violation of her First Amendment rights.  It is well settled that deprivation of a constitutional right is irreparable harm.  *See, e.g.*, *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality); *Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009); *Cigar Ass'n of Am. v. U.S. Food and Drug Admin.*, 317 F. Supp. 3d 555, 562 (D.D.C. 2018) ("The loss of First Amendment freedoms, for even minimal periods of time . . . constitute[s] irreparable injury." (quotation omitted)); *see also* 11A C. Wright, A. Miller & M. Kayne, Federal Practice and Procedure § 2948.1 (3d ed. 2016) ("When an alleged deprivation of a constitutional right is involved, such as the right to free speech . . . most courts hold that no further showing of irreparable injury is necessary.").  That irreparable harm is not minimized by the possibility that Ms. Herridge could accept

an $800 daily penalty as the alternative to complying with the Order. Such a sanction constitutes an "unpalatable choice," that cannot eliminate the irreparable harm she faces. *In re Roche*, 448 U.S. 1312, 1316 (1980) (Brennan, J., in chambers).

In addition, under the dictates of the Order, Ms. Herridge's promise(s) of confidentiality would be irretrievably breached, the identity of her source(s) would be irrevocably disclosed, and no court would ever be able to make the identity of the source(s) secret again. Ms. Herridge would lose "confidentiality . . . for all time," and "[t]he status quo could never be restored." *Providence J. v. Fed. Bureau of Investigation*, 595 F.2d 889, 890 (1st Cir. 1979). Not surprisingly, courts "have recognized that the disclosure of confidential information is, by its very nature, irreparable because such information, once disclosed, loses its confidential nature." *Robert Half Int'l Inc. v. Billingham*, 315 F. Supp. 3d 419, 433 (D.D.C. 2018) (quotation omitted). "'[O]nce . . . putatively protected material is disclosed, the very right sought to be protected has been destroyed.'" *Jubilant DraxImage Inc. v. U.S. Int'l Trade Comm'n*, 396 F. Supp. 3d 113, 125 (D.D.C. 2019) (quoting *In re Sealed Case* No. 98-3077, 151 F.3d 1059, 1065 (D.C. Cir. 1998)).

In addition, damage to Ms. Herridge's reputation as a reporter who keeps her promises of confidentiality would be permanent, thus crippling her ability to carry on her work as an Emmy-winning investigative reporter in the national security field. *See* JA115-18.

17

Separately, good cause exists for a stay when returning a case to the district court would moot a petition for certiorari. *See, e.g.*, *In re Roche*, 448 U.S. at 1316 (Brennan, J., in chambers) (finding stay pending consideration of petition for certiorari was necessary in reporter's privilege case because disclosure of the source would "moot [applicant's] claim"); *John Doe Agency v. John Doe Corp.*, 488 U.S. 1306, 1309 (1989) (Marshall, J., in chambers) ("The fact that disclosure would moot . . . part of the Court of Appeals' decision . . . would also create an irreparable injury" justifying stay pending consideration of petition for certiorari); *New York Nat. Res. Def. Council, Inc. v. Kleppe*, 429 U.S. 1307, 1310 (1976) (Marshall, J., in chambers) ("Perhaps the most compelling justification for a Circuit Justice to upset an interim decision by a court of appeals [is] to protect this Court's power to entertain a petition for certiorari before or after the final judgment of the Court of Appeals"). Here, the district court stayed its contempt order "until completion of proceedings on a timely appeal." JA339. Absent a stay, Ms. Herridge will be required to reveal her confidential source(s) upon issuance of the mandate, and the substantial issues raised by her pending petition may be mooted without giving the Supreme Court any opportunity to consider them.

Although Rule 41 does not strictly require a showing that a stay would be in the public interest, the public interest in the "free flow of information" to the press, *Bruno & Stillman*, 633 F.2d at 596, overwhelmingly favors a stay here. Forcing Ms.

Herridge to disclose her source(s) on remand would "erode[] the ability of journalists everywhere to credibly promise confidentiality to sources who demand it, and would have a chilling effect on the flow of important information to journalists reporting on government matters." JA295. This "chilling effect" would be especially pronounced in the field of national security reporting, where confidential sources are necessary if the press is to challenge official government accounts. JA 298–99.

Finally, Plaintiff would not suffer any substantial prejudice from a stay of the mandate. This case was originally filed over seven years ago. A stay of a few short months at this point to allow the Supreme Court to address unsettled questions about the scope of the First Amendment and common law reporter's privileges—questions that have divided the courts of appeals—will not have a notable impact on the overall timeline of this case.

## CONCLUSION

The Court should stay issuance of the mandate pending the filing of a petition for certiorari. If the Court denies this motion, the Court—in accordance with Federal Rule of Appellate Procedure 41(b)—should withhold issuance of the mandate until seven days after entry of the Court's order so that the Supreme Court at least has an opportunity to consider and rule on an application for an emergency stay.

May 28, 2026

Respectfully submitted,

/s/ *Patrick F. Philbin*
Patrick F. Philbin
Kyle T. West
Chase T. Harrington
TORRIDON LAW PLLC
801 Seventeenth Street NW
Suite 1100
Washington, DC 20006
(202) 249-6900
pphilbin@torridonlaw.com

*Counsel for Catherine V. Herridge*

# CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2) because it contains 4,615 words. This motion also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word in Times New Roman 14-point font, a proportionally spaced typeface.


