**No. 24-5050**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

YANPING CHEN,
*Plaintiff-Appellee,*

*v.*

FEDERAL BUREAU OF INVESTIGATION, et al.,
*Defendants-Appellees,*

CATHERINE HERRIDGE,
*Appellant.*

On Appeal from the United States District Court for the District of Columbia,
No. 1:18-cv-03074-CRC

## PLAINTIFF-APPELLEE'S OPPOSITION TO APPELLANT'S MOTION TO STAY THE MANDATE

Andrew C. Phillips (Bar No. 64792)
Archith Ramkumar (Bar No. 62206)
MEIER WATKINS PHILLIPS PUSCH LLP
1120 20th St NW, Suite 550
Washington, DC 20036
Email: andy.phillips@mwpp.com
      archith.ramkumar@mwpp.com

June 12, 2026

*Counsel for Plaintiff-Appellee Yanping Chen*

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

BACKGROUND....................................................................................................2

LEGAL STANDARD ...........................................................................................6

ARGUMENT ........................................................................................................7

I.   Herridge has failed to demonstrate that her certiorari petition will present a substantial question. .........................................................................................7

   A.  The panel's decision is fully consistent with how other circuits have evaluated similar reporter's privilege claims. ......................................................8

   B.  The panel correctly refused to recognize a common law reporter's privilege.. ..............................................................................................................13

   C.  Herridge is unlikely to succeed on the merits and cannot overcome the vehicle problem this case presents. ....................................................................17

II.  The remaining factors militate in favor of denying Herridge's stay request....19

CONCLUSION ...................................................................................................22

CERTIFICATE OF COMPLIANCE .................................................................23

CERTIFICATE OF SERVICE...........................................................................24

# TABLE OF AUTHORITIES

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) ..................................................................................17

*Ashcraft v. Conoco, Inc.*,
218 F.3d 282 (4th Cir. 2000) .....................................................................10

*Branzburg v. Hayes*,
408 U.S. 665 (1972) ..................................................................................15

*Bruno & Stillman, Inc. v. Globe Newspaper Co.*,
633 F.2d 583 (1st Cir. 1980) ..................................................................8, 9

*Cervantes v. Time, Inc.*,
464 F.2d 986 (8th Cir. 1972) .....................................................................11

*Chen v. FBI*,
153 F.4th 1289 (D.C. Cir. 2025) ...............................5, 8, 13, 14, 16, 19, 21

*Citizens for Resp. & Ethics in Wash. v. Fed. Election Comm'n*,
904 F.3d 1014 (D.C. Cir. 2018) ...................................................................7

*Clampitt v. Thurston Cnty.*,
658 P.2d 641 (Wash. 1983) .......................................................................13

*Data Axle, Inc. v. Nolting*,
No. 25-2068, 2026 WL 1531720 (8th Cir. June 1, 2026) ...........................20

*Engebretson v. Mahoney*,
724 F.3d 1034 (9th Cir. 2013) ...................................................................21

*Farmland Partners Inc. v. Fortunae*,
No. 18-cv-02351-KLM, 2020 WL 12575073 (D. Colo. May 18, 2020) ......12

*Grandbouche v. Clancy*,
825 F.2d 1463 (10th Cir. 1987) ..................................................................12

*In re Google Play Store Antitrust Litig.*,
152 F.4th 1078 (9th Cir. 2025) ................................................................ 7-8

*In re Grand Jury Proceedings (Ridenhour)*,
    520 So. 2d 372 (La. 1988)................................................................12

*In re Grand Jury Procs.*,
    5 F.3d 397 (9th Cir. 1993)..............................................................15

*In re Grand Jury Subpoena Duces Tecum*,
    112 F.3d 910 (8th Cir. 1997).........................................................11

*Jaffee v. Redmond*,
    518 U.S. 1 (1996).........................................................13, 14, 15, 16

*Keefe v. City of Minneapolis*,
    No. 09-2941, 2012 WL 7766299 (D. Minn. May 25, 2012).......................11

*LaRouche v. Nat'l Broad. Co., Inc.*,
    780 F.2d 1134 (4th Cir. 1986)........................................................11

*Lee v. Dep't of Just.*,
    413 F.3d 53 (D.C. Cir. 2005) ...............................................8, 14, 18

*Marin Audubon Soc'y v. Fed. Aviation Admin.*,
    129 F.4th 869 (D.C. Cir. 2025) ...............................................7, 17

*McLean v. Cent. States, S.E. & S.W. Areas Pension Fund*,
    762 F.2d 1204 (4th Cir. 1985).........................................................20

*Miller v. Transamerican Press, Inc.*,
    621 F.2d 721 (5th Cir. 1980)..........................................................10