May 28, 2026
/s/ Patrick F. Philbin
Patrick F. Philbin

**CERTIFICATE OF SERVICE**

I hereby certify, in accordance with Federal Rule of Appellate Procedure 25(c) and Circuit Rule 25(c), that on May 28, 2026, the foregoing document was electronically filed with the Clerk and served on the parties using the Clerk's CM/ECF system.

May 28, 2026                                     */s/ Patrick F. Philbin*
                                                  Patrick F. Philbin

## States Recognizing Reporter's Privilege

| State | Statute or Case Outlining Privilege | Recognizes Privilege | Absolute[1] Privilege in Civil Cases | Requires Balancing of Interests |
|---|---|---|---|---|
| Alabama | Ala. Code § 12-21-142 | X | X | |
| Alaska | Alaska Stat. § 09.25.310(b) | X | | X |
| Arizona | A.R.S. § 12-2237 | X | X | |
| Arkansas | Ark. Code Ann. § 16-85-510 | X | X | |
| California | Cal. Const. Art. I, § 2 | X | X | |
| Colorado | Colo. Rev. Stat. § 13-90-119(3) | X | | X |
| Connecticut | Conn. Gen. Stat. § 52-146t(d) | X | | X |
| Delaware | 10 Del. Code §§ 4320, 4322, 4323 | X | X | X |
| District of Columbia | D.C. Code §§ 16-4702, 16-4703 | X | X | X |
| Florida | *McCarty v. Bankers Ins. Co., Inc.*, 195 F.R.D. 39, 45 (N.D. Fla. 1998) | X | | X |
| Georgia | Ga. Code Ann. § 24-5-508 | X | | |
| Hawaii | Haw. Rev. Stat. § 621-31 | X | | X |
| Idaho | Idaho Code Ann. § 9-714 | X | X | |

[1] With some exceptions not relevant here.

| State | Citation | | | |
|---|---|---|---|---|
| Illinois | 735 Ill. Compiled Stat. 5/8-907 | X | | X |
| Indiana | Ind. Code § 34-46-4-2 | X | X | |
| Iowa | *Lamberto v. Bown*, 326 N.W.2d 305, 309 (Iowa 1982) | X | | X |
| Kansas | Kan. Stat. § 60-482 | X | | X |
| Kentucky | *Lexington Herald-Leader Co. v. Beard*, 690 S.W.2d 374 (Ky. 1984) | X | X | X |
| Louisiana | La. Rev. Stat. § 45:1453 | X | | X |
| Maine | 16 Maine Rev. Stat. § 61(2) | X | | X |
| Maryland | Md. Cts. & Jud. Proc. Code Ann. § 9-112 | X | X | X |
| Massachusetts | *In re John Doe Grand Jury Investigation*, 574 N.E.2d 373, 375 (Mass. 1991) | X | | X |
| Michigan | Mich. Comp. Laws Ann. §§ 767.5a, 767A.6 | X | | |
| Minnesota | Minn. Stat. §§ 595.023, 595.025 | X | X | |
| Mississippi | *Hawkins v. Williams*, Civ. No. 2900054 (Cir. Ct. 1st Jud. Dist. Hinds Cnty., Mar. 16, 1983) | X | | |
| Missouri | *State ex rel. Classic III Inc. v. Ely*, 954 S.W.2d 650, 655 (Mo. Ct. App. 1997) | X | | X |
| Montana | Mont. Code § 26-1-902 | X | X | |
| Nebraska | Neb. Rev. Stat. § 20-146 | X | X | |
| Nevada | Nev. Rev. Stat. § 49.275 | X | X | |
| New Hampshire | *Mortg. Specialists, Inc. v. Implode-Explode Heavy Indus., Inc.*, 160 N.H. 227, 235-36 (2010) | X | | X |
| New Jersey | N.J. Stat. § 2A:84A-21 | X | X | |

A2

| | | | | |
|---|---|:---:|:---:|:---:|
| New Mexico | N.M. R. Evid. Rule 11-514 | X | | X |
| New York | N.Y. Civ. Rights Law § 79-h | X | X | |
| North Carolina | N.C. Gen. Stat. Ann.§ 8-53.11 | X | | |
| North Dakota | *Grand Forks Herald v. Dist. Ct. in & for Grand Forks Cnty.*, 322 N.W.2d 850, 857 (N.D. 1982) | X | | X |
| Ohio | Ohio Rev. Code § 2739.12 | X | X | |
| Oklahoma | Okla. Stat. Ann. tit. 12, § 2506 | X | | |
| Oregon | Or. Rev. Stat. § 44.520 | X | X | |
| Pennsylvania | 42 Pa. Cons. Stat. § 5942 | X | X | |
| Rhode Island | R.I. Gen. Laws Ann. §§ 9-19.1, 9-19-2 | X | X | |
| South Carolina | S.C. Code Ann. § 19-11-100 | X | | |
| South Dakota | S.D. Codified Laws § 19-2-15 | X | X | |
| Tennessee | Tenn. Code § 24-1-208 | X | | X |
| Texas | Tex. Civ. Prac. & Rem. Code § 22.024 | X | | X |
| Utah | Utah R. Evid. 509 | X | X | X |
| Vermont | 12 Vt. Stat. § 1615(b) | X | X | X |
| Virginia | *Clemente v. Clemente*, 56 Va. Cir. 530, at *1 (2001) | X | | X |
| Washington | Wash. Rev. Code § 5.68.010 | X | X | X |
| West Virginia | W. Va. Code § 57-3-10 | X | X | |
| Wisconsin | Wis. Stat. § 885.14 | X | X | X |