*Mills v. Dist. of Columbia*,
    571 F.3d 1304 (D.C. Cir. 2009) ....................................................19

*Mitchell v. Super. Ct. of Marin Cnty.*,
    690 P.2d 625 (Cal. 1984) .............................................................12

*Mont. v. Planned Parenthood of Mont.*,
    145 S. Ct. 2627 (2025) ..................................................................7

*Riley v. City of Chester*,
    612 F.2d 708 (3d Cir. 1979)......................................................12, 16

*Ryan v. Schad*,
        570 U.S. 521 (2013) .......................................................................6

*Shoen v. Shoen*,
        5 F.3d 1289 (9th Cir. 1993) ..................................................... 11-12

*State ex rel. Green Bay Newspaper Co. v. Cir. Ct., Branch 1, Brown Cnty.*,
        335 N.W.2d 367 (Wis. 1983) .....................................................13

*State v. Davis*,
        720 So. 2d 220 (Fla. 1998) ........................................................13

*Trump v. Vance*,
        591 U.S. 786 (2020) ...................................................................14

*United States v. Sterling*,
        724 F.3d 482 (4th Cir. 2013) ...............................................15, 16

*United States v. Woodbury*,
        263 F.2d 784 (9th Cir. 1959) ......................................................20

*Wisc. Gas Co. v. FERC*,
        758 F.2d 669 (D.C. Cir. 1985) ............................................... 19-20

*Zerilli v. Smith*,
        656 F.2d 705 (D.C. Cir. 1981) ...................5, 8, 11, 12, 13, 14, 18

## Other Authorities

2A Fed. Proc. L. Ed. § 3:1013 (Aug. 2025) ............................................6

## Rules

Fed. R. App. P. 41(d)(1) ..................................................................... 6-7

Sup. Ct. R. 10(a) ....................................................................................7

## **INTRODUCTION**

For a third time, Appellant Catherine Herridge asks this Court for relief.  This time, she contends that this Court should take the extraordinary step of staying its mandate notwithstanding: (1) this Court's unanimous affirmance of the district court's holding that she has no First Amendment right to withhold the names of her source(s) who brazenly violated federal law to harm Plaintiff-Appellee Dr. Yanping Chen; and (2) this Court's subsequent order summarily denying her petition for rehearing *en banc*, with not a single Judge voting in favor of rehearing.  The third time is not the charm.

Herridge's motion founders on the most important factor in the stay calculus—whether her forthcoming petition for a writ of certiorari will raise a substantial question.  The circuit split that Herridge attempts to conjure is illusory.  Other circuits' tests comport with this Court's precedents in balancing the considerations relevant to assessing reporters' qualified First Amendment privilege not to reveal their sources—a conclusion evinced by the fact that some of these circuits have favorably cited the very decisions from this Court that Herridge argues have created a circuit split.  And, in any event, the district court found that even if Herridge's preferred test applied, the outcome would be the same, dooming her likelihood of success on the merits and making Herridge's forthcoming certiorari

petition nothing more than an academic exercise. Herridge cannot surmount this intractable vehicle problem.

None of the other stay factors tips the scales in Herridge's favor. Although Herridge argues that irreparable harm will ensue in the absence of a stay, she has no special solicitude to flout a court order and retains the ability to pay the monetary sanctions imposed by the district court instead of complying with the order. Significantly, this Court has held time and again that monetary harms are not irreparable; in the unlikely event that Herridge were to be granted certiorari and then prevail in the Supreme Court, she would be able to recoup any monetary fines. Furthermore, Herridge gives short shrift to the significant and countervailing interests that Chen and the public have in bringing this long-delayed case to a close. Accordingly, Herridge's motion should be denied.

## BACKGROUND

Chen's underlying Privacy Act suit involves the leak of legally protected information concerning Chen to Herridge, then a Fox News reporter. *See* JA213. After an exhaustive and intrusive FBI investigation of Chen yielded no charges, someone—likely a federal law enforcement official unhappy with the decision to end the case—leaked investigative files to Herridge, who used them to run sensationalistic stories about Chen in Fox News primetime.

2

Importantly, Herridge's stories relied on internal government documents from the FBI's investigation and other information clearly protected by the Privacy Act. *See id.* Chen served scores of document requests, interrogatories, and requests for admission, issued over a dozen third-party subpoenas, took eighteen depositions, and obtained twenty-two declarations to identify who leaked her protected records. *See* JA215. After those efforts failed to definitively identify the leaker, Chen served Herridge with document and deposition subpoenas in May and June of 2022. *See* JA215-16. Herridge moved to quash the subpoenas on the ground that the materials Chen sought were shielded from disclosure under the First Amendment's reporter's privilege. *See* JA216.

Recognizing "both the vital importance of a free press and the critical rule that confidential sources play in the work of investigative journalists like Herridge," the district court nevertheless held that "Chen's need for the requested evidence overcomes Herridge's qualified First Amendment privilege in this case" because "[t]he identity of Herridge's source is central to Chen's claim, and despite exhaustive discovery, Chen has been unable to ferret out his or her identity." JA213-14. And even though the district court found that Circuit precedent did not require it to conduct the "free-form, anything-goes analysis" advocated by Herridge, it noted that such an analysis "likely would not change the outcome here in any event." JA218, 234. The court concluded that Chen had a sufficient basis to recover damages and

thus her lawsuit was "not frivolous," JA234, and that Herridge was wrong in asserting that her interests in "reporting on national security" trumped Chen's interests because the "Privacy Act protects not just Chen but all private citizens." JA235-36.

Thereafter, Herridge refused to reveal her source(s) at her deposition. JA319. The district court accordingly held Herridge in contempt, a decision it did not reach "lightly," and one stemming from the reality that Herridge was not "permitted to flout a federal court's order with impunity." JA319-20. The district court reiterated its finding that "free-wheeling balancing of interests" was not only unwarranted but would also "not change the outcome in any event." JA330. Herridge's merits argument that Chen would ultimately be unable to "recover any damages" failed again because Chen showed that the leaked materials "could have given the Fox reporting more traction than it otherwise would have had," JA331-32; Herridge's invocation of national security interests was rebuffed as it was "hard to fathom how disclosing Herridge's source would place America in jeopardy," JA332-33; and Herridge's assertion that disclosure would have a chilling effect was at odds with empirical evidence. JA334-35. The district court required Herridge to pay a fine of $800 per day until she complied with the court's order—the "low-end" of the range of monetary sanctions for civil contempt. JA339. The court stayed that sanction to give Herridge a chance to appeal. JA341.

4

On appeal, this Court unanimously affirmed the district court's decision. As a threshold matter, this Court observed that Herridge conceded that the "centrality and exhaustion requirements for overcoming the privilege were satisfied." *Chen v. FBI*, 153 F.4th 1289, 1293 (D.C. Cir. 2025). The arguments Herridge did advance on appeal were rejected.

Beginning with the merits of Chen's Privacy Act claim, the panel made the following crucial observation:

> Herridge argues that we should uphold the privilege because Chen's Privacy Act claim is frivolous. *We agree that our governing framework is flexible enough to accommodate such an inquiry* …. For if a claim would fail regardless of what the requested discovery might reveal, there is no good reason for deeming the discovery to be centrally important, much less for abrogating the privilege on that basis.

*Id.* at 1293-94 (emphasis added) (citing *Zerilli v. Smith*, 656 F.2d 705, 714 (D.C. Cir. 1981)). The panel, however, concluded that even if Herridge were to show that "Chen is likely to recover only a small amount of damages," that did not "render her claim frivolous." *Id.* at 1294.

The panel next found that this Court's precedent foreclosed Herridge's argument that it was required to consider whether Chen's claim was less important than Herridge's ability to report on issues of national security. *Id.* at 1294. And it declined Herridge's invitation to recognize a "federal common law privilege" that would "end-run" precedent, as neither "reason" nor "experience" supported recognition of such a privilege. *Id.* at 1295. "As to reason," the panel found that

5

this Court's precedents properly balanced "the competing considerations of encouraging newsgathering while also respecting the elemental principle that the public has a right to every man's evidence." *Id.* (internal quotation omitted). "As to experience," the panel observed that states' treatment of the reporter's privilege varies widely and therefore did not justify creation of a new privilege. *Id.*

Herridge filed a petition for rehearing and rehearing *en banc*, arguing that the panel's decision conflicted with this Court's precedents and created a circuit split. Both requests were denied. The Order denying Herridge's petition for rehearing *en banc* noted the "absence of a request by any member of the court for a vote." Doc. No. 2174732.

## **LEGAL STANDARD**

"Since it is appropriate to put the appellate court decision into effect pending the Supreme Court's ruling, stays are not granted except in unusual cases or under exceptional circumstances." 2A Fed. Proc. L. Ed. § 3:1013 (Aug. 2025); *see Ryan v. Schad*, 570 U.S. 521, 522 (2013) ("[T]he Ninth Circuit did not demonstrate that exceptional circumstances justified withholding its mandate. As a result, we conclude that the Ninth Circuit's failure to issue its mandate constituted an abuse of discretion."). The Federal Rules of Appellate Procedure require a party seeking to stay an appellate court's mandate pending the filing of a petition for a writ of certiorari to demonstrate: (1) that the forthcoming petition will present a "substantial

6

question"; and (2) good cause supports the stay request.  Fed. R. App. P. 41(d)(1);

Mot. 7.  In evaluating whether a movant has made the requisite showing, this Circuit

considers four factors: (1) likelihood of success on the merits; (2) irreparable harm;

(3) the prospect that others will be harmed if the court grants the stay; and (4) the

public interest in granting a stay.  *Marin Audubon Soc'y v. Fed. Aviation Admin.*,

129 F.4th 869, 871 (D.C. Cir. 2025).

## **ARGUMENT**

**I.     Herridge has failed to demonstrate that her certiorari petition will present a substantial question.**

When a stay applicant shows "little prospect of success," that is "an arguably

fatal flaw."  *Citizens for Resp. & Ethics in Wash. v. Fed. Election Comm'n*, 904 F.3d

1014, 1019 (D.C. Cir. 2018).  That fatal flaw dooms Herridge's stay request.  Despite

Herridge's best efforts to manufacture distinctions, there is no circuit or other split

here.  *See* Sup. Ct. R. 10(a).  And, in any event, because the district court, for the

"sake of completeness," JA323, exhaustively considered every factor that Herridge

urged it to account for, this case would be a "poor vehicle" for deciding the issues

that Herridge (incorrectly) claims are cert-worthy.  *Mont. v. Planned Parenthood of

Mont.*, 145 S. Ct. 2627 (2025) (Statement of Justice Alito respecting the denial of

certiorari); *In re Google Play Store Antitrust Litig.*, 152 F.4th 1078, 1081 (9th Cir.

2025) ("In view of the rationale and details laid out in our opinion, we conclude that

Google has not met the requirements under Federal Rule of Appellate Procedure

41(d) regarding a meritorious petition for certiorari or the significant possibility of reversal.").

### A. The panel's decision is fully consistent with how other circuits have evaluated similar reporter's privilege claims.

Herridge contends that by hewing to *Lee v. Dep't of Just.*, 413 F.3d 53 (D.C. Cir. 2005) and *Zerilli*, the panel deepened a circuit split by refusing to engage in a broader multi-factor balancing test. Mot. 8. Herridge is wrong. The panel's approach is consonant with how the First, Third, Fourth, Eighth, Ninth, and Tenth Circuits have balanced the interests germane to the qualified reporter's privilege under the First Amendment.

Herridge principally argues that the panel's decision conflicts with *Bruno & Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583 (1st Cir. 1980). *See* Mot. 8-11, 18. In that case, the First Circuit elucidated three factors in its "balancing approach": (1) "relevance in an important sense to plaintiff's claim"; (2) "availability of the information from other sources"; and (3) "non-frivolousness of the cause of action." *Bruno & Stillman, Inc.*, 633 F.2d at 598. In other words, the factors in the First Circuit's balancing test are centrality, exhaustion, and non-frivolousness—*the same* considerations that the panel relied on here.[1] *See Chen*, 153 F.4th at 1293-94. The cherry-picked snippets of *Bruno & Stillman* that Herridge

---

[1] That the panel considered frivolousness as part of centrality rather than as a standalone factor makes no meaningful difference in the analysis.

relies on do not undercut this conclusion. Although the First Circuit noted that assessing reporter's privilege claims is a task that "defies formula," 633 F.2d at 598, Mot. 9-10, it immediately went on to identify the discrete three factors that the panel also relied on as informing the "findings of fact" that district courts must make to resolve reporter's privilege claims. 633 F.2d at 598.

Herridge argues that *Bruno & Stillman* endorsed a more stringent testing of the merits of plaintiffs' claims, akin to evaluating whether the claims will survive "partial summary judgment." Mot. 10. But the First Circuit's statement that the "plaintiff should show that it can establish jury issues on the essential elements of its case" is preceded by a sentence conspicuously omitted from Herridge's motion: "As a threshold matter, the court should be satisfied that a claim is not frivolous, a pretense for using discovery powers in a fishing expedition." 633 F.2d at 597. In other words, the First Circuit's pronouncement regarding "jury issues" is simply part of the same non-frivolousness inquiry that the panel applied in this case. And although the First Circuit noted that a finding of non-frivolousness "does not terminate the sensitive balancing process," *id.* at 599 n.17, Mot. 10, that observation is unremarkable, given the need for courts to also consider centrality and exhaustion. In short, *Bruno & Stillman* does not support the unbounded balancing test that Herridge advocates for. Nor does it demonstrate any "split" because the First Circuit

9

applied the same test that this Circuit utilizes for evaluating qualified reporter's privilege claims.

Herridge is on no firmer ground in claiming that the "Fourth Circuit also applies a full-fledged balancing test" that deviates from what the panel did here. Mot. 11-12. The Fourth Circuit has instead adopted a substantially similar "three-part test: "(1) whether the information is relevant, (2) whether the information can be obtained by alternative means, and (3) whether there is a compelling interest in the information." *Ashcraft v. Conoco, Inc.*, 218 F.3d 282, 287 (4th Cir. 2000). The "compelling interest" inquiry in *Ashcraft* was drawn from the Fifth Circuit's decision in *Miller v. Transamerican Press, Inc.*, 621 F.2d 721, 726 (5th Cir. 1980). *See Ashcraft*, 218 F.3d at 287. And *Miller*'s distillation of what constitutes a "compelling interest" dovetails with how the panel here defined centrality. *See Miller*, 621 F.2d at 726-27 ("The only way that Miller can establish malice and prove his case is to show that Transamerican knew the story was false or that it was reckless to rely on the informant. In order to do that, he must know the informant's identity."). In short, nothing in *Ashcraft* suggests that the qualified reporter's privilege turns on additional, unnamed factors. Herridge's assertion that the panel's decision allows "no balancing of interests," Mot. 12, ignores that the whole point of the balancing tests used by the panel, the First Circuit, and the Fourth Circuit is to balance the interests in disclosure against reporters' interests in confidentiality. *See*

10

*LaRouche v. Nat'l Broad. Co., Inc.*, 780 F.2d 1134, 1139 (4th Cir. 1986) ("[I]t is necessary for the district court to balance the interests involved. To aid in the balancing of these interests, courts have developed a three part test.").

Herridge erroneously represents that the "Eighth Circuit holds that a plaintiff should show that he can survive summary judgment." Mot. 12 (citing *Cervantes v. Time, Inc.*, 464 F.2d 986, 993 (8th Cir. 1972)). *Cervantes* is bereft of such a holding. Indeed, the decision had no occasion to even recognize a qualified reporter's privilege because the withheld materials had no impact on the Eighth Circuit's recognition that the plaintiff failed to satisfy an element of his case. *See id.* at 995. Subsequent Eighth Circuit decisions have noted it is "an open" question as to whether the Eighth Circuit has even recognized "a qualified news reporter's privilege." *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 918 n.8 (8th Cir. 1997). For their part, district courts in the Eighth Circuit have evaluated privilege claims using the same approach that the panel employed in this case by focusing, once again, on centrality and exhaustion. *See, e.g.*, *Keefe v. City of Minneapolis*, No. 09-2941, 2012 WL 7766299, at *4-6 (D. Minn. May 25, 2012).

And there is not even a semblance of a conflict stemming from any of the other decisions that Herridge cites. *See* Mot. 12; *Shoen v. Shoen*, 5 F.3d 1289, 1296 (9th Cir. 1993) (citing *Zerilli*, 656 F.2d at 713); *id.* n.14 ("[B]ecause we hold that plaintiffs have not satisfied the exhaustion requirement, we express no opinion on

11

whether plaintiffs have made a sufficient showing on the other questions considered in the balance—i.e., whether the information sought is relevant … and whether it is crucial to the maintenance of plaintiffs' legal claims."; *Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987) ("[T]he factors that the trial court must consider are (1) the relevance of the evidence; (2) the necessity of receiving the information sought; (3) whether the information is available from other sources; and (4) the nature of the information.")[2]; *Riley v. City of Chester*, 612 F.2d 708, 716 (3d Cir. 1979) ("[T]he materiality, relevance, and necessity of the information sought must be shown."). None of these decisions adopted a freewheeling balancing test of the sort that Herridge urged the panel to adopt.

State supreme courts' approaches are in accord. Herridge claims otherwise (at 13), but two of the four cases she cites expressly rely on *Zerilli*—discrediting her attempts to manufacture a split in authority. *In re Grand Jury Proceedings (Ridenhour)*, 520 So. 2d 372, 375-76 n.12 (La. 1988) (citing *Zerilli* and noting that "[c]onsideration should be given to insure that the party seeking the information is not on a mere fishing expedition"); *Mitchell v. Super. Ct. of Marin Cnty.*, 690 P.2d 625, 629 (Cal. 1984) (citing *Zerilli*, 656 F.2d at 712). And contrary to Herridge's

---

[2] District courts in the Tenth Circuit have interpreted this factor as requiring an assessment of whether "the information at issue is critical to the case," *i.e.*, centrality. *Farmland Partners Inc. v. Fortunae*, No. 18-cv-02351-KLM, 2020 WL 12575073, at *7 (D. Colo. May 18, 2020).

suggestion, *see* Mot. 13, other state courts, including the Supreme Courts of Wisconsin and Florida, agree. *See State v. Davis*, 720 So. 2d 220, 227 (Fla. 1998) ("[T]he court must determine whether the movant has established that: (1) the reporter possesses relevant information; (2) the same information is not available from alternative sources; and (3) the movant has a compelling need for any information the reporter may have."); *State ex rel. Green Bay Newspaper Co. v. Cir. Ct., Branch 1, Brown Cnty.*, 335 N.W.2d 367, 373 (Wis. 1983) (similar); *Clampitt v. Thurston Cnty.*, 658 P.2d 641, 644 (Wash. 1983) (citing *Zerilli*, 656 F.2d at 714).

Significantly, Herridge, in her opening brief, did not argue that this Court's precedents have engendered a circuit split. Quite the opposite. Herridge argued that under both *Zerilli* and the "approach" utilized by other circuits, the panel was required to assess the strength of Chen's claim. Opening Br. 29-30. Only after the panel did just that and concluded, unequivocally, that Chen's claim was not frivolous, *see Chen*, 153 F.4th at 1294, did Herridge then pivot to claiming that the panel exacerbated a circuit split. That opportunistic shift only underscores the absence of any circuit conflict here.

## B. The panel correctly refused to recognize a common law reporter's privilege.

Herridge's argument that the panel erred by failing to create a qualified common law reporter's privilege, *see* Mot. 13-16, is equally unavailing. The panel faithfully applied the framework in *Jaffee v. Redmond*, 518 U.S. 1, 8 (1996), to

13

conclude that there was no basis for recognizing such a privilege under Federal Rule of Evidence 501.

The twin guideposts for ascertaining whether recognizing a new privilege is appropriate are "reason and experience." *Jaffee*, 518 U.S. at 8. The panel specifically followed these guideposts.

"As to reason," the panel concluded that *Zerilli* and *Lee* already laid out "the competing considerations of encouraging newsgathering while also respecting the elemental principle that 'the public has a right to every man's evidence.'" *Chen*, 153 F.4th at 1295 (quoting *Trump v. Vance*, 591 U.S. 786, 791 (2020)). "As to experience," the panel observed that states' treatment of the reporter's privilege "varies widely" "both in the abstract and on the question [of] whether case-by-case interest balancing is appropriate." *Id.* Thus, the panel concluded that "if the First Amendment itself does not entitle Herridge to disobey discovery obligations imposed on every other citizen in the circumstances of this case, we see little reason to create that entitlement as a matter of judge-made common law." *Id.*

Herridge does not address this reasoning, which significantly undermines her claim that the panel's decision "conflicts with *Jaffee*." Mot. 14. She instead argues that the unique importance of the reporter's privilege justifies creation of a federal common law privilege. *See* Mot. 14-15. Herridge overlooks the fact that the panel recognized the importance of the interests Herridge highlights. By ignoring the

14

competing considerations that justify disclosure and myopically focusing on journalists' need to rely on confidential sources, Herridge is effectively advocating for an absolute, not a qualified, common-law privilege—one that is far afield from the psychotherapist-patient privilege recognized in *Jaffee*. *See United States v. Sterling*, 724 F.3d 482, 502-03 (4th Cir. 2013) ("[U]nlike in the case of the spousal, attorney-client, and psychotherapist-patient privileges that have been recognized, the reporter-source privilege does not share the same relational privacy interests or ultimate goal…. We are also mindful that the Court in *Branzburg* considered and was unpersuaded by a virtually identical argument that a reporter's privilege was necessary to prevent a chilling effect on newsgathering.").

Other circuits have also abstained from creating a federal common law reporter's privilege that differs from the privilege embedded in the First Amendment, observing that the Supreme Court's decision in *Branzburg v. Hayes*, 408 U.S. 665, 685 (1972), likely forecloses recognition of a common law reporter's privilege. *See Sterling*, 724 F.3d at 501 ("Rule 501 and the Supreme Court's use of it to recognize a psychotherapist-patient privilege in *Jaffee* does not authorize us to ignore *Branzburg* or support our recognition of a common-law reporter-source privilege today …."); *In re Grand Jury Procs.*, 5 F.3d 397, 403 n.3 (9th Cir. 1993) ("We discern nothing in the text of Rule 501, however, that sanctions the creation of privileges by federal courts in contradiction of the Supreme Court's mandate.").

15

The Third Circuit's outlier recognition of a common law privilege in *Riley*, *see* Mot. 13, does not aid Herridge's cause. That case predated *Jaffee* and relied on Pennsylvania's unique state law and its "public policy giving newspaper reporters protection from divulging their sources." *Riley*, 612 F.2d at 715. And while the Third Circuit purported to divine a federal common law privilege that was rooted in the First Amendment rather than a privilege derived directly from the First Amendment, the distinction makes little difference because the court in *Riley* ultimately applied a test identical to the First Amendment balancing test the panel applied here. *See id.* at 714, 716-17.

Herridge also claims that the panel misapprehended state laws recognizing the reporter's privilege. Mot. 15-16. But she fails to grapple with the salient point, which is that since states' treatment of the reporter's privilege "varies widely," *Chen*, 153 F.4th at 1295, that hardly provides a reason to create a federal common law reporter's privilege that differs from the privilege that already exists under the First Amendment. "If anything, the varying actions of the states in this area only reinforces *Branzburg*'s observation that judicially created privileges in this area would present practical and conceptual difficulties of a high order that are best dealt with instead by legislatures of the state and federal governments." *Sterling*, 724 F.3d at 504.

**C.    Herridge is unlikely to succeed on the merits and cannot overcome the vehicle problem this case presents.**

Herridge's forthcoming certiorari petition suffers from a separate, but equally dispositive infirmity: the district court considered every factor Herridge urged it to examine as part of a freewheeling balancing approach but concluded that even if Herridge's preferred methodology were adopted, it "would not change the outcome in any event"—the "outcome" being that Herridge would still have to reveal her source(s).  JA330.  Herridge's motion entirely ignores that the bottom-line "merits" question in this case is not the intermediate issue of what the balancing test should look like, but the ultimate question of whether Herridge should be compelled to reveal her source(s).  Because the district court concluded that Herridge would lose even if her preferred test were adopted, *see* JA330-37, she cannot show a "likelihood of success on the merits" warranting a stay.  *Marin*, 129 F.4th at 871.  That also means that the issue Herridge claims is worthy of Supreme Court review—whether considered under the rubric of the First Amendment or federal common law—is purely academic, making this case a "poor vehicle for exploring" the contours of the reporter's privilege.  *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 470 n.6 (2013).

The district court considered and rejected Herridge's arguments addressing: (1) the merits of Chen's Privacy Act claim, *see* Mot. 10-11, (2) national security interests, *see id.* at 11, and (3) the potential chilling effect that Herridge argued would

17

occur if she were forced to disclose her source(s). *See* Mot. 19. Herridge does not dispute these conclusions here.

As to the merits, the district court concluded that the photographs of Chen could "support a Privacy Act claim" and allow Chen to recover damages because the photographs "could have given the Fox reporting more traction than it otherwise would have had." JA331. And the district court noted that Herridge's assertion was a "double-edged sword," because if the "leaked materials" were insignificant, then Herridge need not have included them in her story. *Id.*

Regarding the purported national security interests at issue, the district court found that Herridge's argument "ring[s] hollow" because of the complete absence of any cognizable national security risk from disclosing her source(s), especially since the government "could easily intervene to protect these interests." JA332.

And the district court found that there was no empirical evidence to back up Herridge's doomsday predictions about a chilling effect, as "[a]lmost two decades have passed since *Lee* reaffirmed *Zerilli* and required the reporter there to divulge his source, yet there is limited evidence that the floodgates to journalists' notepads have opened or the wellspring of confidential sources has dried up during that period." JA334. That is because "vigorous application of the centrality and exhaustion factors" has ensured that "compelled disclosure is the exception, not the rule." JA335.

18

Herridge does not address any of these conclusions. At bottom, then, Herridge cannot show that the Supreme Court is likely to weigh in on a case where the ultimate outcome would be the same regardless of whether the Supreme Court were to adopt the freewheeling balancing approach Herridge advocates for.

## II. The remaining factors militate in favor of denying Herridge's stay request.

Herridge has also failed to show that any of the other stay factors support staying the mandate.

Herridge's claim of irreparable harm springs from an incorrect premise: that this case involves a "deprivation of a constitutional right." Mot. 16. As the panel held, the First Amendment does "*not* entitle Herridge to disobey discovery obligations," making Herridge no different than any other litigant wanting a license to ignore a court order they disagree with. *Chen*, 153 F.4th at 1295 (emphasis added). That makes this case very different from *Mills v. Dist. of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009), *see* Mot. 16, where it was "apparent that" under "plainly controlling" Supreme Court precedent, appellants' Fourth Amendment rights were "violated." 571 F.3d at 1309-10, 1312.

Herridge's arguments that compulsory disclosure of her source(s) would "irretrievably" impact her reputation and her source(s), *see* Mot. 17, are undercut by the fact she retains the ability to pay $800 per day as an "alternative to complying with the Order." *Id.* It is "well settled that economic loss does not, in and of itself,

19

constitute irreparable harm." *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985); *see Data Axle, Inc. v. Nolting*, No. 25-2068, 2026 WL 1531720, at \*2 (8th Cir. June 1, 2026) ("Nolting has not shown that the $1,000-per-day fine will be irretrievable should he ultimately prevail in a timely appeal."). Herridge's ability to pay a monetary fine and eventually recoup that money if she persuades the Supreme Court to rule in her favor precludes a finding of irreparable harm. *See McLean v. Cent. States, S.E. & S.W. Areas Pension Fund*, 762 F.2d 1204, 1210 (4th Cir. 1985) ("[R]eversal of the underlying order ordinarily invalidates any civil contempt sanctions predicated thereon."). That is especially true since, according to Herridge, only a "few short months" are necessary for the Supreme Court to consider her petition for a writ of certiorari, Mot. 19, and because the monetary sanction the district court imposed is at the "low-end of" the range of civil contempt fines. JA339. Herridge bemoans the "unpalatable choice" she would have to make absent a stay, Mot. 17, but "litigants have always had to deal with difficult choices of this kind." *United States v. Woodbury*, 263 F.2d 784, 787-88 (9th Cir. 1959). For that reason, Herridge retains the ability to keep her petition for certiorari from becoming moot, *see* Mot. 18, by paying the monetary sanctions imposed by the district court without revealing her sources.

Herridge also utterly fails to grapple with the harm that a stay would inflict on both Chen and the public. Although Herridge's apparent view is that an additional

20

indefinite period of delay will not harm Chen because of the significant delay that has already occurred, Mot. 19, that position would, if accepted, render the rights conferred by the Privacy Act toothless. Importantly, the "Privacy Act protects not just Chen but all private citizens, whether blameworthy or blameless, from the risk that government officials might be tempted to abuse their access to sensitive information by leaking materials intended to embarrass particular individuals." JA236. Allowing reporters like Herridge to obtain an endless series of stays would frustrate litigants like Chen from proving the merits of their claim and, as a practical matter, blunt the weighty "private right of action" codified in the Privacy Act. *Id.*

Furthermore, the "public has a right to every man's evidence." *Chen*, 153 F.4th at 1295. Although Herridge recycles her argument about a potential "chilling effect" on reporters, Mot. 18-19, those concerns are overstated, *see* JA334, and accommodated by the balancing test the panel applied. And the "public interest in the enforcement of court orders," which "is essential to the effective functioning of" the "judicial process" would be subverted if Herridge is allowed to continue forestalling compliance with the district court's contempt order. *Engebretson v. Mahoney*, 724 F.3d 1034, 1041 (9th Cir. 2013).

Ultimately, the fact that Chen still has no definitive evidence of who leaked damaging information about her—despite relentlessly seeking the identity of the leaker in discovery—even though this case was "filed over seven years ago," Mot.

21

19, is a point on the ledger in favor of Chen, not Herridge. Herridge has litigated her privilege claim "to the hilt" while enjoying the benefits of a stay that the district court imposed two-and-a-half years ago, and despite having lost at every stage of the proceedings; there is no longer any basis for delaying vindication of the rights that Chen and the public possess under the Privacy Act. JA341.

## CONCLUSION

Herridge's motion to stay the mandate should be denied.

Dated: June 12, 2026

Respectfully Submitted,

*/s/ Andrew C. Phillips*
Andrew C. Phillips (Bar No. 64792)
Archith Ramkumar (Bar No. 62206)
MEIER WATKINS PHILLIPS PUSCH LLP
1120 20th St NW, Suite 550
Washington, DC 20036
Email: andy.phillips@mwpp.com
      archith.ramkumar@mwpp.com

*Counsel for Plaintiff-Appellee Yanping Chen*

## **CERTIFICATE OF COMPLIANCE**

This opposition by Plaintiff-Appellee complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5156 words. This motion also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1) and 32(a)(5)-(6) because it was prepared using Microsoft Word in Times New Roman 14-point font, a proportionately spaced typeface.

June 12, 2026                                  */s/ Andrew C. Phillips*
                                               Andrew C. Phillips

## CERTIFICATE OF SERVICE

I hereby certify that, on June 12, 2026, in accordance with Federal Rule of Appellate Procedure 25(c) and Circuit Rule 25(c), the foregoing document was electronically filed with the Clerk of the United States Court of Appeals for the District of Columbia Circuit by using the Clerk's Box system.  I certify that I have transmitted a true and correct copy of the foregoing document to counsel for the Appellant Catherine V. Herridge and to the other parties as follows:

*Counsel for Catherine V. Herridge*:

Patrick F. Philbin
pphilbin@torridonlaw.com

Kyle T. West
kwest@torridonlaw.com

Chase T. Harrington
charrington@torridonlaw.com

*Counsel for Federal Bureau of Investigation, United States Department of Justice, United States Department of Defense, and United States Department of Homeland Security:*

Bradley A. Hinshelwood
Bradley.A.Hinshelwood@usdoj.gov

Michael Raab
Michael.Raab@usdoj.gov

June 12, 2026                                          */s/ Andrew C. Phillips*
                                                            Andrew C. Phillips

24